GOULSTON & STORRS PC
400 Atlantic Avenue
Boston, Massachusetts 02110-3333
Tel: (617) 482-1776
Fax: (617) 574-4112
Douglas B. Rosner, Esq.

885 Third Avenue, 18th Floor
New York, New York 10022
Tel: (212) 878-6900
Fax: (212) 878-6911
Yara Kass-Gergi

*Counsel to ER 215 Moore Holdings LLC*

**UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| In re:<br><br>232 SEIGEL DEVELOPMENT LLC,<br><br>Debtor. | Chapter 11<br><br>Case No. 20-22844 (RDD) |
| In re:<br><br>232 SEIGEL ACQUISITION LLC,<br><br>Debtor. | Chapter 11<br><br>Case No. 20-22845 (RDD) |

**MEMORANDUM OF LAW IN SUPPORT OF ER 215 MOORE
HOLDINGS LLC'S MOTION TO DISMISS DEBTORS' BANKRUPTCY CASES
PURSUANT TO 11 U.S.C. § 1112**

**INTRODUCTION**

215 ER Moore Holdings LLC ("**Moore LLC**"), an indirect member of Debtor 232 Seigel

Acquisition LLC ("**232 Acquisition**") and Debtor 232 Seigel Development LLC ("**232**

**Development**," and collectively with 232 Acquisition, the "**Debtors**"), hereby files this motion to dismiss the instant bankruptcy cases (the "**Motion**"), pursuant to § 1112(b) of Title 11 of the United States Code, 11 U.S.C. §§ 101, *et seq.* (the "**Bankruptcy Code**"). Dismissal of the cases is warranted because the Debtors failed to obtain authorization from Moore LLC to file bankruptcy, in violation of the operating agreements that control the Debtors and their sole member.

## PRELIMINARY STATEMENT

It is a long-recognized principle that whenever a court "finds that those who purport to act on behalf of the corporation have not been granted authority by local law to institute the proceedings, it has no alternative but to dismiss the petition." *Price v. Gurney,* 324 U.S. 100, 106 (1945). A business entity cannot file for bankruptcy relief without proper authorization under the state law in which it is formed. Here, New York law controls because the Debtors and their direct and indirect sole member are limited liability companies formed under New York Law. New York limited liability company law looks to a limited liability company's operating agreement to determine whether a limited liability company has authority to file a bankruptcy petition.

Here, the controlling operating agreements mandate that the Debtors must receive the consent of Northside Seigel LLC, their direct and indirect controlling member, to commence a bankruptcy case. For Northside Seigel to authorize the Debtors' filings, Moore LLC, a member of Northside Seigel LLC, must consent. Not only did Moore LLC not authorize the filings of the Debtors' bankruptcy petitions, it did not even receive notice of the contemplated filings. Accordingly, this Court must dismiss the Debtors' bankruptcy cases for lack of proper authority.

## JURISDICTION AND VENUE

This Court has jurisdiction over this chapter 11 case pursuant to 28 U.S.C. §§ 157 and 1334 and the Amended Standing Order of Referral of Cases to Bankruptcy Judges of

the United States District Court for the Southern District of New York (M–431), dated January 31, 2012 (Preska, C.J.). The determination of whether this is a properly filed bankruptcy petition is a core proceeding pursuant to 28 U.S.C. §§ 157(b)(1) and (b)(2)(A). Venue is proper in this Court pursuant to 28 U.S.C. §§ 1408 and 1409.

## STATEMENT OF FACTS

The relevant facts and documentary evidence are set forth in the accompanying Affidavit of Ryan Taylor ("**Taylor Aff.**").

Richmond Hill Investment Co., LP ("**Richmond Hill**") is the owner of Moore LLC. Richmond Hill's relationship with the Debtors began as a lender and transitioned to one of an equity interest holder.

**The 2014 Loans and 2016 Refinancing**

In 2014, an affiliate of Richmond Hill ("**RH Lender**") extended a loan to affiliates of the Debtors (the "**Moore St Borrowers**"), in the aggregate amount of $30,201,250.00 (the "**Moore St Loan**"). Taylor Aff. ¶ 2. The Moore St Borrowers refinanced the Moore St Loan in November 2016 but were not able to pay in full the outstanding obligations under the Moore St Loan. Notwithstanding, as a concession, RH Lender agreed to release its mortgage and roll over the unpaid balance of the Moore St. Loan into a new loan arrangement with the Debtor 232 Acquisition that included a new advance of additional funds (the "**Seigel Loans**"). *Id.*

The Seigel Loans were secured by mortgages on the property owned by 232 Acquisition located at 232 Seigel Street, Brooklyn, New York (the "**Seigel Property**"). Taylor Aff. ¶ 3. The Debtors' principal, Toby Moskovits, guaranteed the Seigel Loans. *Id.* In addition, and as further consideration for RH Lender's agreement to defer repayment of a portion of the Moore St Loan and advance additional sums, Moore LLC, an affiliate of RH Lender, was granted a 12.5%

membership interest in Northside Seigel LLC ("**Northside Seigel**"). Taylor Aff. ¶ 4. On November 18, 2016, the parties entered into the *Operating Agreement of Northside Seigel LLC, A New York Limited Liability Company* (the "**2016 Northside Seigel Operating Agreement**") to memorialize the new membership structure.

The Debtors refinanced the Seigel Loans on or about December 18, 2018 with a new lender. Taylor Aff. ¶ 6. As part of the refinancing, RH Lender agreed to accept an amount less then payment in full of the Seigel Loans, released its liens and mortgages on the Seigel Property and discharged the underlying 232 Acquisition note. Taylor Aff. ¶ 6. After that date, RH Lender was no longer a lender to or creditor of the Debtors. Toby Moskovits and Michael Lichtenstein agreed personally to assume the unpaid $4.5 million balance of the Seigel Loans and delivered to RH Lender a new promissory note and individual confessions of judgment. Taylor Aff. ¶ 7. Moore LLC retained its 12.5% interest in Northside Seigel. *Id.*

**The LLC Operating Agreements**

The 2016 Northside Seigel Operating Agreement was amended and restated on December 18, 2018 as part of the refinancing of the Seigel Loans and at the request of the new lender. Taylor Aff. ¶ 8. A copy of the 2018 *Amended and Restated Operating Agreement of Northside Seigel LLC* (the "**Northside Operating Agreement**") is attached as Exhibit A to the Ryan Aff.

Northside Seigel is the sole member of Debtor 232 Seigel Development LLC ("**232 Development**") which in turn is the sole member of Debtor 232 Acquisition. A structure chart showing the direct and indirect ownership interests in the Debtors is attached to the Ryan Aff. as Exhibit B.

Toby Moskovits and Michael Lichtenstein hold directly or indirectly 72.5% of the membership interests in Northside Seigel. Moore LLC holds a 12.5% interest in, and another third-party member holds the remaining 15% interest in, Northside Seigel. Moore LLC does not

know if the other member consented to the bankruptcy filings or was even consulted. Taylor Aff. ¶ 9.

The Northside Operating Agreement named Toby Moskovits as the managing member of Northside Seigel. She also serves as the manager of Debtor 232 Acquisition and its sole member, Debtor 232 Development.

The Northside Operating Agreement places limits on Toby Moskovits's powers as managing member. Section 4.3, titled "Major Decisions Requiring Approval of Richmond Hill," mandates that the managing member must obtain the approval of Moore LLC before taking any action that constitutes a "Major Decision". Under the Northside Operating Agreement, a "Major Decision" includes, among others, "the commencement of bankruptcy or other insolvency proceedings" and "taking or approving any action by and through [232 Acquisition or 232 Development] or any direct or indirect subsidiary if such action would require the consent of [Moore LLC] if taken directly by [Northside Seigel]." Northside Operating Agreement (Exhibit A to the Ryan Aff.) at Sec. 4.3(f) and (h). The Northside Operating Agreement further provides that Moore LLC shall not unreasonably withhold, delay or condition its consent to Major Decisions, and nothing "shall restrict or otherwise qualify the Manager's sole and plenary authority to take any and all actions necessary or convenient in furtherance of developing the [Seigel] Property to the maximum square footage, and maximizing the profitability of [Northside Seigel] and the Project." *See* Northside Operating Agreement at Sec. 4.3(a).

As stated above, Northside Seigel is the sole member of 232 Development under that certain *Limited Liability Company Operating Agreement of 232 Seigel Development LLC* ("**232 Development's Operating Agreement**"), attached to the Ryan Aff. as Exhibit C. 232 Development's Operating Agreement includes, among other provisions, a schedule titled "Special

Purpose Bankruptcy Remote Facility" (the "**SPE Covenants**"). The SPE Covenants mandates that 232 Development, "without the unanimous consent of all of its partners, directors or members (including all Independent Directors and/or Independent Managers), as applicable, will not, with respect to itself or to any other entity in which it has a direct or indirect legal or beneficial ownership interest, take any Bankruptcy Action . . . ." *See* 232 Development's Operating Agreement at Schedule B.

232 Development is the sole member of 232 Acquisition. The *Limited Liability Company Operating Agreement of 232 Seigel Acquisition LLC* ("**232 Acquisition's Operating Agreement**")—which is attached to the Ryan Aff. as Exhibit D—includes the same SPE Covenants included in 232 Development's Operating Agreement. The SPE Covenants also mandate 232 Acquisition must obtain 100%-member approval before declaring bankruptcy.

In short, the companies' Operating Agreements cumulatively establish that for 232 Acquisition to file bankruptcy, it must obtain the approval of 232 Development, which in turn must obtain the approval of Northside Seigel. Northside Seigel, by virtue of the Northside Operating Agreement, must obtain approval from Moore LLC before making any Major Decisions such as authorizing the bankruptcy of the Debtors.

**Debtors File for Bankruptcy Without Authority**

On July 14, 2020, the Debtors filed voluntary petitions for relief under chapter 11 of the Bankruptcy Code in this Court. David Goldwasser of GC Realty Advisors signed the bankruptcy petitions as an authorized representative of the Debtors. Goldwasser is unknown to Moore LLC. Taylor Aff. ¶ 12. To Moore LLC's knowledge, he is not a member or manager of the Debtors and

Moore LLC never authorized him to do anything, not to mention file unauthorized bankruptcy petitions on behalf of the Debtors.[1]  Id.

Notably, Moore LLC never received notice of, and was never consulted about, the Debtors' intentions to file bankruptcy. Taylor Aff. ¶ 13.  Moore LLC discovered the bankruptcy after counsel to Moore LLC came across an article in the Commercial Observer online newspaper that reported the filing. Taylor Aff. ¶ 13.

## ARGUMENT

### I. The Debtors' Bankruptcy Cases Should Be Dismissed for Cause

Section 1112 of the Bankruptcy Code authorizes dismissal of a case for cause when it is in the best interest of the creditors and the estate to do so.  11 U.S.C. § 1112.  Section 1112(b)(4) lists circumstances that constitute cause to dismiss a case and grants the bankruptcy court broad equitable discretion to grant relief based upon the facts and circumstances of a particular case.  *Lynch v. Barnard*, 590 B.R. 30, 34–35 (E.D.N.Y. 2018).  However, the list of circumstances that justify dismissal for cause specified in § 1112(b) "is illustrative, not exhaustive." *C-TC 9th Ave. P'ship v. Norton Co., Maplewood Colonie Common Sch. Dist., Town of Colonie (In re C-TC 9th Ave. P'ship)*, 113 F.3d 1304, 1311 (2d Cir. 1997).  Here, cause exists for a reason not listed in § 1112(b)(4).  The Debtors were not authorized to file the bankruptcy petitions in the first place.

### II. The Debtors Were Not Authorized to File for Bankruptcy

---

[1] To movant's surprise, the only information readily available about Goldwasser is that he is a convicted felon, convicted of defrauding two banks in the early 2000s, and served 27 months in federal prison.  As a result of his conviction, Goldwasser is prohibited from acting in a fiduciary capacity.  *See* Marty Diduch and Eddie Small, *Amid Fraud Case, a Bevy of Brooklyn Properties End Up in Bankruptcy Court*, THE REAL DEAL, June 17, 2019, https://therealdeal.com/2019/06/17/amid-fraud-case-a-bevy-of-brooklyn-properties-end-up-in-bankruptcy-court/.
Yet, now he is allegedly acting as an authorized representative of debtors in possession, which by its nature is a fiduciary role.

The limited liability company operating agreements of the Debtors required the consent of Northside Seigel to file for bankruptcy protection. The consent of Moore LLC was required for Northside Seigel to consent to the Debtors' filings. Moore LLC was not asked and did not provide its consent. If the petitioning entity lacks authorization under state law, the bankruptcy court "has no alternative but to dismiss the petition." *Price v. Gurney,* 324 U.S. 100, 106 (1945). State law governs whether a business entity is authorized to file a petition in bankruptcy. *In re E. End Dev., LLC*, 491 B.R. 633, 638 (Bankr. E.D.N.Y. 2013) (citing *In re Am. Globus Corp.,* 195 B.R. 263, 265 (Bankr. S.D.N.Y. 1996). As the Debtors are New York limited liability companies, the issue of authorization is governed by New York state law. Under New York Limited Liability Company Law, the LLC operating agreement governs the what authority a limited liability company and its manager(s) have.

N.Y. Limited Liability Company Law § 408(a) provides that the operating agreement governs the scope of an LLC manager's authority. Specifically, that section states: "If the articles of organization provides that the management of the limited liability company shall be vested in a manager or managers or class or classes of managers, then the management of the limited liability company shall be vested in one or more managers or classes of managers in accordance with this chapter, subject to any provisions in the articles of organization or the operating agreement and section four hundred nineteen of this article granting or withholding the management powers or responsibilities of one or more managers or class or classes of managers. A manager shall hold such offices and have such responsibilities accorded to him or her by the members as provided in the operating agreement."

The Northside Operating Agreement is governed by the principles of New York contract law. "When a contract's terms are clear and unambiguous, the intent of the parties must be found

within the four corners of the contract." *Chesapeake Energy Corp. v. Bank of New York Mellon Trust Co.*, 773 F.3d 110, 114 (2d Cir. 2014). Here, the terms of the Operating Agreements are clear. Each of the Debtors needed the unanimous consent of its members to file bankruptcy. *See* SPE Covenants. The sole member of 232 Acquisition is 232 Development. The sole member of 232 Development is Northside Seigel. Ultimately, the decision was that of Northside Seigel whether either or both Debtors may file for bankruptcy relief. In order for Northside Seigel to authorize the Debtors' filing, the consent of Moore LLC is required under Section 4.3 of the Northside Operating Agreement. The language is clear and unambiguous. Bankruptcy of the Debtors is a "Major Decision". The Northside Operating Agreement requires the prior consent of Moore LLC for any Major Decision, which consent is not to be unreasonably withheld. *See* Northside Operating Agreement at Sec. 4.3. The only exceptions being physical real estate development decisions such as size and scope of the project. Moore LLC did not give its consent. In fact, Moore LLC was never even asked. Thus, the Debtors cannot argue that consent is being unreasonably withheld. Without Moore LLC's consent, the Debtors could not file their bankruptcy petitions. Therefore, the Debtors' bankruptcy cases must be dismissed for cause.

### III. The SPE Covenants are Enforceable

The SPE Covenants, incorporated into the Debtors' Operating Agreements, are unambiguous and fully enforceable. The SPE Covenants required the Debtors to seek authorization up the ownership chain with ultimate authority in the hands of Northside Seigel to authorize the Debtors' filings. Courts in this jurisdiction and in others have enforced similar provisions. *See In re Pasta Bar by Scotto II, LLC,* 2015 WL 7307246 (Bankr. S.D.N.Y. 2015); *see also In re Franchise Servs. of N. Am., Inc.*, 891 F.3d 198 (5th Cir. 2018);

*In re DB Capital Holdings, LLC*, 463 B.R. 142 (10th Cir. BAP 2010); *In re Avalon Hotel Partners, LLC,* 302 B.R. 377 (Bankr. D. Ore. 2003).

In *Pasta Bar*, for instance, the bankruptcy court dismissed an LLC's chapter 11 case because it failed to obtain the proper authorization pursuant to its operating agreement. *Pasta Bar*, 2015 WL 7307246 at *3. The *Pasta Bar* debtor was comprised of two members, each with a 50% interest. The managing member filed for bankruptcy without seeking authorization from the other member. *Id.* at *1. The court reviewed the terms of the LLC's operating agreement, which stated that the operating manager could not make a "Major Decision" without obtaining consent from 75% of the members. *Id.* A "Major Decision" under the operating agreement included "commencing any case, proceeding or other action on behalf of the Company under any existing or future law of any jurisdiction relating to bankruptcy, insolvency, reorganization, or relief of debtors . . . ." *Id.* at *1–2. The bankruptcy court opined that the terms of the operating agreement "makes clear what is required before a bankruptcy petition may be filed. It is undisputed that the supermajority vote requirement was not satisfied." *Id.* at *3. The court consequently dismissed the chapter 11 case. *Id*.

The circumstances here are similar. Moore LLC is a 12.5% member of Northside Seigel. The Northside Operating Agreement clearly states the Debtors could not file for bankruptcy without first obtaining the consent of Moore LLC. Moore LLC, in return, could not unreasonably withhold consent. However, the Debtors never gave Moore LLC the chance to authorize the bankruptcies because the Debtors failed to request the authorization in the first place.

Courts have also upheld provisions limiting an entity's ability to file for bankruptcy when the members held dual roles as members and creditors. In *Franchise Servs. of N. Am., Inc.*, the Fifth Circuit affirmed the dismissal a bankruptcy case of a corporation for failure to obtain proper

10

authorization over the debtor's objection that the moving party was a creditor as a well as a member of the LLC. *Franchise Servs.*, 891 F.3d at 214. There, the debtor received a $15 million investment from a creditor in exchange for 100% of the debtor's preferred stock. *Id.* at 206. As a result, the debtor reincorporated in Delaware. *Id.* The new incorporation certificate provided that the debtor may not "effect any Liquidation Event" unless it has the approval of both the majority of preferred and common stock shareholders. *Id.* The debtor filed for bankruptcy without the 100% preferred stock shareholder, which resulted in the shareholder moving for dismissal. *Id.* The bankruptcy court dismissed the debtor's case. *Id.*

On appeal, the court examined the debtor's organizational documents under the governing state law and determined that state law did not explicitly prohibit provisions limiting bankruptcy options by requiring a supermajority of members giving consent. *Franchise Servs.*, 891 F.3d at 207–08. After making that determination, the court narrowed its focus to the role of the 49.7% equity holder seeking dismissal, which was also a creditor owed $3 million for its services in completing a merger before the debtor filed for bankruptcy. *Id.* at 208. That equity holder obtained the 49.7% interest —the largest single stake in the debtor—after investing $15 million in the debtor for 100% of the debtor's preferred stock. *Id.* at 206. The court posited that it "strains credulity to believe that [the equity holder] made a $15 million equity investment just to hedge against the possibility that [the debtor] might not pay a $3 million bill." *Id*. at 209. Instead the court determined that the equity holder was properly exercising its rights under the incorporation certificate, and such provision limiting bankruptcy options was not contrary to the governing state law. *Id.* at 210–11.

The facts are similar here. It is true that Moore LLC obtained its membership interest in Northside Seigel in connection with a prior loan made by an affiliate of Moore LLC. However, as

11

the pre-petition history demonstrates, that loan to 232 Acquisition was refinanced in 2018. Since then, and continuing today, RH Lender is not a creditor of the Debtors. Nevertheless, Moore LLC retained its 12.5% membership interest in Northside Seigel. The membership interest has value to Moore LLC independent of any prior debt relationship. Moore LLC only wears one "hat"—that of an equity holder. Moreover, the initial membership interest granted in 2016 was not merely an equity kicker for a loan. It was granted to Moore LLC as part of a transaction where its affiliate RH Lender agreed to defer repayment of a portion of the Moore St Loan, advance new money, and accept substitute collateral. RH Lender assumed additional risk in 2016 and in consideration, its affiliate Moore LLC was given the 12.5% membership interest in Northside Seigel.

The distinction is significant. Courts have struck down bankruptcy restrictions or prohibitions if their sole purpose was to give a lender the ability to prevent a company from filing bankruptcy. In *In re Intervention Energy Holdings, LLC,* the Delaware court struck such a provision. 558 B.R. 258 (Bankr. D. Del 2016). There, the debtor was a privately-owned oil and gas company that obtained a $200 million secured loan from a lender. *Id*. at 261. The lender and debtor executed an amendment to their agreement that provided a change to the limited liability company agreement "to require approval of each holder of common units of the Parent prior to any voluntary filing for bankruptcy protection . . . ." *Id.* at 262. The debtor filed for bankruptcy without the consent of the secured lender, who then moved to dismiss. *Id.* In its review of the dismissal motion, the bankruptcy determined the parties attempted to "contract away the right to seek bankruptcy relief" and found that to violate the principles of federal law. *Id.* at 265. The court specifically found that:

> [a] provision in a limited liability company governance document obtained by contract, the sole purpose and effect of which is to place into the hands of a single, minority equity holder the ultimate authority to eviscerate the right of that entity to seek federal

> bankruptcy relief, and the nature and substance of whose primary relationship with the debtor is that of creditor—not equity holder—and which owes no duty to anyone but itself in connection with an LLC's decision to seek federal bankruptcy relief, is tantamount to an absolute waiver of that right, and, even if arguably permitted by state law, is void as contrary to federal public policy.

*Id.* The court subsequently denied the motion to dismiss. *Intervention Energy*, 558 B.R. at 265.

The facts of this instant case are easily distinguishable. As stated before, Moore LLC is not trying to use its membership rights under the Northside Operating Agreement to protect its debt position. Moore LLC is not a creditor of the Debtors and has not been for over a year and a half. Nor is this a matter in which Moore LLC demanded a bankruptcy consent provision to frustrate the Debtors' ability to seek bankruptcy and thereby to ensure repayment of its prior loan. Moore LLC received an equity stake in Northside Seigel in consideration for the 2016 concessions made by Moore LLC's affiliate RH Lender when it agreed to defer repayment of a portion of the Moore St Loans and accept substitute collateral. Thus, ample consideration beyond a mere loan was provided in exchange for the membership interest in Northside Seigel.

## **CONCLUSION**

The Debtors violated the terms of their Operating Agreements and those of the Northside Operating Agreement by failing to obtain or even request the consent of Moore LLC to file the Debtors' bankruptcy petitions. Absent due authorization, the Debtors' bankruptcy cases cannot proceed and must be dismissed.

For the foregoing reasons, Moore LLC respectively requests that the Court dismiss the Debtors' bankruptcy cases.

<table>
<tr><td>Dated: August 13, 2020<br>New York, New York</td><td>**RESPECTFULLY SUBMITTED,**<br><br>By: /s/ Douglas B. Rosner<br><br>Douglas B. Rosner, Esq.<br>GOULSTON & STORRS PC<br>400 Atlantic Avenue<br>Boston, Massachusetts 02110-3333<br>Tel:   (617) 482-1776<br>Fax:   (617) 574-4112<br>drosner@goulstonstorrs.com<br><br>Yara Kass-Gergi, Esq.<br>885 Third Avenue, 18th Floor<br>New York, New York 10022<br>Tel:   (212) 878-6900<br>Fax:   (212) 878-6911<br>YKass-Gergi@GOULSTONSTORRS.com<br><br>*Counsel to ER 215 Moore Holdings LLC*</td></tr>
</table>