UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK
--------------------------------------------------------x
In re                                                   Chapter 11

      232 Seigel Development LLC,             Case no.  20-22844 (RDD)

                  Debtor.
--------------------------------------------------------x
In re                                                   Chapter 11

      232 Seigel Acquisition LLC,             Case no.  19-22845 (RDD)

                  Debtor.
--------------------------------------------------------x

## REPLY TO OBJECTIONS TO DISCLOSURE STATEMENTS

        232 Seigel Development LLC ("Development") and 232 Seigel Acquisition LLC ("Acquisition"), the debtors and debtors-in-possession (each a "Debtor" and collectively the "Debtors"), as and for their reply to the objections interposed by DB 232 Seigel LLC ("Mortgagee"), DB 232 Seigel Mezz LLC ("Mezz Lender," together with Mortgagee, the "Lenders") and ER 215 Moore Holdings LLC ("Moore") to the Development plan ("Development Plan") and the Acquisition plan ("Acquisition Plan," together with the Development Plan, the "Plans") and Acquisition disclosure statement ("Disclosure Statement") represent as follows:

        1.        On July 14, 2020, Acquisition filed a Chapter 11 petition and Development, Acquisition's parent company, filed a Subchapter 5 petition under Chapter 11. Development amended its petition to remove the Subchapter 5 small business designation.

        2.        Acquisition owns the real property at 232 Seigel Street, Brooklyn, New York (the "Property") valued at $18,000,000 based on the February 26, 2020 purchase and sale agreement with 232 Seigel Property, LLC (the "Purchaser"), a copy of which is annexed to the

Plans as Exhibit A (the "Sale Contract"). The Property is an assemblage of properties with approved plans to develop full-service hotel with 150 rooms with amenities, community space, parking and other features.

3.     The Property is subject to the Mortgagee's claim asserted in the amount of $6,378,750 ("Mortgage Loan").

4.     The Mezz Lender asserts a $3,825,520 claim against Development secured by Development's membership interests ("Membership Interests") in Acquisition (the "Mezz Loan").

5.     Moore holds a $4,500,000 unsecured guarantee against each of the Debtors.

6.     The Debtors' objective since filing these cases has been to sell the Property under the Plan and distribute the proceeds to creditors in their order of priority.

7.     The Lenders and Moore do not necessarily appear to be opposed to a sale in principle. Their various pleadings indicate skepticism regarding the Debtors' intention to implement such a sale.

8.     In response to the Lenders' objection to Development's Subchapter 5 election, the Development filed an amended petition deleting the Subchapter 5 election. The Debtors filed a motion for joint administration. The Debtors are prepared to proceed with a joint plan substantially in the form annexed hereto. Also attached is a redlined version.

9.     The Debtors obviously did not count on the Sale Contract closing since the Plans proposed to sell the Property under the Sale Contract subject to higher and better offers.

The $18,000,000 purchase price under the Sale Contract, however, is sufficient to pay all claims in full.  It provides a useful benchmark for value, so the Debtors believe it is helpful to include it in the sale procedures.  In the new Joint Plan and Disclosure Statement, the Debtors propose to amend the Disclosure Statement as follows regarding the Sale Contract:

> 10. ~~7.~~ Shortly after entering into the ~~Contract of~~ Sale Contract, the mortgage market was frozen. ~~8.~~ Closing was scheduled for May 21, 2020. ~~The Purchaser projects~~ 232 Seigel Property, LLC projected that if it ~~won't be able to~~ could close, it would not be until at least approximately November 2020.

10.     In response to the objections to the Debtors' disclosure of the amounts of claims, the Debtors propose to update the amounts with the proof of claim amounts, and the amended scheduled amounts as follows (with corresponding adjustments to the "Classification" description for each creditor class.

> 11. ~~9.~~ The Property is subject to a mortgage held by DB Seigel LLC ("Mortgagee") ~~in the~~, The Mortgagee's proof of claims asserts an outstanding amount of ~~approximately $5,250,000~~ $6,378,750 ("Mortgage Loan").

> 12. ~~10.~~ DB 232 Seigel Mezz LLC ("Mezz Lender"), an affiliate of the Mortgagee, ~~holds~~ asserts a $~~3,000,000~~ 3,825,520 claim against ~~232~~ Development secured by ~~232~~ Development's membership interests ("Membership Interests") in ~~the Debtor~~ Acquisition (the "Mezz Loan").

11.     Neither the Lenders nor Moore objected to specific Bidding and Auction Procedures.  But instead objected to the absence of disclosure on marketing and credit bidding.  On marketing, the Debtors intended to retain a professional and to permit a minimum of sixty days' marketing.  Subject to further discussions among the parties, therefore, the Debtors have proposed the following addition to the Means for Implementation section of the Plan and Disclosure Statement:

**Marketing –** The Property shall be sold following a minimum two months of marketing by a broker or auctioneer to be retained by order of the Court upon the consent of the Lenders, Moore and the Office of United States Trustee, or following application, notice and hearing. The Debtors anticipate closing in March 2021.

12.     Neither the Plan nor the Bidding and Auction Procedures restrict credit bidding rights.  To provide comfort to the Lenders on that issue, the Debtors propose the following addition to the Bidding and Auction Procedures:

Credit Bidding: Notwithstanding anything to the contrary in these Bidding and Auction Procedures or in the Plan, the rights of claimants to credit bid under sections 363(k) and 1123 of the Bankruptcy Code are fully preserved.

13.     In summary, the Debtors are prepared to proceed with a liquidating plan substantially similar to the draft annexed hereto so that Property may be sold and the proceeds distributed to Creditors promptly.

## CONCLUSION

WHEREFORE, the Debtors respectfully request that the Moton be denied and that the Court grants such other relief as may be just and proper.

Dated: New York, New York
        October 7, 2020

**BACKENROTH FRANKEL & KRINSKY, LLP**
**Attorneys for Debtors**


By:     s/Mark Frankel
        800 Third Avenue
        New York, New York 10022
        (212) 593-1100

Mark Frankel
Backenroth Frankel & Krinsky, LLP
800 Third Avenue, Floor 11
New York, New York 10022
(212) 593-1100

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------x

In re                                                                    Chapter 11

    232 ~~Seigel Acquisition~~SEIGEL DEVELOPMENT LLC **,** Case no. ~~20-22845~~20-22844 (RDD)

        Debtor.
------------------------------------------------------------x

In re                            Chapter 11

        232 SEIGEL ACQUISITION LLC,       Case no. 19-22845 (RDD)

          Debtor.
------------------------------------------------------------x

## **JOINT DISCLOSURE STATEMENT**

**THIS IS NOT A SOLICITATION OF ACCEPTANCE OR REJECTION OF THE PLAN. ACCEPTANCES OR REJECTIONS MAY NOT BE SOLICITED UNTIL A DISCLOSURE STATEMENT HAS BEEN APPROVED BY THE COURT. THIS DISCLOSURE STATEMENT IS BEING SUBMITTED FOR APPROVAL BUT HAS NOT BEEN APPROVED BY THE COURT.**

**THIS DISCLOSURE STATEMENT IS BEING SUBMITTED TO ALL CREDITORS AND PARTIES IN INTEREST OF 232 SEIGEL ~~ACQUISTION. (THE "~~DEVELOPMENT LLC AND 232 SEIGEL ACQUISITION LLC, (EACH A DEBTOR, AND COLLECTIVELY, THE "DEBTORS").**

**THIS DISCLOSURE STATEMENT CONTAINS INFORMATION THAT MAY AFFECT CREDITORS' DECISIONS TO ACCEPT OR REJECT THE PLAN OF REORGANIZATION, A COPY OF WHICH IS ANNEXED HERETO AS EXHIBIT A.**

**ALL CREDITORS ARE URGED TO READ THIS DISCLOSURE STATEMENT CAREFULLY. ALL CAPITALIZED TERMS CONTAINED IN THIS DISCLOSURE STATEMENT SHALL HAVE THE SAME MEANING AS CAPITALIZED TERMS CONTAINED IN THE PLAN OF REORGANIZATION.**

**~~THIS IS NOT A SOLICITATION OF ACCEPTANCE OR REJECTION OF THE PLAN. ACCEPTANCES OR REJECTIONS MAY NOT BE SOLICITED UNTIL A~~**

DISCLOSURE STATEMENT HAS BEEN APPROVED BY THE COURT. THIS DISCLOSURE STATEMENT IS BEING SUBMITTED FOR APPROVAL BUT HAS NOT BEEN APPROVED BY THE COURT.

**<u>INTRODUCTION</u>**

1.     232 ~~Seigel~~ SEIGEL DEVELOPMENT LLC ("Development") and 232 SEIGEL ACQUISITION LLC, ("Acquisition ~~LLC~~") (~~the~~each a "Debtor," and collectively, the "Debtors")~~, submits~~ submit this joint disclosure statement ("""Disclosure Statement"") in connection with ~~its~~their joint plan of reorganization (""Plan"") under Chapter 11 of the United States Bankruptcy Code.  A copy of the Plan is attached hereto as Exhibit A.  All Creditors are urged to review the Plan, in addition to reviewing this Disclosure Statement.  All capitalized terms used but not defined shall have the meaning set forth in the Plan.

2.     This Disclosure Statement is not intended to replace a review and analysis of the Plan.  Rather, it is submitted as a review of the Plan in an effort to explain the Plan.  To the extent a Creditor has questions, the ~~Debtor urges~~Debtors urge you to contact ~~Debtor~~Debtors's counsel, Mark Frankel, Esq., at 212.593.1100 or mfrankel@bfklaw.com and every effort will be made to assist you.

3.     ~~1.~~On _____, 2020, after notice and a hearing, the Bankruptcy Court entered an order approving this Disclosure Statement as containing information of a kind and in sufficient detail, as far as is reasonably practicable in light of the nature and history of the ~~Debtor~~Debtors and the condition of the ~~Debtor's~~Debtors' books and records, to enable Creditors whose votes are being solicited to make an informed judgment ~~on~~whether to accept or reject the Plan.

4.     ~~2.~~EXCEPT AS SET FORTH IN THIS DISCLOSURE STATEMENT, NO REPRESENTATIONS CONCERNING THE ~~DEBTOR~~DEBTORS, ~~ITS~~THEIR ASSETS, ~~ITS~~THEIR PAST OR FUTURE OPERATIONS, OR THE PLAN ARE AUTHORIZED, NOR

ARE ANY SUCH REPRESENTATIONS TO BE RELIED UPON IN ARRIVING AT A DECISION WITH RESPECT TO THE PLAN.

5. ~~3.~~ THE INFORMATION CONTAINED IN THIS DISCLOSURE STATEMENT HAS BEEN SUPPLIED BY THE ~~DEBTOR~~DEBTORS.  THE ~~DEBTOR~~DEBTORS~~'S~~ BOOKS AND RECORDS HAVE BEEN USED TO PROVIDE THE INFORMATION CONCERNING THE ~~DEBTOR~~DEBTORS~~'S~~ FINANCIAL CONDITION AS SET FORTH IN THE DISCLOSURE STATEMENT.  BASED UPON THE INFORMATION MADE AVAILABLE, ~~DEBTOR~~DEBTORS~~'S~~ COUNSEL HAS NO INFORMATION TO INDICATE THAT THE INFORMATION DISCLOSED HEREIN IS INACCURATE. NEITHER THE ~~DEBTOR~~DEBTORS NOR ~~DEBTOR~~DEBTORS~~'S~~ COUNSEL, HOWEVER, IS ABLE TO STATE DEFINITIVELY THAT THERE IS NO INACCURACY HEREIN OR THAT FUTURE EVENTS MAY NOT RENDER THE INFORMATION CONTAINED HEREIN INACCURATE.

6. After reviewing this Disclosure Statement indicate your vote to accept or to reject the Plan on the enclosed ballot, and return the ballot to counsel for the Debtors to be received by _____, 2020.

7. ~~4.~~ The Bankruptcy Court has entered an Order fixing _____, 2020, at _____a.m., at the United States Bankruptcy Court, 300 Quarropas Street, White Plains, NY 10601−5008, as the date, time and place for the hearing on confirmation of the Plan~~,~~ and fixing _____, 2020, ~~at 5:00 p.m.~~ as the last date for ~~voting and for~~ the filing and serving of any objections to confirmation of the Plan.  A copy of any objection to confirmation of the Plan must be filed with the Court, served on Debtors' counsel

2

and delivered to Judge Robert D. Drain's chambers at the United States Bankruptcy Court, 300 Quarropas Street, White Plains, NY 10601−5008 on or before such date.

## BACKGROUND

8. ~~5.~~ On July 14, 2020, ~~the Debtor~~Acquisition filed a Chapter 11 petition and Development, Acquisition's parent company, filed a Subchapter 5 petition under ~~Title~~Chapter 11 ~~of the United States Code, 11 U.S.C. 101 et seq. (the "Bankruptcy Code").  On the same day, 232 Seigel~~.  Development ~~LLC ("232 Development"), the Debtor's parent company,~~ filed ~~a~~an amended petition to remove the Subchapter 5 ~~petition~~small business election.

9. ~~6.~~ ~~The Debtor~~Acquisition owns the real property at 232 Seigel Street, Brooklyn, New York (the "Property") valued at $18,000,000 based on the February 26, 2020 purchase and sale agreement with 232 Seigel Property, LLC ~~(the "Purchaser")~~, a copy of which is annexed to the Plan as Exhibit A (the "Sale Contract ~~of Sale~~").  The Property is an assemblage of properties with approved plans to develop full-service hotel with 150 rooms with amenities, community space, parking and other features.

10. ~~7.~~ Shortly after entering into the ~~Contract of~~ Sale Contract, the mortgage market was frozen.~~8.~~  Closing was scheduled for May 21, 2020.  ~~The Purchaser projects~~232 Seigel Property, LLC projected that ~~if~~ it ~~won't be able to~~could close, it would not be until at least approximately November 2020.

11. ~~9.~~ The Property is subject to a mortgage held by DB Seigel LLC ("Mortgagee") ~~in the~~.  The Mortgagee's proof of claims asserts an outstanding amount of ~~approximately $5,250,000~~$6,378,750 ("Mortgage Loan").

4

12. ~~10.~~ DB 232 Seigel Mezz LLC ("Mezz Lender"), an affiliate of the Mortgagee, ~~holds~~asserts a $~~3,000,000~~1,425,520 claim against ~~232~~Development secured by ~~232~~Development's membership interests ("Membership Interests") in ~~the Debtor~~Acquisition (the "Mezz Loan").

13. ~~11.~~The asserted Mortgage and Mezz ~~Loan~~Loans total about $~~8,250,000~~10,204,470.  In addition, there is about $6,397,010 of combined unsecured debt against both Debtors, including ~~the~~a disputed $4,500,000 guarantee claim ~~asserted~~held by ER 215 Moore Holdings, LLC against both 232 Development and 232 Acquisition.  The grand total of disputed and undisputed debt is therefore $~~14,647,010~~16,601,280.

14. ~~12.~~Since the Sale Contract could not close due to Covid, neither ~~232~~Acquisition nor ~~232~~Development could pay creditors as planned.

15. ~~13.~~The Mezz Lender had scheduled a sale of the Membership ~~interests~~Interests for April 7, 2020.  The Mezz Lender adjourned that sale to May 5, 2020, then to June 23, 2020, and finally to July 14, 2020.  But refused to adjourn the sale further.  That final adjournment notice was ambiguous and appeared to potentially contemplate the sale of both the Property and the Membership ~~Interest~~Interests.

16. ~~14.~~With the New York state courts closed for all practical purposes, Acquisition and Development had no choice but to file Chapter 11 petitions or risk losing the equity in the Property, and their ability to pay~~, among others, ER 215 Moore Holdings LLC~~ creditors.

17. ~~15.~~ The bankruptcy strategy is not to obstruct payment to creditors, but to pay creditors in full in cash from the net sale proceeds ("Sale Proceeds") at closing the sale of the Property under the Plan.

18. ~~16.~~ The ~~net~~ Sale Proceeds after payment of ~~232~~ Acquisition's creditor claims will be disbursed to ~~232~~ Development, as Acquisition's sole shareholder. ~~Under the Development Subchapter 5 plan, those~~Those net Sale Proceeds will be distributed to 232 Development's creditors, and then to its sole member, assuming there is a surplus.

19. ~~17.~~ Since the grand total of asserted debt is $~~14,647,010~~16,601,280 whereas the Sale Contract purchase price is $18,000,000, all creditors ~~will likely~~may be paid ~~if~~in full~~,~~ ~~including ER 215 Moore Holdings LLC,~~ even if the Sale Contract ~~of Sale~~ does not close and the Property must be sold by auction a reduced price.

20. ~~18.~~ ER 215 Holdings LLC, however, filed a motion to dismiss the bankruptcy cases, and the Mortgage and Mezz Lenders filed lift stay motions so they could liquidate under New York law. This, notwithstanding the fact that the sale of the Property in ~~those~~these cases would be fastest and surest way for payment. ~~This dismissal motion~~Those motions, therefore, ~~evidences~~suggest an unspoken agenda which does not involve merely collecting the amounts ~~it may~~ legitimately ~~be~~ owed.

21. ~~19.~~ In summary, the Plan proposes to sell the Property under the Contract of Sale subject to higher and better offers, with the Sale Proceeds to be distributed to creditors in their order of priority. The net Sale Proceeds after payment of creditor claims will be disbursed to 232 Development, as ~~the Debtor~~Acquisition's sole shareholder. ~~Under the 232 Development~~

Subchapter V plan, those Those net Sale Proceeds will be distributed to 232 Development's creditors, and then to its sole member.

## DEBTOR DEBTORS'S PLAN OF REORGANIZATION

## CLASSIFICATION AND TREATMENT OF CLAIMS

### Acquisition Class 1

22. 20. **Classification** – Real estate tax New York City Liens. Debtor Acquisition estimates $0.00 due.

23. 21. **Treatment** — _ Payment on the Effective Date in full in Cash from the Property Sale Proceeds of Allowed Amount of each such Claim on the Effective Date, plus interest at the applicable statutory rate as it accrues from the Petition Date through the date of payment.

24. 22. **Voting** – Unimpaired and deemed to have accepted the Plan.

### Acquisition Class 2

25. 23. **Classification** – DB Seigel LLC first mortgage on the Property. The Debtor estimates that the amount due is $5,250,000 Mortgagee asserts a $6,378,750 Claim.

26. 24. **Treatment** – After payment of Class 1 Acquisition Administrative Claims and Acquisition unclassified Priority Tax Claims, payment on Effective Date of available Cash from the Property Sale Proceeds up to the Allowed Amount of the Class 2 Claim plus interest at the applicable contract rate as it accrues from the Petition Date through the date of payment.

27. 25. **Voting** – Impaired and entitled to vote to accept or reject the Plan.

### Acquisition Class 3

28.    26. **Classification** –   Priority Claims under Sections 507(a)(2),(3),(4),(5),(6),(7) and (78) of the Bankruptcy Code..  DebtorAcquisition estimates $0 due.

29.    27. **Treatment** – Payment on the Effective Date in full in Cash from the Property Sale Proceeds of Allowed Amount of each such Claimon the Effective Date, plus interest at the applicable statutory rate as it accrues from the Petition Date through the date of payment.

30.    28. **Voting** -- Unimpaired and deemed to have accepted the Plan..

**Acquisition Class 4**

31.    29. **Classification** – General Unsecured Claims.  Acquisition estimates asserted Claims totaling $6,397,010, plus the Allowed Amount of any Class 5 deficiency Claim.

32.    30. **Treatment** – After payment of Acquisition Administrative Claims, Acquisition unclassified Priority Tax Claims, and Acquisition Class 1, 2 and 3 Claims, Payment on the Effective Date of available Cash from the Property Sale Proceeds up to the Allowed Amount of each Class 4 Claim plus interest at the Legal Rate as it accrues from the Petition Date through the date of payment.

33.    31. **Voting** – Impaired and entitled to vote to accept or reject the Plan..

**Acquisition Class 5**

34.    **Classification** –Development, Acquistion's sole Interest Holder.

35.    **Treatment** – Payment on Effective Date of available Cash from the Property Sale Proceeds after payment of Acquisition Administrative Claims, Acquisition unclassified Priority tax Claims, and Acquisition Class 1, 2, 3 and 4 Claims.

36.    **Voting –** Impaired and entitled to vote to accept or reject the Plan.

**Development Class 1**

37.    **Classification** – DB Seigel LLC holds the Mezz Loan, consisting of a note and security interest in the Membership Interests.  Mezz Lender asserts a $1,425,520 Claim.

38.    **Treatment** – Payment on Effective Date of available Cash from the distribution to Acquisition Class 5, after payment of Development Administrative Claims and Development unclassified Priority tax Claims, up to the Allowed Amount of the Class 1 Claim plus interest at the applicable rate as it accrues from the Petition Date through the date of payment.

39.    **Voting** – Impaired and entitled to vote to accept or reject the Plan.

**Development Class 2**

40.    **Classification –**  Priority Claims under Sections 507(a)(2),(3),(4),(5),(6),(7) and (8) of the Bankruptcy Code..  Development estimates no Class 2 Claims.

41.    **Treatment** – Payment in full in Cash of Allowed Amount on the Effective Date, plus interest at the applicable statutory rate as it accrues from the Petition Date through the date of payment.

42.    **Voting --** Unimpaired and deemed to have accepted the Plan.

**Development Class 3**

43.    **Classification** – General Unsecured Claims.   Development estimates asserted Claims totaling $6,397,010..

**44.     Treatment** – Payment on Effective Date of available Cash from the distribution to Acquisition Class 5, after payment of Development Administrative Claims, Development unclassified Priority tax Claims and Development Class 1 and 2 Claims, up to the Allowed Amount of each Class 3 Claim plus interest at the Legal Rate as it accrues from the Petition Date through the date of payment..

**45.     Voting** – Impaired and entitled to vote to accept or reject the Plan.

**Development Class 4**

46.     ~~32.~~ **Classification** – Interests Holders.

47.     ~~33.~~ **Treatment** – Payment on Effective Date of available Cash ~~from the Property Sale Proceeds~~ after payment of ~~Administrative Claims, unclassified Priority tax Claims, and Class 1, 2, 3 and 4~~all Acquisition and Development Claims.

48.     ~~34.~~ **Voting** – Impaired and entitled to vote to accept or reject the Plan.

**UNCLASSIFIED PRIORITY TAX CLAIMS**

49.     ~~35.~~ Priority tax Claims under Sections 507(a)(8) of the Bankruptcy Code. ~~The Debtor estimates that the amount due by the Debtor totals~~Filed and Scheduled Claims total approximately ~~$0.00~~0.  The treatment of such Claims, if any, shall be payment in Cash on the Effective Date, of Allowed Amount of each such Claim plus interest at the applicable statutory rate as it accrues from the Petition Date through the date of payment.

**ADMINISTRATIVE EXPENSES**

50.     ~~36.~~ Allowed Administrative Expenses shall be paid in full, in cash on the Effective Date, or the date such Administrative Expense becomes Allowed or as soon as

practicable thereafter, except to the extent that the holder of an Allowed Administrative Expense agrees to a different treatment; provided, however, that Allowed Administrative Expenses representing obligations incurred in the ordinary course of business or assumed by the ~~Debtor~~Debtors shall be paid in full or performed by the ~~Debtor~~Debtors in the ordinary course of business or pursuant to the terms and conditions of the particular transaction.

51. 37. Unless otherwise ordered by the Bankruptcy Court, requests for payment of Administrative Claims (except for Professional Fee Claims) must be filed and served no later than 35 days after entry of the Confirmation Order (the "Administrative Claims Bar Date"). Any Person that is required to file and serve a request for payment of an Administrative Claim and fails to timely file and serve such request shall be forever barred, estopped, and enjoined from asserting such Claim or participating in distributions under the Plan on account thereof. Objections to requests for payment of Administrative Claims (except for Professional Fee Claims and Administrative Claims incurred in the ordinary course of the ~~Debtor~~Debtors's business) must be filed and served on counsel for the ~~Debtor~~Debtors and the party requesting payment of an Administrative Claim within thirty (30) days of the date such request for payment has been filed.

52. 38. Unless otherwise ordered by the Bankruptcy Court, and subject to notice and a hearing under section 330 of the Bankruptcy Code, requests for payment of Professional Fee Claims incurred through the Confirmation Date must be filed and served no later than sixty (60) days after the Effective Date (the "Professional Fee Claims Bar Date"). 39. The ~~Debtor~~Debtors estimate legal fees of approximately $75,000 through the Confirmation Date, inclusive of any interim fees that may be awarded before that date.

**STATUTORY FEES**

53.    The Debtors shall pay from Cash in the Estate all fees payable due as of the Effective Date pursuant to section 1930 of title 28 of the United Sates Code. Thereafter, the ~~Debtor~~Debtors shall pay from Cash in the Estate all United States Trustee quarterly fees under 28 U.S.C. § 1930(a)(6), plus interest due under 31 U.S.C. § 3717, on all disbursements, including plan payments and disbursements in and outside of the ordinary course of business, until the earliest of the entry of a final decree closing the Chapter 11 Case, dismissal of the Chapter 11 Case, or conversion of the Chapter 11 Case to a case under chapter 7 of the Bankruptcy Code.

**MEANS FOR IMPLEMENTATION**

54.    ~~40. Source of Funds~~ — Payments under the Plan will be made from the Sale Proceeds of ~~the Debtor~~Acquisition's Property and the liquidation of the ~~Debtor~~Debtors's remaining Assets~~,~~. The Property shall be sold under the Contract of Sale annexed as Exhibit "A" to the Plan, subject to higher and better offers, as set forth in the Bidding Procedures attached to the Plan as Exhibit "B."  Pursuant to § 1123(a)(5)(D) of the Bankruptcy Code, the Property shall be sold to the Purchaser, free and clear of any and all liens, claims, encumbrances, interests, bills, or charges whatsoever, other than the usual and customary utility easements, if any, appearing as of record or as preserved in the Plan, with any such Liens, Claims, and encumbrances to attach to the Property Sale Proceeds, and disbursed in accordance with the provisions of the Plan.  The Mortgagee shall be obligated to assign of its mortgage to Purchaser's mortgagee, if any, in connection with the sale of the Property under the Plan.

55.    ~~41.~~ **Sale Approval** – As part of the sale under the Plan, and in order to ensure consummation of the Plan, the Plan requires that  the confirmation order contain the following findings of fact and conclusions of law: (a) that the terms and conditions of the sale are

fair and reasonable, (b) that the Debtor's sale, and the Purchaser's purchase, of the Property pursuant to the Plan, is non-collusive, fair and reasonable and was conducted openly and in good faith, (c) that the transfer of the Property to the Purchaser represents an arm's-length transaction and was negotiated in good faith between the parties, (d) that the Purchaser, as transferee of the Property, is a good faith purchaser under Bankruptcy Code § 363(m) and, as such, is entitled to the full protection of Bankruptcy Code § 363(m), (e) the sale of the Property to the Purchaser was not controlled by an agreement among potential purchasers, (f) that no cause of action exists against the Purchaser or with respect to the sale of the Property to the Purchaser under Bankruptcy Code § 363(n), and (g) that any claims under Bankruptcy Code § 363(n) or any other claims as against the Purchaser are hereby released, waived and discharged.

56.    **Marketing –** The Property shall be sold following a minimum two months of marketing by a broker or auctioneer to be retained by order of the Court upon the consent of the Lenders, Moore and the Office of United States Trustee, or following application, notice and hearing.  The Debtors anticipate closing in March 2021.

57.    42. **Vesting** -- Except as otherwise provided in the Plan, on the Effective Date all Assets assets and properties of the Estate shall vest in the Reorganized Debtor free and clear of all Liens, Claims and encumbrances and any and all liens, claims and encumbrances that have not been expressly preserved under the Plan shall be deemed extinguished as of such date. Except as otherwise provided herein, as of the Effective Date, all Assets property of the Reorganized Debtor shall be free and clear of all Claims and Interests of Creditors, except for the obligations that are imposed under the Plan or by a Final Order of the Bankruptcy Court.

58. ~~43.~~ **Execution of Documents** -- The Debtor shall be authorized to execute, in the name of any necessary party, any notice of satisfaction, release or discharge of any Lien, Claim or encumbrance not expressly preserved in the Plan and deliver such notices to any and all federal, state and local governmental agencies or departments for filing and recordation.

59. ~~44.~~ **Recording Documents** -- Each and every federal, state and local governmental agency or department shall be authorized to accept and record any and all documents and instruments necessary, useful or appropriate to effectuate, implement and consummate the ~~transactions~~transaction contemplated by the Plan, including, but not limited to any and all notices of satisfaction, release or discharge of any Lien, Claim or encumbrance not expressly preserved by the Plan, and the Confirmation Order.

60. ~~45.~~ **Preservation of Claims** -- All rights pursuant to Sections 502, 544, 545 and 546 of the Bankruptcy Code, all Avoidance Actions shall be preserved for the benefit of the Reorganized ~~Debtor's estate, provided, however, that the Debtor shall have sole authority for prosecuting any such claims~~Debtors' estates.

61. ~~46.~~ **Stamp Tax** -- Under the Plan, pursuant to Bankruptcy Code § 1146(c), (a) the issuance, transfer or exchange of any securities, instruments or documents, (b) the creation of any other Lien, mortgage, deed of trust or other security interest, (c) the making or assignment of any lease or sublease or the making or delivery of any deed or other instrument of transfer under, pursuant to, in furtherance of, or in connection with, the Plan, including, without limitation, any deeds, bills of sale or assignments executed in connection with the purchase of the Property by the Purchaser and any other transaction contemplated under the Plan or the re-vesting, transfer or sale of any real or personal property of the Debtor pursuant to, in implementation of, or as

contemplated in the Plan, and (d) the issuance, renewal, modification or securing of indebtedness by such means, and the making, delivery or recording of any deed or other instrument of transfer under, in furtherance of, or in connection with, the Plan, including, without limitation, the Confirmation Order, shall not be subject any applicable document recording tax, stamp tax, conveyance fee or other similar tax, mortgage tax, real estate transfer tax, or other similar tax or governmental assessment.

62. 47. **Release of Liens** – Except as otherwise provided for in the Plan, (a) each holder of a Secured Claim, shall on the Effective Date (x) turn over and release to the Debtor any and all collateralCollateral that secures or purportedly secures such Claim, as pertains to the Property or such Lien shall automatically, and without further action by the Debtor be deemed released, and (y) execute such documents and instruments as the Debtor requests to evidence such Claim holder's release of such property or Lien.

## MANAGEMENT OF THE DEBTORDEBTORS

63. 48. TheEach Debtor is managed by GC Realty Advisors, by David Goldwasser.  Post-confirmation management shall remain unchanged.

64. Neither the Debtors nor any of their employees, advisors, attorneys, accountants, financial consultants, contractors, agents, and their successors and assigns, shall have or incur any liability to any holder of a Claim or Interest, or to any other entity, for any act or omission in connection with, related to, or arising out of, the pursuit of confirmation consummation, or other administration of the Plan or the property to be distributed or otherwise dealt with under the Plan, except for gross negligence or willful misconduct, and in all respects the Debtors and each of their employees, advisors, attorneys, accountants, financial consultants,

15

contractors, and agents shall be entitled to rely upon the advice of counsel with respect to its duties and responsibilities under the Plan. No current Holder of a Claim or Equity Interest, representative thereof, shall have or pursue any claim or cause of action against the Debtors for making payments in accordance with the Plan, or for implementing the provisions of the Plan. The Debtors shall not be liable for obligations relating to Allowed Claims to the extent that Allowed Claims are not paid in full, other than as a result of gross negligence or willful misconduct.

**LIQUIDATION ANALYSIS**

~~65.~~ ~~49.~~ In a liquidation under Chapter 7 of the Bankruptcy Code, ~~the~~each Debtor's assets would be sold and the ~~Sale Proceeds~~sale proceeds distributed to ~~Creditors~~creditors in their order of priority.  The ~~Debtor believes~~Debtors believe that the Plan provides at least an equivalent return for ~~the~~each Debtor's estate as could be achieved in a liquidation.  As set forth on Exhibit ~~C~~B hereto, ~~the~~each Debtor projects that in a Chapter 7 liquidation, the return to ~~the~~such Debtor's estate would be reduced by an additional layer of administration legal expenses and commissions, which the ~~Debtor~~Debtors estimates would total at least ~~10~~15% of the ~~Sale Proceeds~~sale proceeds.  The Debtors estimate an additional 3% transfer tax on the sale of the Properties, 3% trustee commission on the sale, and Chapter 7 professional fees equal to about 9% of the value of estate assets.

**LITIGATION ANALYSIS**

66. ~~50.~~ The ~~Debtor is~~Debtors are aware of no litigation with third parties, except the ~~claims of the Debtor, 232 Development and their co-plaintiffs against ER 215 Moore LLC.  The complaint in that action alleges that the defendant breached its fiduciary duty~~Mezz Lender's action to ~~foreclose on~~ the ~~Debtor arising from a conflict interest between its role as both mortgage and member.  The Debtor has discontinued~~Membership Interests which will be made moot by the ~~action~~Plan.

**PAYMENT OF CLAIMS AND OBJECTIONS TO CLAIMS**

67.    51. The Debtor shall be disbursing agent under the Plan without a bond.

The Debtor reserves the right to file objections to claims in the event grounds exist to object to particular claims, for a period of 120 days after the Effective Date.  On the initial distribution date and on each distribution date as may thereafter be necessary, the Debtor shall maintain an Disputed Claim Reserveundetermined claims distribution reserve for the holders of Disputed Claimsundetermined claims as of such date in a sum not less than the amount required to pay each such Disputed Claimundetermined claim if such Claimclaim was Allowedallowed in full.  To the extent that a Disputed Claiman undetermined claim becomes an Allowed Claim, the distributions reserved for such Allowed Claim, shall be released from the Disputed Claim Reserveundetermined claims distribution reserve and paid to the holder of such Allowed Claim.  After all the amounts of all Disputed Claimsundetermined claims have been fixed, the balance of the Disputed Claim Reserveundetermined claims distribution reserve shall thereafter be paid in accordance with the Plan.

**EXECUTORY CONTRACTS AND UNEXPIRED LEASES**

68.    52. The Contract of SaleAll unexpired leases and executory contracts not rejected prior to the Effective Date shall be assumed under the Plan, subject to higher and better offers as set forth in the Means for Implementation section herein.  Except for other executory contracts and unexpired leases the Debtor assumes before the Confirmation Date, all unexpired leases and executory contracts shall be deemed rejected under the Plan.  In the event of a rejection which results in damages a proof of claim for such damages must be filed by the damaged party with the Court within sixty (60) days after the rejection dateEffective Date.  All Allowed Claims arising from the rejection of any Executory Contract or unexpired lease shall be treated as

Unsecured Claims.  Any Claim arising from the rejection of any Executory Contract or unexpired lease not filed with the Court within the time period provided herein shall be deemed discharged and shall not be entitled to participate in any distribution under the Plan.

## TAX CONSEQUENCES

69.  53. The ~~Debtor does~~Debtors do not believe that there will be any negative tax consequences to the ~~Debtor~~Debtors or to Creditors under the Plan.  To the extent that a creditor is not paid in full under the Plan, such creditor may be entitled to a bad debt deduction.  To the extent that a creditor has taken a bad debt deduction, Plan distributions may be taxable as income.

70.  54. THE ~~DEBTOR DOES~~DEBTORS DO NOT PURPORT, THROUGH THIS DISCLOSURE STATEMENT, TO ADVISE CREDITORS OR INTEREST HOLDERS REGARDING THE TAX CONSEQUENCES OF THE TREATMENT OF THE CREDITORS AND INTEREST HOLDERS UNDER THE PLAN.  CREDITORS AND INTEREST HOLDERS SHOULD SEEK INDEPENDENT COUNSEL CONCERNING THE TAX CONSEQUENCES OF THEIR TREATMENT UNDER THE PLAN.

## PLAN ALTERNATIVES

71.  55. Generally, plan options in these circumstances include selling, refinancing, recapitalizing or loan modification.  ~~Given the state of the credit markets, the sale of the Property will yield a greater return, particularly in the short and medium term, than refinancing or recapitalizing.  For the same reasons, there are no viable loan modification options.~~In this case, ~~therefore,~~the ~~Debtor believes~~Debtors believe that ~~selling~~the sale of the Property is the ~~only viable~~best alternative for maximizing value and facilitating payment to Creditors.

19

## VOTING PROCEDURES AND REQUIREMENTS

72. 56. A ballot to be used for voting to accept or reject the Plan is enclosed with this Disclosure Statement.  Each impaired creditor is entitled to execute the ballot and return it to the undersigned to be considered for voting purposes.  The Bankruptcy Court has directed that, in order to be counted for voting purposes, ballots for the acceptance or rejection of the Plan must be received no later than _____, 2020, at the following address: Backenroth Frankel & Krinsky, LLP, 800 Third Avenue, Floor 11, New York, New York 10022, Attn:  Mark A. Frankel, Esq.

73. 57. Each Creditor of the Debtor Debtors whose Claim is impaired under the Plan is entitled to vote, if either (i) its Claim has been scheduled by the Debtor Debtors, or (ii) it has filed a Proof of Claim on or before the last date set by the Bankruptcy Court.

74. 58.  Any Claim as to which an objection has been filed (and such objection is still pending) is not entitled to vote, unless the Bankruptcy Court temporarily allows the Claim in an amount which it deems proper for the purpose of accepting or rejecting the Plan upon motion by a Creditor whose Claim is subject to an objection.  Such motion must be heard and determined by the Bankruptcy Court prior to the date established by the Court to confirm the Plan.

75. 59. A Creditor's vote may be disregarded if the Bankruptcy Court determines that the Creditor's acceptance or rejection was not solicited or procured in good faith or in accordance with the provisions of the Bankruptcy Code.

76. 60. The Bankruptcy Code defines acceptance of a Plan by a class of Creditors as acceptance by holders of two-thirds in dollar amount and a majority in number of the Claims of that class which actually cast ballots for acceptance or rejection of the Plan.

77. 61. The Bankruptcy Code defines acceptance of a Plan by a class of Interests as acceptance by holders of two-thirds in amount of the allowed Interests of such class held by holders of such interests.

## CRAMDOWN

78. 90. If any impaired class of Claims does not accept the Plan, the Bankruptcy Court may still confirm the Plan if, as to each impaired class which has not accepted the Plan, the Plan "does not discriminate unfairly" and is "fair and equitable."

79. 91. The Debtor intends Debtors intend to invoke the cramdown provisions of section 1129(b) as to any impaired class that does not accept the plan.

80. 92. A plan of reorganization does not discriminate unfairly within the meaning of the Bankruptcy Code if no class receives less than it is legally entitled to receive for its Claims or Interests. "Fair and equitable" has different meanings for Secured and Unsecured Claims.

81. 93. With respect to a Secured Claim, "fair and equitable" means either: (a) the impaired Secured Creditor retains its Liens to the extent of its Allowed Claim and receives deferred cash payments at least equal to the allowed amount of its Claim with a present value as of the Effective Date at least equal to the value of such Creditor's interest in the property securing its Liens; (b) property subject to the Lien of the impaired Secured Creditor is sold free and clear of

that Lien, with that Lien attaching to the proceeds of the sale; or (c) the impaired Secured Creditor realizes the "indubitable equivalent" of its Claim under the Plan.

82. 94. With respect to an Unsecured Claim, "fair and equitable" means either: (a) each impaired Unsecured Creditor receives or retains property of a value equal to the amount of its Allowed Claim; or (b) the holders of Claims and Interests that are junior to the Claims of the dissenting class will not receive any property under the Plan.

83. 95. In the event one or more classes of impaired Claims rejects the Plan, the Bankruptcy Court will determine at the Confirmation Hearing whether the Plan is fair and equitable and does not discriminate unfairly against any rejecting impaired class of Claims.

## CONFIRMATION OF THE PLAN

84. 62. Section 1128(a) of the Bankruptcy Code requires that the Bankruptcy Court, after notice, hold a hearing on confirmation of the Plan (the "Confirmation Hearing"). Section 1128(b) provides that any party in interest may object to confirmation of the Plan.

85. 63. By order of the Bankruptcy Court dated _____, 2020, the Confirmation Hearing has been scheduled for _____, 2020, at ____.m., in the Honorable Robert D. Drain's Courtroom, United States Bankruptcy Court, 300 Quarropas Street, White Plains, NY 10601−5008. The Confirmation Hearing may be adjourned from time to time by the Bankruptcy Court without further notice except for an announcement made at the Confirmation Hearing or any adjourned Confirmation Hearing. Any objection to confirmation of the Plan must be made in writing and filed with the Bankruptcy Court with proof of service and served upon the following on or before _____ 2020 at

5:00 p.m.: Backenroth Frankel & Krinsky, LLP, 800 Third Avenue, New York, New York 10022, Attn: Mark A. Frankel, Esq. Objections to confirmation of the Plan are governed by Bankruptcy Rule 9014.

86. 64. At the Confirmation Hearing, the Bankruptcy Court will determine with respect to each Debtor whether the requirements of Section 1129 of the Bankruptcy Code have been satisfied to enter an order confirming the Plan. TheFor each Debtor, the applicable requirements are as follows: (a) The Plan complies with the applicable provisions of the Bankruptcy Code, (b) the Debtor has complied with the applicable provisions of the Bankruptcy Code; (c) the Plan has been proposed in good faith and not by any means forbidden by law, (d) any payment made or promised or by a person issuing securities or acquiring property under the Plan, for services or for costs and expenses in, or in connection with, the Bankruptcy Case, or in connection with the Plan and incident to the Bankruptcy Case, has been disclosed to the Bankruptcy Court, and any such payment made before the confirmation of the Plan is reasonable, or if such payment is to be fixed after confirmation of the Plan, such payment is subject to the approval of the Bankruptcy Court as reasonable, (e) the Debtor has disclosed the identity and affiliations of any individual proposed to serve, after confirmation of the Plan, as a director, officer, or voting trustee of the Debtor, an affiliate of the Debtor participating in a Plan with the Debtor, or a successor to the Debtor under the Plan, and the appointment to, or continuance in, such office of such individual, is consistent with the interests of Creditors and equity security holders and with public policy, and the Debtor has disclosed the identity of any insider that will be employed or retained by the reorganizedReorganized Debtor, and the nature of any compensation for such insider, (f) with respect to each class of impaired Claims, either each holder of a Claim or

interest of such class has accepted the Plan, or will receive or retain under the Plan on account of such Claim or interest property of a value, as of the Effective Date of the Plan, an amount that is not less than the amount that such holder would so receive or retain if the Debtor was liquidated on such date under Chapter 7 of the Bankruptcy Code, (g) each class of Claims or interests has either accepted the Plan or is not impaired under the Plan, (h) except to the extent that the holder of a particular Claim has agreed to a different treatment of such Claim, the Plan provides that Administrative Expenses and priority Claims will be paid in full on the Effective Date, (i) at least one class of impaired Claims has accepted the Plan, determined without including any acceptance of the Plan by any insider holding a Claim of such class, and (j) confirmation of the Plan is not likely to be followed by the liquidation, or the need for further financial reorganization of the Debtor or any successors to the Debtor under the Plan unless such liquidation or reorganization is proposed in the Plan.

87. 65. The Debtor believesDebtors believe that the Plan satisfies all of the statutory requirements of Chapter 11 of the Bankruptcy Code, that theeach Debtor has complied or will have complied with all of the requirements of Chapter 11, and that the proposals contained in the Plan are made in good faith.

**<u>CONCLUSION</u>**

The ~~Debtor urges~~Debtors urge the ~~Debtor~~Debtors's Creditors to ~~support~~vote to accept the Plan.

Dated: New York, New York
~~August 27~~October ___, 2020

~~232 Seigel Acquisition LLC~~

**232 SEIGEL DEVELOPMENT LLC and 232 SEIGEL ACQUISITION LLC**

By: s/~~ GC Realty Advisors, by~~ David Goldwasser

**BACKENROTH FRANKEL & KRINSKY, LLP**
**Attorneys for ~~Debtor~~Debtors**

By: s/Mark Frankel
800 Third Avenue
New York, New York 10022
(212) ~~593-110~~593-1100

Mark Frankel
Backenroth Frankel & Krinsky, LLP
800 Third Avenue, Floor 11
New York, New York  10022
(212) 593-1100

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK
-----------------------------------------------------------------x
In re                                                                    Chapter 11

      232 ~~Seigel Acquisition~~ SEIGEL DEVELOPMENT LLC , Case no. ~~20-22845~~ 20-22844 (RDD)

                Debtor.
-----------------------------------------------------------------x

In re                                                                    Chapter 11

      232 Seigel Acquisition LLC,                    Case no.  19-22845 (RDD)

                Debtor.
-----------------------------------------------------------------x

**JOINT PLAN OF REORGANIZATION**

**INTRODUCTION**

232 ~~Seigel Acquisition LLC~~SEIGEL DEVELOPMENT LLC and S&B MONSEY LLC, (~~the~~each a "Debtor", and collectively, the "Debtors") submit this joint plan of reorganization ("Plan") under Chapter 11 of the United States Bankruptcy Code. UPON CONFIRMATION, THIS PLAN SHALL BE A BINDING OBLIGATION BETWEEN AND AMONG ~~THE~~EACH DEBTOR AND ~~THE~~EACH DEBTOR'S CREDITORS (AS SUCH TERMS ARE DEFINED BELOW).

**DEFINITIONS**

1. As used in this Plan, the following terms will have the meanings hereinafter set forth:

2. "Acquisition" shall mean 232 Seigel Acquisition LLC.

3. ~~1.~~ "Administrative Expense" shall mean any cost or expense of administration of the Bankruptcy Case entitled to priority under section 507(a)(1) and allowed under section 503(b) of the Bankruptcy Code, and any fees or charges assessed against ~~the~~a Debtor's Estate under Chapter 123, Title 28, United States Code.

4. ~~2.~~ "Administrative Expense Claim" shall mean a Claim for payment of an Administrative Expense.

~~3.     "Agreement" shall mean that certain agreement annexed to the Plan as Exhibit A, by and between the Debtor and the Purchaser for the sale of the Property.~~

5. ~~4.~~ "Allowance Date" shall mean the date which a Disputed Claim becomes an Allowed Claim by Final Order.

6. 5. "Allowed Amount" shall mean the amount of an "Allowed Claim."

7. 6. "Allowed Claim" shall mean a Claim: (a) to the extent that a Proof of Claim is filed timely or, with leave of the Court late filed as to which (i) no party in interest files an objection or (ii) which is allowed by a Final Order; or (b) which is listed on the~~a~~ Debtor's schedules or any amendments thereto but which is not listed therein as disputed, unliquidated or contingent.

8. 7. "Allowed Secured Claim" shall mean a Secured Claim to the extent it is an Allowed Claim.

9. 8. "Allowed Unsecured Claim" shall mean an Unsecured Claim to the extent it is an Allowed Claim.

10. 9. "Assets" shall mean any and all of the respective real or personal property of any nature of the ~~Debtor~~Debtors, including, without limitation, any real estate, buildings, structures, improvements, privileges, rights, easements, leases, subleases, licenses, goods, materials, supplies, furniture, fixtures, equipment, work in process, accounts, chattel paper, Cash, deposit accounts, reserves, deposits, contractual rights, intellectual property rights, claims, Causes of Action and any other general intangibles of the ~~Debtor~~Debtors, of any nature whatsoever, including, without limitation, the property of the ~~estate~~Debtors' estates pursuant to section 541 of the Bankruptcy Code.

11. 10. "Avoidance Actions" shall mean all claims and causes of action which ~~the~~a Debtor has or had the power to assert pursuant to any or all of sections 510, 544, 545, 547, 548, 549, 550, 551, and 553 of the Bankruptcy Code.

12. ~~11.~~ "Bankruptcy Case" shall mean this Chapter 11 bankruptcy case.

13. ~~12.~~ "Bankruptcy Code" shall mean Title 11 of the United States Code (11. U.S.C. § 101 et. seq.).

14. ~~13.~~ "Bankruptcy Court" shall mean the Court as defined below.

15. ~~14.~~ "Bar Date" shall mean ~~_____~~ September 28, 2020.

16. ~~15.~~ "Cash" shall mean all cash and cash equivalents which evidence immediately available funds in United States dollars.

17. ~~16.~~ "Causes of Action" shall mean any and all claims and causes of action of, and remedies granted to, ~~the~~a Debtor against any third party, including, without limitation, any Avoidance Actions or causes of action pursuant to sections 502, 506, 510, 541 through 545, 547 through 551, and/or 553 of the Bankruptcy Code and any claims pursuant to any other statutory or common law.

18. ~~17.~~ "Claim" shall mean a right to payment as set forth in § 101(5) of the Bankruptcy Code.

19. ~~18.~~ "Claimant" shall mean the holder of a Claim.

20. ~~19.~~ "Confirmation Date" shall mean the date of the entry of the Confirmation Order.

21. ~~20.~~ "Confirmation Hearing" shall mean the hearing pursuant to the Bankruptcy Code Section 1128 before the Bankruptcy Court regarding the proposed confirmation of the Plan.

22. ~~21.~~ "Confirmation Order" shall mean the order of the Court confirming the Plan.

23. ~~22.~~ "Court" shall mean the United States Bankruptcy Court for the SOUTHERN District of New York.

24. ~~23.~~ "Creditor" shall mean any entity that holds a Claim against ~~the~~a Debtor.

25. ~~24.~~ "Creditors Committee" shall mean a committee of creditors appointed by the United States Trustee in these cases under section 1102 of the Bankruptcy Code.

26. ~~25.~~ "~~Debtor~~Debtors" shall mean 232 SEIGEL DEVELOPMENT LLC and 232 SEIGEL ACQUISITION LLC.

27. "Development" shall mean 232 Seigel ~~Acquisition~~Development LLC.

28. ~~26.~~ "Disputed Claim" shall mean the whole or any portion of any Claim against ~~the~~a Debtor to which an objection is timely filed or may be timely filed as to which a Final Order has not been entered allowing or disallowing such Claim or any portion thereof.

29. ~~27.~~ "Disputed Claim Reserve" shall mean Cash to be set aside by the Disbursing Agent on the Effective Date in an escrow account maintained by the Disbursing Agent, in an amount equal to the amount that would have been distributed to the holders of Disputed Claims had such Claims been deemed Allowed Claims on the Effective Date, or in such other amount as may be approved by the Bankruptcy Court.

30. ~~28.~~ "Effective Date" shall mean the ~~Date upon which~~date fifteen (15) days after the Confirmation Order is a Final Order, or such other date as may be practicable, provided

5

that absent Bankruptcy Court approval, such date shall be no later than ~~60~~sixty days after the Confirmation ~~Date as may be practicable~~Order is a Final Order.

31. ~~29.~~ "Estate" shall mean the estate of ~~the~~each Debtor created upon the commencement of the Bankruptcy Case pursuant to Section 541 of the Bankruptcy Code.

32. ~~30.~~ "Executory Contracts" shall mean "executory contracts" and "unexpired leases" as such terms are used within Section 365 of the Bankruptcy Code.

33. ~~31.~~ "Final Order" shall mean an order of a court that has not been reversed, modified, amended or stayed, and as to which the time to appeal or to seek review or certiorari thereof has expired, and as to which no appeal, review or rehearing is pending.

~~32. "Mortgagee" shall mean DB Seigel LLC.~~

34. ~~33.~~ "Impaired" shall mean not Unimpaired.

35. ~~34.~~ "Interest" shall mean an existing ownership interest in ~~the~~a Debtor.

36. ~~35.~~ "Interest Holder" shall mean a holder and owner of an existing Interest in ~~the~~a Debtor.

37. ~~36.~~ "Legal Rate" shall mean the applicable interest rate as set forth in 28 U.S.C. §1961 as of the Petition Date.

38. ~~37.~~ "Lien" shall mean a charge against or interest in property to secure payment of a debt or performance of an obligation.

39. "Membership Interests" shall mean Development's membership interests in Acquisition.

40.     "Mezz Lender" shall mean DB 232 Seigel Mezz LLC.

41.     "Mezz Loan" shall mean that certain $1,425,520 Claim asserted by Mezz Lender secured by the Development Membership Interests.

42.     "Mortgagee" shall mean DB Seigel LLC.

43.     "Mortgage Loan" shall mean that certain $6,378,750 Claim asserted by Mortgagee secured by the Property.

44.     38. "Petition Date" shall mean July 14, 2020.

45.     39. "Plan" shall mean this Plan of Reorganization, and any and all modifications and/or amendments hereto.

46.     "Priority Claims" shall mean Claims under Sections 507(a)(3),(4),(5),(6), (7) and (8) of the Bankruptcy Code.

47.     "Property" shall mean 232 Seigel Street, Brooklyn, New York.

48.     40. "Professional(s)" shall mean any entity or person employed pursuant to an order of the Bankruptcy Court in accordance with sections 327, 328, or 1103 of the Bankruptcy Code and to be compensated for services rendered pursuant to sections 327, 328, 329, 330 and/or 331 of the Bankruptcy Code.

49.     41. "Professional Fee Claim" shall mean those fees and expenses claimed by a Professional pursuant to sections 330, 331 and/or 503 of the Bankruptcy Code.

50.     42. "Professional Fee Claim Bar Date" shall mean the last day for a Professional to file a Professional Fee Claim, which shall be no later than thirty (60) days after the Effective Date.

51. 43. "Property" shall mean the real property at 232 Seigel Street, Brooklyn, New York.

44. "Sale Proceeds" shall mean the proceeds of sale of the Property, less all charges to be incurred in connection with the marketing, negotiation, documentation, execution, and closing of the sale of the Property, including, without limitation, any fees and expenses paid to retain an auctioneer, real estate broker, and/or special real estate counsel.

52. 45. ""Purchaser" shall mean the purchaser232 Seigel Property, LLC, or if 232 Seigel Property, LLC is not winning bidder of the Property under the Plan, the winning bidder of the Property pursuant tounder the Plan.

53. 46. "Reorganized DebtorDebtors" shall mean the DebtorDebtors on and after the Effective Date.

54. "Sale Contract" shall mean that certain contract annexed to the Plan as Exhibit A.

55. "Sale Proceeds" shall mean the proceeds of the sale of the Property under the Plan.

56. 47. "Secured Claim" shall mean a Claim secured by a Lien on property included within thea Debtor's Estate.

57. 48. "Secured Creditor" shall mean the owner or holder of a Secured Claim.

58. "Unclassified Priority Claims" shall mean tax Claims under Sections 507(a)(8) of the Bankruptcy Code.

59. 49. "Unimpaired" shall mean not impaired under section 1124 of the Bankruptcy Code.

60. 50. "Unsecured Claim" shall mean a claim for which the Claimant does not hold (a) a valid, perfected and enforceable Lien, security interest or other interest in or encumbrance against a Debtor or thea Debtor's Estate; or (b) a right to setoff to secure the payment of such Claim. An Unsecured Claim includes, but is not limited to, a Claim for damages resulting from rejection of any Executory Contract pursuant to Section 365 of the Bankruptcy Code and does not include administrative of priority claims.

61. 51. "Unsecured Creditor" shall mean the owner or holder of an Unsecured Claim.

## CLAIMS CLASSIFICATION, TREATMENT AND VOTING

62. On the Effective Date, the Debtors' cases will be deemed substantively consolidated in accordance with the terms of the Plan. As a result, the classes of Claims and Interest are classes that pertain to each of the Debtors.

### Acquisition Class 1

63. 1. **Classification** – Real estate taxNew York City Liens. DebtorAcquisition estimates $0.00 due.

64. 2. **Treatment** — Payment on the Effective Date in full in Cash from the Property Sale Proceeds of Allowed Amount of each such Claimon the Effective Date, plus interest at the applicable statutory rate as it accrues from the Petition Date through the date of payment.

65.    ~~3.~~**Voting** – Unimpaired and deemed to have accepted the Plan~~.~~

**Acquisition Class 2**

66.    ~~4.~~**Classification** – DB Seigel LLC first mortgage on the Property.  The ~~Debtor estimates that the amount due is $5,250,000~~Mortgagee asserts a $6,378,750 Claim.

67.    ~~5.~~**Treatment** – After payment of ~~Class 1~~Acquisition Administrative Claims and Acquisition unclassified Priority Tax Claims, payment on Effective Date of available Cash from the Property Sale Proceeds up to the Allowed Amount of the Class 2 Claim plus interest at the applicable contract rate as it accrues from the Petition Date through the date of payment.

68.    ~~6.~~**Voting** – Impaired and entitled to vote to accept or reject the Plan.

**Acquisition Class 3**

69.    ~~7.~~**Classification** –   Priority Claims under Sections 507(a)(2),(3),(4),(5),(6),(7) and (~~7~~8) of the Bankruptcy Code.. ~~Debtor~~Acquisition estimates $0 due.

70.    ~~8.~~**Treatment** – Payment ~~on the Effective Date~~ in full in Cash ~~from the Property Sale Proceeds~~ of Allowed Amount ~~of each such Claim~~on the Effective Date, plus interest at the applicable statutory rate as it accrues from the Petition Date through the date of payment.

71.    ~~9.~~**Voting** -- Unimpaired and deemed to have accepted the Plan~~.~~.

**Acquisition Class 4**

72.    ~~10.~~**Classification** – General Unsecured Claims.  Acquisition estimates asserted Claims totaling $6,397,010~~, plus the Allowed Amount of any Class 5 deficiency Claim~~.

10

73.    11. **Treatment** – After payment of Acquisition Administrative Claims, Acquisition unclassified Priority Tax Claims, and Acquisition Class 1, 2 and 3 Claims, Payment on the Effective Date of available Cash from the Property Sale Proceeds up to the Allowed Amount of each Class 4 Claim plus interest at the Legal Rate as it accrues from the Petition Date through the date of payment.

74.    12. **Voting** – Impaired and entitled to vote to accept or reject the Plan..

**Acquisition Class 5**

75.    **Classification** –Development, Acquistion's sole Interest Holder.

76.    **Treatment** – Payment on Effective Date of available Cash from the Property Sale Proceeds after payment of Acquisition Administrative Claims, Acquisition unclassified Priority tax Claims, and Acquisition Class 1, 2, 3 and 4 Claims.

77.    **Voting** – Impaired and entitled to vote to accept or reject the Plan.

**Development Class 1**

78.    **Classification** – DB Seigel LLC holds the Mezz Loan, consisting of a note and security interest in the Membership Interests.  Mezz Lender asserts a $1,425,520 Claim.

79.    **Treatment** – Payment on Effective Date of available Cash from the distribution to Acquisition Class 5, after payment of Development Administrative Claims and Development unclassified Priority tax Claims, up to the Allowed Amount of the Class 1 Claim plus interest at the applicable rate as it accrues from the Petition Date through the date of payment.

80.    **Voting** – Impaired and entitled to vote to accept or reject the Plan.

**Development Class 2**

81.     **Classification** – Priority Claims under Sections 507(a)(2),(3),(4),(5),(6),(7) and (8) of the Bankruptcy Code..  Development estimates no Class 2 Claims.

82.     **Treatment** – Payment in full in Cash of Allowed Amount on the Effective Date, plus interest at the applicable statutory rate as it accrues from the Petition Date through the date of payment.

83.     **Voting** -- Unimpaired and deemed to have accepted the Plan.

**Development Class 3**

84.     **Classification** – General Unsecured Claims.    Development estimates asserted Claims totaling $6,397,010..

85.     **Treatment** – Payment on Effective Date of available Cash from the distribution to Acquisition Class 5, after payment of Development Administrative Claims, Development unclassified Priority tax Claims and Development Class 1 and 2 Claims, up to the Allowed Amount of each Class 3 Claim plus interest at the Legal Rate as it accrues from the Petition Date through the date of payment..

86.     **Voting** – Impaired and entitled to vote to accept or reject the Plan.

**Development Class 4**

87.     ~~13.~~**Classification** – Interests Holders.

88. ~~14.~~ **Treatment** – Payment on Effective Date of available Cash ~~from the Property Sale Proceeds~~ after payment of ~~Administrative Claims, unclassified Priority tax Claims, and Class 1, 2, 3 and 4~~ all Acquisition and Development Claims.

89. ~~15.~~ **Voting** – Impaired and entitled to vote to accept or reject the Plan.

## UNCLASSIFIED PRIORITY TAX CLAIMS

90. ~~16.~~ Priority tax Claims under Sections 507(a)(8) of the Bankruptcy Code. ~~The Debtor estimates that the amount due by the Debtor totals~~ Filed and Scheduled Claims total approximately ~~$0.00~~ 0. The treatment of such Claims, if any, shall be payment in Cash on the Effective Date, of Allowed Amount of each such Claim plus interest at the applicable statutory rate as it accrues from the Petition Date through the date of payment.

## ADMINISTRATIVE EXPENSES

91. ~~17.~~Allowed Administrative Expenses shall be paid in full, in cash on the Effective Date, or the date such Administrative Expense becomes Allowed or as soon as practicable thereafter, except to the extent that the holder of an Allowed Administrative Expense agrees to a different treatment; provided, however, that Allowed Administrative Expenses representing obligations incurred in the ordinary course of business or assumed by the ~~Debtor~~Debtors shall be paid in full or performed by the ~~Debtor~~Debtors in the ordinary course of business or pursuant to the terms and conditions of the particular transaction.

92. ~~18.~~Unless otherwise ordered by the Bankruptcy Court, requests for payment of Administrative Claims (except for Professional Fee Claims) must be filed and served no later than 35 days after entry of the Confirmation Order (the "Administrative Claims Bar Date"). Any Person that is required to file and serve a request for payment of an Administrative Claim and fails to timely file and serve such request shall be forever barred, estopped, and enjoined from asserting such Claim or participating in distributions under the Plan on account thereof. Objections to requests for payment of Administrative Claims (except for Professional Fee Claims and Administrative Claims incurred in the ordinary course of the ~~Debtor~~Debtors~~'~~s business) must be filed and served on counsel for the ~~Debtor~~Debtors and the party requesting payment of an Administrative Claim within thirty (30) days of the date such request for payment has been filed.

93. ~~19.~~Unless otherwise ordered by the Bankruptcy Court, and subject to notice and a hearing under section 330 of the Bankruptcy Code, requests for payment of Professional Fee Claims incurred through the Confirmation Date must be filed and served no later

than sixty (60) days after the Effective Date (the "Professional Fee Claims Bar Date"). The Debtors estimate legal fees of approximately $75,000 through the Confirmation Date, inclusive of any interim fees that may be awarded before that date.

## STATUTORY FEES

94. 20. The ~~Debtor~~Debtors shall pay from Cash in the Estate all fees payable due as of the Effective Date pursuant to section 1930 of title 28 of the United Sates Code. Thereafter, the ~~Debtor~~Debtors shall pay from Cash in the Estate all United States Trustee quarterly fees under 28 U.S.C. § 1930(a)(6), plus interest due under 31 U.S.C. § 3717, on all disbursements, including plan payments and disbursements in and outside of the ordinary course of business, until the earliest of the entry of a final decree closing the Chapter 11 Case, dismissal of the Chapter 11 Case, or conversion of the Chapter 11 Case to a case under chapter 7 of the Bankruptcy Code.

## MEANS FOR IMPLEMENTATION

95. 21. **Source of Funds**—Payments under the Plan will be made from the ~~proceeds of sale of the Debtor~~Sale Proceeds of Acquisition's Property and the liquidation of the ~~Debtor~~Debtors's remaining Assets, The Property shall be sold under the Contract of Sale annexed as Exhibit "A" to the Plan, subject to higher and better offers, as set forth in the Bidding Procedures attached to the Plan as Exhibit "B." Pursuant to § 1123(a)(5)(D) of the Bankruptcy Code, the Property shall be sold to the Purchaser, free and clear of any and all liens, claims, encumbrances, interests, bills, or charges whatsoever, other than the usual and customary utility easements, if any, appearing as of record or as preserved in the Plan, with any such Liens, Claims, and encumbrances to attach to the Property Sale Proceeds, and disbursed in accordance with the

provisions of the Plan.  The Mortgagee shall be obligated to assign of its mortgage to Purchaser's mortgagee, if any, in connection with the sale of the Property under the Plan.

96.     **Marketing** – The Property shall be sold following a minimum two months of marketing by a broker or auctioneer to be retained by order of the Court upon the consent of the Lenders, Moore and the Office of United States Trustee, or following application, notice and hearing.  The Debtors anticipate closing in March 2021.

97.     22. **Sale Approval** – As part of the sale under the Plan, and in order to ensure consummation of the Plan, the Plan requires that  the confirmation order contain the following findings of fact and conclusions of law: (a) that the terms and conditions of the sale are fair and reasonable, (b) that the Debtor's sale, and the Purchaser's purchase, of the Property pursuant to the Plan, is non-collusive, fair and reasonable and was conducted openly and in good faith, (c) that the transfer of the Property to the Purchaser represents an arm's-length transaction and was negotiated in good faith between the parties, (d) that the Purchaser, as transferee of the Property, is a good faith purchaser under Bankruptcy Code § 363(m) and, as such, is entitled to the full protection of Bankruptcy Code § 363(m), (e) the sale of the Property to the Purchaser was not controlled by an agreement among potential purchasers, (f) that no cause of action exists against the Purchaser or with respect to the sale of the Property to the Purchaser under Bankruptcy Code § 363(n), and (g) that any claims under Bankruptcy Code § 363(n) or any other claims as against the Purchaser are hereby released, waived and discharged.

98.     23. **Vesting** -- Except as otherwise provided in the Plan, on the Effective Date all Assetsassets and properties of the Estate shall vest in the Reorganized Debtor free and clear of all Liens, Claims and encumbrances and any and all liens, claims and encumbrances that

have not been expressly preserved under the Plan shall be deemed extinguished as of such date. Except as otherwise provided herein, as of the Effective Date, all ~~Assets~~property of the Reorganized Debtor shall be free and clear of all Claims and Interests of Creditors, except for the obligations that are imposed under the Plan or by a Final Order of the Bankruptcy Court.

99. ~~24.~~ **Execution of Documents** -- The Debtor shall be authorized to execute, in the name of any necessary party, any notice of satisfaction, release or discharge of any Lien, Claim or encumbrance not expressly preserved in the Plan and deliver such notices to any and all federal, state and local governmental agencies or departments for filing and recordation.

100. ~~25.~~ **Recording Documents** -- Each and every federal, state and local governmental agency or department shall be authorized to accept and record any and all documents and instruments necessary, useful or appropriate to effectuate, implement and consummate the ~~transactions~~transaction contemplated by the Plan, including, but not limited to any and all notices of satisfaction, release or discharge of any Lien, Claim or encumbrance not expressly preserved by the Plan, and the Confirmation Order.

101. ~~26.~~ **Preservation of Claims** -- All rights pursuant to Sections 502, 544, 545 and 546 of the Bankruptcy Code, all Avoidance Actions shall be preserved for the benefit of the Reorganized each Debtor's estate, provided, however, that ~~the~~each Debtor shall have sole authority for prosecuting any such claims.

102. ~~27.~~ **Stamp Tax** -- Under the Plan, pursuant to Bankruptcy Code § 1146(c), (a) the issuance, transfer or exchange of any securities, instruments or documents, (b) the creation of any other Lien, mortgage, deed of trust or other security interest, (c) the making or assignment of any lease or sublease or the making or delivery of any deed or other instrument of transfer

under, pursuant to, in furtherance of, or in connection with, the Plan, including, without limitation, any deeds, bills of sale or assignments executed in connection with the purchase of the Property by the Purchaser and any other transaction contemplated under the Plan or the re-vesting, transfer or sale of any real or personal property of the Debtor pursuant to, in implementation of, or as contemplated in the Plan, and (d) the issuance, renewal, modification or securing of indebtedness by such means, and the making, delivery or recording of any deed or other instrument of transfer under, in furtherance of, or in connection with, the Plan, including, without limitation, the Confirmation Order, shall not be subject any applicable document recording tax, stamp tax, conveyance fee or other similar tax, mortgage tax, real estate transfer tax, or other similar tax or governmental assessment.

103. 28. **Release of Liens** – Except as otherwise provided for in the Plan, (a) each holder of a Secured Claim, shall on the Effective Date (x) turn over and release to the Debtor any and all collateralCollateral that secures or purportedly secures such Claim, as pertains to the Property or such Lien shall automatically, and without further action by the Debtor be deemed released, and (y) execute such documents and instruments as the Debtor requests to evidence such Claim holder's release of such property or Lien.

**MANAGEMENT OF THE DEBTORDEBTORS**

104. 29. TheEach Debtor is managed by GC Realty Advisors, by David Goldwasser. Post-confirmation management shall remain unchanged.

**DISTRIBUTIONS TO CREDITORS**

105. Neither the Debtors nor any of their employees, advisors, attorneys, accountants, financial consultants, contractors, agents, and their successors and assigns, shall have

or incur any liability to any holder of a Claim or Interest, or to any other entity, for any act or omission in connection with, related to, or arising out of, the pursuit of confirmation consummation, or other administration of the Plan or the property to be distributed or otherwise dealt with under the Plan, except for gross negligence or willful misconduct, and in all respects the Debtors and each of their employees, advisors, attorneys, accountants, financial consultants, contractors, and agents shall be entitled to rely upon the advice of counsel with respect to its duties and responsibilities under the Plan. No current Holder of a Claim or Equity Interest, representative thereof, shall have or pursue any claim or cause of action against the Debtors for making payments in accordance with the Plan, or for implementing the provisions of the Plan. The Debtors shall not be liable for obligations relating to Allowed Claims to the extent that Allowed Claims are not paid in full, other than as a result of gross negligence or willful misconduct.

## PAYMENT OF CLAIMS AND OBJECTIONS TO CLAIMS

106. ~~30.~~ The Debtor shall be disbursing agent under the Plan without a bond. The Debtor reserves the right to file objections to claims in the event grounds exist to object to particular claims, for a period of 120 days after the Effective Date.  On the initial distribution date and on each distribution date as may thereafter be necessary, the Debtor shall maintain an ~~Disputed Claim Reserve~~undetermined claims distribution reserve for the holders of ~~Disputed Claims~~undetermined claims as of such date in a sum not less than the amount required to pay each such ~~Disputed Claim~~undetermined claim if such ~~Claim~~claim was ~~Allowed~~allowed in full.  To the extent that ~~a Disputed Claim~~an undetermined claim becomes an Allowed Claim, the distributions reserved for such Allowed Claim, shall be released from the ~~Disputed Claim Reserve~~undetermined claims distribution reserve and paid to the holder of such Allowed Claim.  After all the amounts of

all ~~Disputed Claims~~<u>undetermined claims</u> have been fixed, the balance of the ~~Disputed Claim~~ ~~Reserve~~<u>undetermined claims distribution reserve</u> shall thereafter be paid in accordance with the Plan.

## EXECUTORY CONTRACTS AND UNEXPIRED LEASES

107. ~~31. The Contract of Sale~~All unexpired leases and executory contracts not rejected prior to the Effective Date shall be assumed under the Plan~~, subject to higher and better offers as set forth in the Means for Implementation section herein.  Except for other executory contracts and unexpired leases the Debtor assumes before the Confirmation Date, all unexpired leases and executory contracts shall be deemed rejected under the Plan~~.  In the event of a rejection which results in damages a proof of claim for such damages must be filed by the damaged party with the Court within sixty (60) days after the ~~rejection date~~Effective Date.  All Allowed Claims arising from the rejection of any Executory Contract or unexpired lease shall be treated as Unsecured Claims.  Any Claim arising from the rejection of any Executory Contract or unexpired lease not filed with the Court within the time period provided herein shall be deemed discharged and shall not be entitled to participate in any distribution under the Plan.

## RETENTION OF JURISDICTION

108. ~~32.~~Retention of Jurisdiction.  The Court shall have jurisdiction over all matters arising under, arising in, or relating to ~~the~~each Debtor's Bankruptcy Case including, but not limited to, proceedings:

- To consider any modification of the Plan under Section 1127 of the Bankruptcy Code;

- To hear and determine all Claims, controversies, suits and disputes against the ~~Debtor~~Debtors to the full extent permitted under 28 U.S.C. §§ 1334 and 157;

- To hear, determine and enforce all Claims and Causes of Action which may exist on behalf of the ~~Debtor~~Debtors or ~~the~~a Debtor's Estate, including, but not limited to, any right of ~~the~~a Debtor or ~~the~~a Debtor's Estate to recover assets pursuant to the provisions of the Bankruptcy Code;

- To hear and determine all requests for compensation and/or reimbursement of expenses which may be made;

- To value assets of the Estate.

- To enforce the Confirmation Order, the final decree, and all injunctions therein;

- To enter an order concluding and terminating the Bankruptcy Case;

- To correct any defect, cure any omission, or reconcile any inconsistency in the Plan, or the Confirmation Order;

- To determine all questions and disputes regarding title to the assets of the ~~Debtor~~Debtors.

- To re-examine Claims which may have been Allowed or disallowed for purposes of voting, and to determine objections which may be filed to any Claims.

## GENERAL PROVISIONS

109. ~~33.~~ **Headings**.  The headings in the Plan are for convenience of reference only and shall not limit or otherwise affect the meaning of the Plan.

110. ~~34.~~ **Calculation of Time Periods**.  Bankruptcy Rule 9006 is incorporated herein for purposes of calculating the dates set forth herein.

111. ~~35.~~ **Other Actions**.  Nothing contained herein shall prevent the ~~Debtor~~Debtors, Interest Holders, or Creditors from taking such actions as may be necessary to consummate the Plan, although such actions may not specifically be provided for within the Plan.

112.   ~~36.~~**Modification of Plan**.  The ~~Debtor~~Debtors may seek amendments or modifications to the Plan in accordance with Section 1127 of the Bankruptcy Code at any time prior to the Confirmation Date.  After the Confirmation Date, the ~~Debtor~~Debtors may seek to remedy any defect or omission or reconcile any inconsistencies in the Plan or in the Confirmation Order, in such manner as may be necessary to carry out the purposes and intent of the Plan

## INJUNCTION AND DISCHARGE

113.   ~~37.~~**Injunction**.  The confirmation of this Plan shall constitute an injunction of the Court against the commencement or continuation of any action, the employment of process, or any act, to collect, recover or offset from the ~~Debtor~~Debtors or ~~its~~their property or properties, any obligation or debt except pursuant to the terms of the Plan.

114.   ~~38.~~**Discharge.**  On the Effective Date, except as otherwise expressly provided in this Plan or the Confirmation Order, the Plan shall:  (i) discharge ~~the~~each Debtor and any of its Assets from all Claims, demands, liabilities and other debts that arose on or before the Effective Date, including, without limitation, all debts of the kind specified in section 502 of the Bankruptcy Code, whether or not (A) a proof of Claim based on such debt is filed or deemed filed pursuant to section 501 of the Bankruptcy Code, (B) a Claim based on such debt is Allowed pursuant to section 502 of the Bankruptcy Code, (C) a Claim based on such debt is or has been disallowed by order of the Bankruptcy Court, or (D) the holder of a Claim based on such debt has accepted this Plan; and (ii) preclude all entities from asserting against ~~the~~each Debtor or any of its Assets any other or further Claims based upon any act or omission, transaction or other activity of any kind or nature that occurred prior to the Effective Date, all pursuant to sections 524 and 1141 of the Bankruptcy Code. The discharge provided in this provision shall void any judgment

obtained against ~~the~~each Debtor at any time, to the extent that such judgment relates to a discharged Claim. The Debtor shall be discharged from any Claims and agreements related to debts that arose on or before the Effective Date and such debts, Claims and agreements are deemed restructured and new as set forth in the Plan.

**CLOSING THE CASE**

115. ~~39.~~ Upon substantial consummation, the ~~Debtor~~Debtors may move for a final decree to close the Bankruptcy Case and to request such other orders as may be just.

Dated: New York, New York
~~August 27, 2019~~

July 7, 2020

        **232** ~~Seigel Acquisition~~**SEIGEL DEVELOPMENT** LLC **and**

**232 SEIGEL ACQUISITION LLC**

By:    s/ ~~GC Realty Advisors, by~~ David Goldwasser

**BACKENROTH FRANKEL & KRINSKY, LLP**
Attorneys for ~~Debtor~~Debtors

By:    s/Mark A. Frankel
        800 Third Avenue
        New York, New York 10022
        (212) 593-1100

**BIDDING AND AUCTION PROCEDURES**

These Terms and Conditions of Sale are promulgated in connection with the auction sale (the "Sale") of the real property located at 232 Seigel Street, Brooklyn, New York (the "Property").

<u>Time and Place of Sale</u>:  The Sale will be held on _____, 2020 at ____ __ m. at the offices of Backenroth Frankel & Krinsky, LLP, 800 Third Avenue New York, New York 10022.

<u>Sale Pursuant to Chapter 11 Plan</u>:  The Seller of the Property is 232 Seigel Acquisition LLC (the "Debtor").  The sale shall be conducted pursuant to Bankruptcy Code section 363 and the Chapter 11 Plan of Reorganization (the "Plan") proposed by the Debtor as the Plan proponent ("Proponent").

<u>Sale free and Clear of Liens</u>:  The Sale of the Property shall be conducted pursuant to the Proponent's Plan of Reorganization free and clear of liens, claims, and encumbrances, with any such liens, claims and encumbrances to attach to the sale proceeds, and disbursed under the Plan.

<u>Qualification to Bid</u>:   In order to be qualified to bid on the Property, within seven days prior to the commencement of the Sale, each prospective bidder must deliver to the Proponent (a) a bank check in the amount of 10% of its opening bid (the "Qualifying Deposit") payable to "Backenroth Frankel & Krinsky, LLC, as Attorneys" (b) evidence reasonably demonstrating such bidder's ability to consummate a sale on the terms proposed, and (c) a written offer to purchase substantially in the form annexed hereto.  No later than one business day before the Sale, each bidder will be notified by the Proponent as to whether the Proponent deems such bidder qualified to bid at the Sale.

<u>Bidding</u>: Bidding shall be conducted openly at the Sale.  The opening bid shall be $18,000,000 ($18,000,000).  Minimum bidding increments shall be $50,000 ($50,000).

<u>Successful Bidder Additional Deposit</u>: At the Sale, once a bidder is determined to have made the highest or best bid for the Property at the Sale (the "Successful Bidder"), bidding shall be deemed closed and no additional bids will be considered.  Within one business day after the Successful Bidder is determined, the Successful Bidder shall be required to increase the Qualifying Deposit to an amount equal to ten percent of the winning bid, which amount shall serve as a good faith deposit against payment of the Purchase Price.  At the conclusion of the Sale, the Proponent's counsel will return the Qualifying Deposits to all other bidders.

<u>Sale Approval Hearing</u>:  A hearing will be conducted by the Bankruptcy Court on approval of the sale on the ____ day of _____, 2020 at _____, at the United States Bankruptcy Court, 300 Quarropas Street, White Plains, NY 10601−5008.

<u>Sale Approval Order</u>: the sale approval order shall approve the Sale, and in connection therewith, shall contain the following findings of fact and conclusions of law: (a) that the Terms and Conditions of the Sale are fair and reasonable, (b) that the Sale and the Purchaser's purchase, of the Property pursuant to the Plan, is non-collusive, fair and reasonable and was conducted openly and in good faith, (c) that the transfer of the Property to the Purchaser represents an arm's-length transaction and was negotiated in good faith between the parties, (d) that the Purchaser, as transferee of the Property, is a good faith Purchaser under Bankruptcy Code § 363(m) and, as such, is entitled to the full protection of Bankruptcy Code § 363(m), (e) the sale of the Property to the Purchaser was not controlled by an agreement among potential purchasers, (f) that no cause of action exists against the Purchaser or with respect to the sale of the Property to the Purchaser under Bankruptcy Code § 363(n), and (g) that any claims under Bankruptcy Code § 363(n) or any other claims as against the Purchaser are hereby released, waived and discharged.

<u>Closing</u>: The Successful Bidder must pay the balance of the Purchase Price for the Property (the difference between the amount of the successful bid and the Qualifying Deposit) to the Proponent, by bank check, or wire transfer at the closing of title to the Property (the "Closing"). The Successful Bidder must close title to the Property at a date that is no more than thirty (30) days after the Order by the Bankruptcy Court is entered, TIME BEING OF THE ESSENCE as to the Successful Bidder, although such date may be extended solely by the Proponent.

<u>Transfer Tax</u>: Under the Plan, pursuant to section 1146(c) Bankruptcy Code, (a) the issuance, transfer or exchange of any securities, instruments or documents, (b) the creation of any other Lien, mortgage, deed of trust or other security interest, (c) the making or assignment of any lease or sublease or the making or delivery of any deed or other instrument of transfer under, pursuant to, in furtherance of, or in connection with, the Plan, including, without limitation, any deeds, bills of sale or assignments executed in connection with the purchase of the Property by the Purchaser and any other transaction contemplated under the Plan or the re-vesting, transfer or sale of any real or personal property of the Debtor pursuant to, in implementation of, or as contemplated in the Plan, and (d) the issuance, renewal, modification or securing of indebtedness by such means, and the making, delivery or recording of any deed or other instrument of transfer under, in furtherance of, or in connection with, the Plan, including, without limitation, the Confirmation Order, shall not be subject any applicable document recording tax, stamp tax, conveyance fee or other similar tax, mortgage tax, real estate transfer tax, or other similar tax or governmental assessment including without limitation New York State Documentary Tax.

<u>Damages for Failure to Close</u>: Time is of the Essence as Against the Successful Bidder and the failure of the Successful Bidder to either timely pay the additional Qualifying Deposit or timely close for any reason whatsoever (except as otherwise provided below) including its failure to pay the balance of the Purchase Price on the Closing Date, will result in the Proponent retaining the deposit as liquidated damages and the termination of the Successful Bidder's right to acquire the Property. The Successful Bidder shall be obligated to close title to the Property and there is no contingency of any kind or nature that will permit the Successful Bidder to cancel or avoid its obligation other than the Proponent's inability to deliver bargain and sale deeds to the Property. Expenses incurred by the Successful Bidder, or any competing bidder relating to any due diligence, such as obtaining title reports or environmental inspections, shall be the sole

responsibility of such bidder, and under no circumstances shall the Proponent or the Proponent's professionals be responsible for, or pay, such expenses.

Backup Bidder:  In the event that the Successful Bidder for the Property fails to tender the payment of the balance of the Purchase Price on the Closing Date, or otherwise perform any of its obligations under these Terms and Conditions of Sale, the Proponent, at its sole option, shall be authorized to sell the Property to the Second Highest Bidder without any further notice without giving credit for the Deposit forfeited by the Successful Bidder, and upon such other terms and conditions as the Proponent deems appropriate.  Should the Second Highest Bidder fail to close on the Property, within such time as the parties may agree but not to exceed thirty (30) days after notice from the Proponent to the Second Highest Bidder, the Proponent shall be authorized to sell the Property to the next highest or best bidder, without the necessity of any further notice.  All bidders will be bound by these Terms and Conditions of Sale, including, without limitation, those items set forth in the paragraphs above, except that the Second Highest Bidder must close within thirty (30) days of notification that his bid is accepted.  TIME IS OF THE ESSENCE.

No Representations:  the Debtor and the Debtor's professionals have not made and do not make any representations as to the physical condition, rents, leases, expenses, operations, value of the land or buildings thereon, or any other matter or thing affecting or related to the Property or the Sale, which might be pertinent to the purchase of the Property, including, without limitation, (i) the current or future real estate tax liability, assessment or valuation of the Property; (ii) the potential qualification of the Property for any and all benefits conferred by or available under federal, state or municipal laws, whether for subsidies, special real estate tax treatment, insurance, mortgages, or any other benefits, whether similar or dissimilar to those enumerated; (iii) the compliance or non-compliance of the Property, in its current or any future state, with applicable present or future zoning ordinances or other land use law or regulation, or the ability to obtain a change in the zoning or use, or a variance in respect to the Property; (iv) the availability of any financing for the purchase, alteration, rehabilitation or operation of the Property from any source, including, but not limited to, any state, city or federal government or institutional lender; (v) the current or future use of the Property; (vi) the present and future condition and operating state of any and all machinery or equipment on the Property and the present or future structural and physical condition of any building thereon or its suitability for rehabilitation or renovation; (vii) the ownership or state of title of any personal property on the Property; (viii) the presence or absence of any laws, ordinances, rules, rent regulations, or other regulations of any governmental authority, agency or board and any violations thereof; (ix) any present or future issues concerning subdivision or non-subdivision of the Property; or (x) the compliance or non-compliance with environmental laws and the presence or absence of underground fuel storage tanks, any asbestos or other hazardous materials anywhere on the Property.  Each bidder shall be deemed to have agreed and acknowledged that no such representations have been made.  The Proponent is not liable or bound in any manner by expressed or implied warranties, guaranties, promises, statements, representations or information pertaining to the Property, made or furnished by the Proponent or any real estate broker agent, employee, servant or other person or professional representing or purporting to represent the Proponent unless such warranties, guaranties, promises, statements, representations or information are expressly and specifically set forth in writing by the Proponent.

3

For the avoidance of doubt, neither the Debtor nor the Debtor's professionals are authorized to provide any such warranties, guaranties, promises, statements, representations or information.

As Is Sale: The Property is being sold free and clear of all liens, claims, and encumbrances, with any such liens, claims and encumbrances to attach to the net proceeds of sale after deduction of any expenses of sale. Furthermore, the Property is being sold "AS IS", "WHERE IS" "WITH ALL FAULTS", without any representations, covenants, guarantees or warranties of any kind or nature whatsoever and subject to, among other things, (a) any state of facts that an accurate survey may show; (b) any covenants, restrictions and easements of record; (c) any state of facts a physical inspection may show; (d) any building or zoning ordinances or other applicable municipal regulations and violations thereof; and (e) environmental conditions, including, without limitation, the Property's compliance (or lack of compliance) with environmental laws and the presence or absence of underground fuel storage tanks, any hazardous materials or asbestos anywhere on the Property. By delivering their respective Qualifying Deposits, each bidder is deemed to have acknowledged that it has had the opportunity to review and inspect the Property, the state of title thereof and laws, rules and regulations applicable thereto, and will rely solely thereon and on its own independent investigations and inspections of the Property in making its bid. Neither the Proponent nor any of its representatives make any representations or warrantees with respect to the permissible uses of the Property, including but not limited to, the zoning of the Property. All bidders are deemed to have acknowledged that they have conducted their own due diligence in connection with the Property, and are not relying on any information provided by the Proponent or Proponent's professionals.

Deed: The Proponent shall convey the Property by delivery of a bargain and sale deed without covenants against grantor's acts.

Broker: Neither the Proponent nor the Proponent's professionals are liable or responsible for the payment of fees of any broker retained by the Purchaser.

Conduct of Sale: These Terms and Conditions of Sale will be read into the record, or specifically incorporated by reference, at the Sale of the Property. By making a bid for the Property, all bidders will be required to acknowledge these Terms and Conditions of Sale and agree to be bound by them.

Failure to Close: If the Proponent is unable to deliver title to the Property in accordance with these Terms and Conditions of Sale for any reason whatsoever or in the event that the Bankruptcy Court refuses to confirm the Proponent's Chapter 11 plan or approve the sale of the Property pursuant to Section 363 of the Bankruptcy Code, the Proponent's only obligation will be to refund the Deposit, together with interest earned thereon, if any, to the Successful Bidder, and upon such refund, the Successful Bidder will have no claim or recourse against the Proponent or the Proponent's professionals.

Right to Withdraw Sale: The Proponent reserves its right to withdraw the Property from the Sale, either prior or subsequent to the Sale, for any reasonable reason, as the Proponent deems necessary or appropriate.

<u>Plan Confirmation</u>:  The Sale of the Property is subject to confirmation of the Proponent's Plan and approval by the Bankruptcy Court.

<u>Breakup Fee</u>: None

<u>Credit Bidding</u>:  Notwithstanding anything to the contrary in these Bidding and Auction Procedures or in the Plan, the rights of claimants to credit bid under sections 363(k) and 1123 of the Bankruptcy Code are fully preserved.

<u>Bankruptcy Court Jurisdiction</u>:  The Bankruptcy Court shall determine any disputes concerning the Sale of the Property.  By participating in the Sale, all bidders consent to the jurisdiction of the Bankruptcy Court to determine such disputes under the Debtor's pending case.

CONTRACT dated as of the _____ day of _____, 2020 (this "Contract") , between 232 Seigel Acquisition LLC ( "Seller" or "Debtor") and _____ having an address at _____ _____ ("Purchaser").

Seller and Purchaser hereby covenant and agree as follows:

1. Sale of Property

Paragraph 1.01. Seller shall sell or cause to be sold to Purchaser, and Purchaser shall purchase, at the price and upon the terms and conditions set forth in this Contract: the real property located at 232 Seigel Street, Brooklyn, New York (the "Property").  The sale of the Property includes (a) all of its appurtenances, including any estate, right, title, interest, property, claim and demand of Seller in and to all streets, alleys, rights-of-way, sidewalks, easements, any adjoining gores or strips of land and utility lines or agreements, including, without limitation, all development rights and "air rights"; (b) all improvements, buildings and structures located on or at the Property and the facilities located thereon, and any apparatus, equipment, appliances and fixtures incorporated therein and used exclusively in connection with the operation and occupancy thereof; (c)  all plans, specifications, budgets, schedules, surveys, drawings, reports and governmental applications, permits, approvals and licenses issued by any federal, state or local governmental authority or agency pertaining to the ownership, operation, maintenance, development, construction or use of  the Property (collectively, the "Plans and Permits"); and (d) all of its rights and licenses in and to use the Plans and Permits.

Paragraph 1.02.   Purchaser acknowledges that the Sale shall be conducted pursuant to an Order of the United States Bankruptcy Court for the Southern District of New York (hereinafter the "Bankruptcy Court") in Case No. ~~20-22845~~20-22844 (RDD), entitled "Bidding and Auction Procedures" (hereinafter the "Bidding Procedures") which was approved by the Bankruptcy Court on _____ and is deemed annexed to this Contract.

Paragraph 1.03. Purchaser acknowledges that this sale is subject to and governed by (1) the Orders of the Bankruptcy Court, (2) the provisions of the United States Bankruptcy Code (hereinafter the "Code"), (3) the laws of the State of New York, to the extent they do not conflict with (1) and (2), above, and (4) the Bidding and Auction Procedures approved pursuant to the motion of the Seller.

2. Purchase Price, Acceptable Funds

Paragraph 2.01. The purchase price ("Purchase Price") to be paid by Purchaser to Seller for the Property is (                    ) Dollars or such other bid by the Purchaser approved by the Bankruptcy Court, payable as follows:

(A) on the signing of this Contract, by Purchaser's check payable to the Escrowee (as hereinafter defined), subject to collection, the receipt of which is hereby acknowledged, to be held in escrow pursuant to Bidding Procedures as defined in Article 3 hereof (the "Down Payment").

(B) THIS CONTRACT IS "ALL CASH" AS KNOWN IN THE COMMON PARLANCE. PURCHASER'S OBLIGATIONS UNDER THIS CONTRACT ARE NOT CONDITIONED UPON PURCHASER'S ABILITY TO SECURE FINANCING OF ANY KIND OR NATURE.

(C) The balance at Closing (as hereinafter defined) in accordance with Section 2.02 hereof (the "Cash Balance")

Paragraph 2.02. All monies payable under this Contract, unless otherwise specified herein, shall be paid by (a) certified checks of Purchaser drawn on any federally insured bank, savings bank, trust company or savings and loan association having a banking office in the City of New York; (b) official bank checks drawn by any such banking institution, payable to the order of Seller (or as Seller shall direct) and bearing no endorsements; or (c) wire transfer of immediately available federal funds. Attorney's Escrow Checks of Purchaser payable to the order of Seller (or as Seller directs) up to the amount of $1,000.00 in the aggregate shall be acceptable for sums other than the Purchase Price payable to Seller at Closing.

3. Escrow of Down Payment

Paragraph 3.01. (a) The Down Payment shall be paid by check or checks drawn to the order of and delivered to Backenroth Frankel & Krinsky LLP ("Escrowee"). The Escrowee shall hold the Down Payment in escrow in a non-interest-bearing IOLA Account until the Closing or sooner termination of this Contract and shall pay over or apply the Down Payment in accordance with the terms of this section. At the Closing, the Down Payment shall be paid by Escrowee in accordance with Bidding Procedures. If for any reason the Closing does not occur and either party makes a written demand upon Escrowee for payment of such amount, Escrowee shall give written notice to the other party of such demand. If Escrowee does not receive a written objection from the other party to the proposed payment within 10 business days after the giving of such notice, Escrowee is hereby authorized to make such payment. If Escrowee does receive such written objection within such 10-day period or if for any other reason Escrowee in good faith shall elect not to make such payment, Escrowee shall continue to hold such amount until otherwise directed by written instructions from the parties to this Contract or pursuant to an order of the Bankruptcy Court. However, Escrowee shall have the right at any time to deposit the escrowed proceeds and interest,

if any, thereon, with the clerk of the Bankruptcy Court. Escrowee shall give written notice of such deposit to Seller and Purchaser. Upon such deposit Escrowee shall be relieved and discharged of all further obligations and responsibilities hereunder.

(b) The parties acknowledge that Escrowee is acting solely as a stakeholder at their request and for their convenience, that Escrowee shall not be deemed to be the agent of either of the parties, and that Escrowee shall not be liable to either of the parties for any act or omission on its part unless taken or suffered in bad faith, in willful disregard of this Contract or involving gross negligence. Seller and Purchaser shall jointly and severally indemnify and hold Escrowee harmless from and against all costs, claims and expenses, including reasonable attorneys' fees, incurred in connection with the performance of Escrowee's duties hereunder, except with respect to actions or omissions taken or suffered by Escrowee in bad faith, in willful disregard of this Contractor involving gross negligence on the part of the Escrowee.

(c) Escrowee or any member of its firm shall be permitted to act as counsel for the Seller in any dispute as to the disbursement of the Down Payment or any other dispute between the parties whether or not Escrowee is in possession of the Down Payment and continues to act as Escrowee.

(d) Escrowee acknowledges receipt of the Down Payment by certified, bank check subject to collection or wire transmission and Escrowee's agreement to these provisions by signing in the place indicated on the signature page of this contact.

4. The Closing

Paragraph 4.01. The conveyance of title to the Property by the Seller to Purchaser, and payment of the Cash Balance by Purchaser shall take place _____ days following the entry of an Order approving the Contract and the transaction embodied therein if that is a business day, and if not, the following business day (the "Closing"). The Closing is to be held at the office of the Escrowee, or such other location as designated by the Seller within the Southern or Eastern District of New York. Time is of the essence with respect to Purchaser's obligations to close title in accordance with this Contract on or before the Closing date.

5.  Acknowledgments and Representations of Purchaser

Purchaser acknowledges and represents that:

Paragraph 5.01. Purchaser has inspected the Property, made all appropriate inquiries into the previous ownership and uses of the Property, is fully familiar with the physical condition and state of repair thereof, and shall accept the Property "as is" and in their present condition, including, without limitation, the environmental conditions as reflected in the Terms of Sale annexed hereto, without any reduction of the Purchase Price for any change in such condition by any reason thereof subsequent to the date of this Contract.  The Terms of Sale set forth conditions which Purchaser agrees to accept, including any covenant, easement, and/or deed restriction, and any other future obligation relating thereto.

3

Paragraph 5.02. Before entering into this Contract, Purchaser has made such examination of the Property, the physical condition and state of repair thereof including the environmental conditions. Purchaser acknowledges that it is an experienced real estate owner/operator and is relying solely on its own expertise and investigations and inspections in entering into this Contract and has not been induced by and has not relied upon any representations, warranties, or statements, whether express or implied, made by Seller or any agent, employee, or other representative of Seller or by any other person representing or purporting to represent Seller or Proponent, which are not expressly set forth in this Contract, whether or not any such representations, warranties or statements were made in writing or orally.

Paragraph 5.03. In the event of any default by the Purchaser in the terms of this Contract, the damages which are due to the Seller, by reason of said default, shall be deemed liquidated in the amount of the Down Payment, as Seller's sole remedy, it being agreed that Seller's damages in case of such default might be impossible to ascertain with mathematical precision and that the Down Payment constitutes a fair and reasonable amount of damages under the circumstances and is not a penalty.

Paragraph 5.04. Purchaser represents that (a) it has the legal power, right and authority to enter into this Agreement and to consummate the transactions contemplated hereby and that all requisite action has been taken by Purchaser in connection with the entering into this Contract and the consummation of the transactions contemplated hereby; (b) this Contract and all documents required hereby to be executed by Purchaser are and will be valid, legally binding obligations of and enforceable against Purchaser in accordance with their terms (c) Purchaser, and all direct or indirect beneficial owners of Purchaser, are in compliance with all applicable laws, statutes, rules and regulations of any federal, state or local governmental authority in the United States of America, including the requirements of Executive Order No. 13224, 66 Fed. Reg. 49079 (Sept. 25, 2001) (the "Order") and other similar requirements contained in the rules and regulations of the Office of Foreign Asset Control, Department of the Treasury ("OFAC") and in any related enabling legislation or other Executive Orders (collectively, the "Orders"). Neither Purchaser nor any of the direct or indirect beneficial owners of Purchaser (i) is listed on the Specially Designated Nationals and Blocked Persons List maintained by OFAC pursuant to the Order and/or on any other list of terrorists or terrorist organizations maintained pursuant to any of the rules and regulations of OFAC or pursuant to any other applicable Orders (such lists are collectively referred to as the "Lists") or is owned or controlled by, or acts for or on behalf of, any Person on the Lists or who has been determined by competent authority to be subject to the prohibitions contained in the Orders; (ii) has been arrested for money laundering or for predicate crimes to money laundering, convicted or pled nolo contendere to charges involving money laundering or predicate crimes to money laundering; or (iii) has been determined by competent authority to be subject to the prohibitions contained in the Orders; (iv) is owned or controlled by, nor acts for or on behalf of, any natural person or entity (a "Person") on the Lists or any other Person who has been determined by competent authority to be subject to the prohibitions contained in the Orders; (v) will transfer or permit the transfer of any interest in Purchaser or such parties to any Person who is, or whose beneficial owners are, listed on the Lists; or (vi) will assign this Agreement or any interest herein, to any Person who is listed on the Lists or who is engaged in illegal activities.

6.  Destruction, Damage or Condemnation

Paragraph 6.01. The provisions of Section 5-1311 of the General Obligations Law shall not apply to the sale and purchase provided for in this Contract and Purchaser agrees to close title to the Property regardless of any destruction, damage or condemnation that occurs after the execution and delivery of this Contract.

7.  Seller's Closing Obligations

At the closing, Seller shall execute and/or deliver or cause to be executed and/or delivered to Purchaser the following:

Paragraph 7.01. A bargain and sale deed without covenants against grantor's acts, executed by the Seller in proper form for recording so as to convey to Purchaser the fee title to the Property, subject to recorded encumbrances and the other conditions of this Contract.

Paragraph 7.02. All required New York City and State transfer tax returns executed by the Seller to be issued at the Closing and delivered to the representative of Purchaser's title company for delivery to the appropriate public officers promptly after the Closing.

Paragraph 7.03. The right to possession of the Property in condition required by this Contract, subject to the provisions hereinabove and to the provisions of the Code and the laws of the State of New York governing the rights to possession upon the conveyance of the deed subject to any Order of the Bankruptcy Court and the Bidding Procedures.  Seller shall not be obligated to bring any motion or proceeding for the purpose of obtaining possession of any part of the Property, or to remove any tenant or occupant therefrom after delivery of the Deed.

Paragraph 7.04.  Any other documents required by this Contract or by law to be delivered by Seller to consummate this transaction.

8.  Purchaser's Closing Obligations

At the Closing, Purchaser shall execute and/or deliver:

Paragraph 8.01.  The Cash Balance to the Seller.

Paragraph 8.02.  All required New York City and State transfer tax returns, and cause all such returns to be issued at the Closing and delivered to the representative of Purchaser's title company for delivery to the appropriate public officers promptly after the Closing.  Purchaser will pay any and all applicable transfer taxes and recording fees.

Paragraph 8.03.  Any other documents required by this Contract or by law or reasonably required by Seller to be executed and/or delivered by Purchaser to consummate this transaction.

9.  Apportionments

Paragraph 9.01. The parties specifically acknowledge that there shall be no apportionments made as of the date of Closing, whether for taxes, water or sewer charges, emergency repair liens, assessments, rents, fuel, or any other matters relating hereto.

10. Objections to Sale

Paragraph 10.01. This Contract shall automatically terminate if the Court rejects the Sale or if Seller shall be unable to cause title to the Property to be conveyed to Purchaser at the Closing Date or any adjournments thereof in accordance with the provisions of this Contract and the Bidding Procedures. Purchaser nevertheless may elect either (i) to accept such title as Seller may be able to convey, but without any abatement of or other credit to the Purchase Price or liability on the part of Seller; or (ii) to terminate this Contract. The sole liability of Seller shall be to refund the Down Payment and interest thereon, if any, to the Purchaser and this Contract shall be null and void and the parties hereto shall be relieved of all further obligations and liability. Seller shall not be required to bring any action or proceeding or to incur any expense to cure any title defect or to enable Seller otherwise to comply with the provisions of this Contract, except as may otherwise be provided in this Contract.

Paragraph 10.02. Purchaser shall take title to the Property "as is" and subject to: any state of facts an accurate survey may show; encroachments, covenants, easements, and restrictions of record, if any; violations, fines, penalties, zoning regulations, and ordinances of the City of New York. Purchaser is aware of and agrees to the Terms of Sale which are attached to this Contract and which are incorporated in this Contract by this reference as though fully set forth herein at length.

11. Notices

Paragraph 11.01. All notices under this Contract shall be in writing and shall be delivered personally, by nationally recognized overnight courier, addressed to Seller's attorney at the address set forth below, and to Purchaser addressed to Purchaser's attorney at the address set forth below.

Seller's Attorney: Backenroth Frankel & Krinsky, LLP, 800 Third Avenue, New York, New York 10022.

Purchaser's Attorney:

12. Limitations on Survival of Representations, Warranties, Covenants and other Obligations

Paragraph 12.01. Except as otherwise expressly set forth in this Contract, no representations, warranties, covenants or other obligations of Seller and/or Purchaser set forth herein shall survive the Closing except as specifically provided to survive, and no action based thereon shall be commenced after the Closing except as to such representations specifically provided to survive.

Paragraph 12.02. The delivery of the deed by the Seller and the acceptance thereof by Purchaser shall be deemed the full performance and discharge of every obligation on the part of Seller to be performed hereunder, except those obligations, if any, of Seller which are expressly stated in this Contract to survive.

13. Assignment of Contract

Paragraph 13.01. Purchaser shall not assign this Contract or its rights hereunder without the prior written consent of the Proponent, whose consent will not be unreasonably withheld or delayed. Additionally, Purchaser may assign its rights under this Contract, but only immediately before the Closing and only simultaneously with the payment of the Cash Balance, to any wholly owned subsidiary of Purchaser, or to any entity in which Purchaser, or its principals, has an equity interest of at least fifty-one (51%) percent and control of management (a "Controlled Entity"), upon appropriate proof of same delivered to Proponent. Any purported assignment without Proponent's consent or that is not to a Controlled Entity with proof of such relationship given to Proponent shall be void. Any sale, transfer or assignment of any interests in Purchaser will be deemed an assignment of this Contract and is subject to the same conditions as an assignment of this Contract. Nevertheless, an assignment of Purchaser's rights under this Contract, if and when consented to by Proponent, shall not be effective unless and until an executed counterpart of the instrument of assignment and of an assumption agreement by the assignee shall have been delivered to Seller.

Paragraph 13.02. Seller shall assign pending tax certiorari actions, if any, to Purchaser without any representations or warranties, and without any further obligation of Seller, except to execute such documents as may be necessary to effectuate such assignment.

14. Miscellaneous Provisions

Paragraph 14.01 THE PROVISIONS OF THE BIDDING PROCEDURES AND THE ORDERS OF THE COURT ARE A PART OF THIS CONTRACT. ANY CONFLICT WITH SUCH IN THIS CONTRACT WILL NOT BE DEEMED TO AMEND OR ALTER SAID PROCEDURES OR ORDERS.

Paragraph 14.02. Subject to the provisions of Paragraph 14.01, this Contract embodies and constitutes the entire understanding between the parties with respect to the transaction contemplated hereby, and all prior agreements, understandings, representations and statements, oral or written, are merged into this Contract. Neither this Contract nor any provision hereof may be waived, modified, amended, discharged, or terminated except by an instrument signed by the party against whom the enforcement of such waiver, modification, amendment, discharge, or termination is sought, and then only to the extent set forth in such instrument.

Paragraph 14.03. This Contract shall be governed by, and construed in accordance with, the Bankruptcy Code and the Orders of the Bankruptcy Court and, where it does not conflict with the Bankruptcy Code or any Order of the Bankruptcy Court, the laws of the State of New York.

The Bankruptcy Court shall have the exclusive jurisdiction to determine any disputes concerning the sale of the Property or any other matters under this Contract.

Paragraph 14.04. The captions in this Contract are inserted for convenience or reference only and in no way define, describe, or limit the scope or intent of this Contract or any of the provisions hereof.

Paragraph 14.05. This Contract shall be binding upon and shall inure to the benefit of the parties hereto and their respective heirs or successors and permitted assigns.

Paragraph 14.06. This Contract shall not be binding or effective until properly executed and delivered by Seller and Purchaser, together with all amounts required to be paid pursuant to 2.0l (A) hereto.  This Contract may be executed in counterparts each of which will constitute an original and all of which, when taken together, will constitute one and the same agreement.  A signed counterpart of this Contract delivered by electronic transmission will be treated as an original.

Paragraph 14.07. As used in this Contract, the masculine shall include the feminine and neuter, the singular shall include the plural, and the plural shall include the singular, as the context may require.

Paragraph 14.08. Subject to Paragraph 14.01, if the provisions of any schedule or rider to this Contract are inconsistent with the provisions of this Contract, the provisions of such schedule or rider shall prevail.

IN WITNESS WHEREOF, the parties hereto have executed this Contract as of the date first above written.

Seller:                                              Purchaser:


By: _____        By: _____
        Name:                                                Name:
        Title:                                                Title:

Backenroth Frankel & Krinsky, LLP,
Escrowee:


By: _____
        Name:
        Title:

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK
---------------------------------------------------------x

In re                                                    Chapter 11

       232 ~~Seigel Acquisition~~SEIGEL DEVELOPMENT LLC~~,~~ [1] Case ~~No~~no. ~~20-22845~~ 20-22844 (RDD)

~~Debtor.~~

                     Jointly Administered
                  Debtors.

---------------------------------------------------------x

## NOTICE OF SALE

       PLEASE TAKE NOTICE, that upon the application of 232 Seigel Acquisition LLC ("Debtor"), the real property located at 232 Seigel Street, Brooklyn, New York (the "Property") shall be sold to the highest bidder at an auction sale to be conducted on _____, 2020 at _____ at the offices of Backenroth Frankel & Krinsky, LLP, 800 Third Avenue, New York, New York 10022. The Property shall be sold "as is." Bidding shall be limited to all cash offers, and the minimum opening bid shall be $18,000,000, and bidding shall be increments of $50,000. All prospective bidders shall be required to deposit $$1,000,000 (the "Deposit") in escrow with the undersigned by bank check or wire deposit on or before _____, 2020 at 5:00 p.m. Subject to approval at a hearing ("Hearing") to be held on _____ at _____ __.m. before the Honorable Robert D. Drain at the United States Bankruptcy Court, 300 Quarropas Street, White Plains, NY 10601−5008, the highest bidder shall be the purchaser (the "Purchaser") of the Property, free and clear of all liens, claims and encumbrances, with any such liens, claims and encumbrances to attach to the proceeds of sale. The Deposit shall be non-refundable. In the event the Purchaser closes on or before _____ after the entry of an order approving the sale, the Deposit shall be applied to the purchase price. In the event Purchaser fails to close on or before fifteen days after the entry of an order approving the sale, the Deposit shall be remitted to the Debtor. Time shall be of the essence in the closing of this transaction. In the event Purchaser fails to close as set forth herein, then the Debtor shall have the right to accept the bid next highest in amount to the original Purchaser's bid.

       PLEASE TAKE FURTHER NOTICE, that a complete copy of the terms and conditions of sale is attached to the Debtor's Chapter 11 plan filed in the Bankruptcy Court and is available upon request of the undersigned.

---

[1] The Debtors in these chapter 11 cases and the last four digits of each Debtor's taxpayer identification number are as follows: 232 Seigel Development LLC (0108) and 232 Acquisition LLC (9782)

Dated: New York, New York
_____, 2020

Backenroth Frankel & Krinsky, LLP
800 Third Avenue
New York, New York 10022
(212) 593-1100

**ASSETS AND LIABILITIES UNDER PLAN DISTRIBUTION ANALYSIS**

| Assets | |
|---|---|
| PropertyProperties | $18,000,000 |
| **Liabilities** | |
| Administrative Expense Claims | $150,000$75,000 |
| Unclassified Priority Claims | $0.000 |
| Acquisition Class 1 Real estate taxNew York City Liens. | $0.00 |
| Acquisition Class 2 DB Seigel LLC | $5,250,000$6,378,750 |
| Acquisition Class 3 Priority Claims under Sections 507(a)(2),(3),(4),(5),(6),(7) and (78) of the Bankruptcy Code. | $0 |
| Acquisition Class 4 General Unsecured Claims | $6,397,010 |
| Development Class 1 DB Seigel Mezz | $1,425,520 |
| Development Class 2 Priority Claims | -0- |
| Development Class 3 General Unsecured Claims | -0- |
| Development Class 4 Interest Holders | $6,202,990$1,323,720 |
| **Total** | $18,000,000 |

## CHAPTER 7 LIQUIDATION ANALYSIS

| Assets | |
|---|---|
| PropertyProperties | $18,000,000 |

| Liabilities | |
|---|---|
| Administrative Expense Claims | $1,950,000$2,475,000 |
| Unclassified Priority Claims | $0.000 |
| Acquisition Class 1 Real estate taxNew York City Liens. | $0.00 |
| Acquisition Class 2 DB Seigel LLC | $5,250,000$6,378,750 |
| Acquisition Class 3 Priority Claims under Sections 507(a)(2),(3),(4),(5),(6),(7) and (78) of the Bankruptcy Code. | $0 |
| Acquisition Class 4 General Unsecured Claims | $6,397,010 |
| Development Class 1 DB Seigel Mezz | $1,425,520 |
| Development Class 2 Priority Claims | -0- |

| | |
|---|---|
| Development Class 3 General Unsecured Claims | -0- |
| Development Class 4 Interest Holders | ~~$4,,402,990~~ |
| **Total** | $18,000,000 |

Note: All Claim amounts subject to objection.

Document comparison by Workshare 10.0 on Wednesday, October 7, 2020 1:36:39 PM

| Input: | |
|---|---|
| Document 1 ID | file://F:\232 Seigel\232 Acq Disclosure Statement-006.docx |
| Description | 232 Acq Disclosure Statement-006 |
| Document 2 ID | file://F:\232 Seigel\232 Joint Discl Stt-004.docx |
| Description | 232 Joint Discl Stt-004 |
| Rendering set | Standard |

| Legend: | |
|---|---|
| Insertion | |
| Deletion | |
| Moved from | |
| Moved to | |
| Style change | |
| Format change | |
| Moved deletion | |
| Inserted cell | |
| Deleted cell | |
| Moved cell | |
| Split/Merged cell | |
| Padding cell | |

| Statistics: | |
|---|---|
| | Count |
| Insertions | 610 |
| Deletions | 461 |
| Moved from | 2 |
| Moved to | 2 |
| Style change | 0 |
| Format changed | 0 |
| Total changes | 1075 |

Mark Frankel
Backenroth Frankel & Krinsky, LLP
800 Third Avenue, Floor 11
New York, New York 10022
(212) 593-1100

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------x

In re                                                   Chapter 11

     232 SEIGEL DEVELOPMENT LLC,          Case no. 20-22844 (RDD)

            Debtor.

-------------------------------------------------------x

In re                                                   Chapter 11

     232 SEIGEL ACQUISITION LLC,          Case no. 19-22845 (RDD)

            Debtor.

-------------------------------------------------------x

## JOINT DISCLOSURE STATEMENT

**THIS IS NOT A SOLICITATION OF ACCEPTANCE OR REJECTION OF THE PLAN. ACCEPTANCES OR REJECTIONS MAY NOT BE SOLICITED UNTIL A DISCLOSURE STATEMENT HAS BEEN APPROVED BY THE COURT. THIS DISCLOSURE STATEMENT IS BEING SUBMITTED FOR APPROVAL BUT HAS NOT BEEN APPROVED BY THE COURT.**

**THIS DISCLOSURE STATEMENT IS BEING SUBMITTED TO ALL CREDITORS AND PARTIES IN INTEREST OF 232 SEIGEL DEVELOPMENT LLC AND 232 SEIGEL ACQUISITION LLC, (EACH A DEBTOR, AND COLLECTIVELY, THE "DEBTORS").**

**THIS DISCLOSURE STATEMENT CONTAINS INFORMATION THAT MAY AFFECT CREDITORS' DECISIONS TO ACCEPT OR REJECT THE PLAN OF REORGANIZATION, A COPY OF WHICH IS ANNEXED HERETO AS EXHIBIT A.**

**ALL CREDITORS ARE URGED TO READ THIS DISCLOSURE STATEMENT CAREFULLY. ALL CAPITALIZED TERMS CONTAINED IN THIS DISCLOSURE STATEMENT SHALL HAVE THE SAME MEANING AS CAPITALIZED TERMS CONTAINED IN THE PLAN OF REORGANIZATION.**

## INTRODUCTION

1.　232 SEIGEL DEVELOPMENT LLC ("Development") and 232 SEIGEL ACQUISITION LLC, ("Acquisition") (each a "Debtor," and collectively, the "Debtors") submit this joint disclosure statement ("Disclosure Statement") in connection with their joint plan of reorganization ("Plan") under Chapter 11 of the United States Bankruptcy Code.  A copy of the Plan is attached hereto as Exhibit A.  All Creditors are urged to review the Plan, in addition to reviewing this Disclosure Statement.  All capitalized terms used but not defined shall have the meaning set forth in the Plan.

2.　This Disclosure Statement is not intended to replace a review and analysis of the Plan.  Rather, it is submitted as a review of the Plan in an effort to explain the Plan.  To the extent a Creditor has questions, the Debtors urge you to contact Debtors' counsel, Mark Frankel, Esq., at 212.593.1100 or mfrankel@bfklaw.com and every effort will be made to assist you.

3.　On _____, 2020, after notice and a hearing, the Bankruptcy Court entered an order approving this Disclosure Statement as containing information of a kind and in sufficient detail, as far as is reasonably practicable in light of the nature and history of the Debtors and the condition of the Debtors' books and records, to enable Creditors whose votes are being solicited to make an informed judgment whether to accept or reject the Plan.

4.　EXCEPT AS SET FORTH IN THIS DISCLOSURE STATEMENT, NO REPRESENTATIONS CONCERNING THE DEBTORS, THEIR ASSETS, THEIR PAST OR FUTURE OPERATIONS, OR THE PLAN ARE AUTHORIZED, NOR ARE ANY SUCH REPRESENTATIONS TO BE RELIED UPON IN ARRIVING AT A DECISION WITH RESPECT TO THE PLAN.

5.	THE INFORMATION CONTAINED IN THIS DISCLOSURE STATEMENT HAS BEEN SUPPLIED BY THE DEBTORS.  THE DEBTORS' BOOKS AND RECORDS HAVE BEEN USED TO PROVIDE THE INFORMATION CONCERNING THE DEBTORS' FINANCIAL CONDITION AS SET FORTH IN THE DISCLOSURE STATEMENT.  BASED UPON THE INFORMATION MADE AVAILABLE, DEBTORS' COUNSEL HAS NO INFORMATION TO INDICATE THAT THE INFORMATION DISCLOSED HEREIN IS INACCURATE.  NEITHER THE DEBTORS NOR DEBTORS' COUNSEL, HOWEVER, IS ABLE TO STATE DEFINITIVELY THAT THERE IS NO INACCURACY HEREIN OR THAT FUTURE EVENTS MAY NOT RENDER THE INFORMATION CONTAINED HEREIN INACCURATE.

6.	After reviewing this Disclosure Statement indicate your vote to accept or to reject the Plan on the enclosed ballot, and return the ballot to counsel for the Debtors to be received by _____, 2020.

7.	The Bankruptcy Court has entered an Order fixing _____, 2020, at _____ a.m., at the United States Bankruptcy Court, 300 Quarropas Street, White Plains, NY 10601−5008, as the date, time and place for the hearing on confirmation of the Plan and fixing _____, 2020, as the last date for the filing and serving of any objections to confirmation of the Plan.  A copy of any objection to confirmation of the Plan must be filed with the Court, served on Debtors' counsel and delivered to Judge Robert D. Drain's chambers at the United States Bankruptcy Court, 300 Quarropas Street, White Plains, NY 10601−5008 on or before such date.

**BACKGROUND**

8.      On July 14, 2020, Acquisition filed a Chapter 11 petition and
Development, Acquisition's parent company, filed a Subchapter 5 petition under Chapter 11.
Development filed an amended petition to remove the Subchapter 5 small business election.

9.      Acquisition owns the real property at 232 Seigel Street, Brooklyn, New
York (the "Property") valued at $18,000,000 based on the February 26, 2020 purchase and sale
agreement with 232 Seigel Property, LLC, a copy of which is annexed to the Plan as Exhibit A
(the "Sale Contract").  The Property is an assemblage of properties with approved plans to
develop full-service hotel with 150 rooms with amenities, community space, parking and other
features.

10.      Shortly after entering into the Sale Contract, the mortgage market was
frozen.  Closing was scheduled for May 21, 2020.  232 Seigel Property, LLC projected that if it
could close, it would not be until at least approximately November 2020.

11.      The Property is subject to a mortgage held by DB Seigel LLC
("Mortgagee").  The Mortgagee's proof of claims asserts an outstanding amount of $6,378,750
("Mortgage Loan").

12.       DB 232 Seigel Mezz LLC ("Mezz Lender"), an affiliate of the
Mortgagee, asserts a $1,425,520 claim against Development secured by Development's
membership interests ("Membership Interests") in Acquisition (the "Mezz Loan").

13.      The asserted Mortgage and Mezz Loans total about $10,204,470.  In
addition, there is about $6,397,010 of combined unsecured debt against both Debtors, including a

disputed $4,500,000 guarantee claim held by ER 215 Moore Holdings, LLC against both 232 Development and 232 Acquisition. The grand total of disputed and undisputed debt is therefore $16,601,280.

14.     Since the Sale Contract could not close due to Covid, neither Acquisition nor Development could pay creditors as planned.

15.     The Mezz Lender had scheduled a sale of the Membership Interests for April 7, 2020. The Mezz Lender adjourned that sale to May 5, 2020, then to June 23, 2020, and finally to July 14, 2020. But refused to adjourn the sale further. That final adjournment notice was ambiguous and appeared to potentially contemplate the sale of both the Property and the Membership Interests.

16.     With the New York state courts closed for all practical purposes, Acquisition and Development had no choice but to file Chapter 11 petitions or risk losing the equity in the Property, and their ability to pay creditors.

17.     The bankruptcy strategy is not to obstruct payment to creditors, but to pay creditors in full in cash from the net sale proceeds ("Sale Proceeds") at closing the sale of the Property under the Plan.

18.     The Sale Proceeds after payment of Acquisition's creditor claims will be disbursed to Development, as Acquisition's sole shareholder. Those net Sale Proceeds will be distributed to 232 Development's creditors, and then to its sole member, assuming there is a surplus.

19.     Since the grand total of asserted debt is $16,601,280 whereas the Sale Contract purchase price is $18,000,000, all creditors may be paid in full even if the Sale Contract does not close and the Property must be sold by auction a reduced price.

20.     ER 215 Holdings LLC, however, filed a motion to dismiss the bankruptcy cases, and the Mortgage and Mezz Lenders filed lift stay motions so they could liquidate under New York law. This, notwithstanding the fact that the sale of the Property in these cases would be fastest and surest way for payment. Those motions, therefore, suggest an unspoken agenda which does not involve merely collecting the amounts legitimately owed.

21.     In summary, the Plan proposes to sell the Property under the Contract of Sale subject to higher and better offers, with the Sale Proceeds to be distributed to creditors in their order of priority. The net Sale Proceeds after payment of creditor claims will be disbursed to 232 Development, as Acquisition's sole shareholder. Those net Sale Proceeds will be distributed to Development's creditors, and then to its sole member.

## DEBTORS' PLAN OF REORGANIZATION

## CLASSIFICATION AND TREATMENT OF CLAIMS

### Acquisition Class 1

22.     **Classification** – New York City Liens. Acquisition estimates $0.00 due.

23.     **Treatment** – Payment in full in Cash of Allowed Amount on the Effective Date, plus interest at the applicable statutory rate as it accrues from the Petition Date through the date of payment.

24.     **Voting** – Unimpaired and deemed to have accepted the Plan

**Acquisition Class 2**

25.     **Classification** – DB Seigel LLC first mortgage on the Property.  The Mortgagee asserts a $6,378,750 Claim.

26.     **Treatment** – After payment of Acquisition Administrative Claims and Acquisition unclassified Priority Tax Claims, payment on Effective Date of available Cash from the Property Sale Proceeds up to the Allowed Amount of the Class 2 Claim plus interest at the applicable contract rate as it accrues from the Petition Date through the date of payment.

27.     **Voting** – Impaired and entitled to vote to accept or reject the Plan.

**Acquisition Class 3**

28.     **Classification** –  Priority Claims under Sections 507(a)(2),(3),(4),(5),(6),(7) and (8) of the Bankruptcy Code..  Acquisition estimates $0 due.

29.     **Treatment** – Payment in full in Cash of Allowed Amount on the Effective Date, plus interest at the applicable statutory rate as it accrues from the Petition Date through the date of payment.

30.     **Voting --** Unimpaired and deemed to have accepted the Plan.

**Acquisition Class 4**

31.     **Classification** – General Unsecured Claims.  Acquisition estimates asserted Claims totaling $6,397,010.

32.     **Treatment** – After payment of Acquisition Administrative Claims, Acquisition unclassified Priority Tax Claims, and Acquisition Class 1, 2 and 3 Claims, Payment on the Effective Date of available Cash from the Property Sale Proceeds up to the Allowed

Amount of each Class 4 Claim plus interest at the Legal Rate as it accrues from the Petition Date through the date of payment.

33. **<u>Voting</u>** – Impaired and entitled to vote to accept or reject the Plan..

## **<u>Acquisition Class 5</u>**

34. **<u>Classification</u>** –Development, Acquistion's sole Interest Holder.

35. **<u>Treatment</u>** – Payment on Effective Date of available Cash from the Property Sale Proceeds after payment of Acquisition Administrative Claims, Acquisition unclassified Priority tax Claims, and Acquisition Class 1, 2, 3 and 4 Claims.

36. **<u>Voting</u>** – Impaired and entitled to vote to accept or reject the Plan.

## **<u>Development Class 1</u>**

37. **<u>Classification</u>** – DB Seigel LLC holds the Mezz Loan, consisting of a note and security interest in the Membership Interests.  Mezz Lender asserts a $1,425,520 Claim.

38. **<u>Treatment</u>** – Payment on Effective Date of available Cash from the distribution to Acquisition Class 5, after payment of Development Administrative Claims and Development unclassified Priority tax Claims, up to the Allowed Amount of the Class 1 Claim plus interest at the applicable rate as it accrues from the Petition Date through the date of payment.

39. **<u>Voting</u>** – Impaired and entitled to vote to accept or reject the Plan.

**Development Class 2**

40.      **Classification** –  Priority Claims under Sections 507(a)(2),(3),(4),(5),(6),(7) and (8) of the Bankruptcy Code..  Development estimates no Class 2 Claims.

41.      **Treatment** – Payment in full in Cash of Allowed Amount on the Effective Date, plus interest at the applicable statutory rate as it accrues from the Petition Date through the date of payment.

42.      **Voting --** Unimpaired and deemed to have accepted the Plan.

**Development Class 3**

43.      **Classification** – General Unsecured Claims.    Development estimates asserted Claims totaling $6,397,010..

44.      **Treatment** – Payment on Effective Date of available Cash from the distribution to Acquisition Class 5, after payment of Development Administrative Claims, Development unclassified Priority tax Claims and Development Class 1 and 2 Claims, up to the Allowed Amount of each Class 3 Claim plus interest at the Legal Rate as it accrues from the Petition Date through the date of payment..

45.      **Voting** – Impaired and entitled to vote to accept or reject the Plan.

**Development Class 4**

46.      **Classification** – Interests Holders.

47.      **Treatment** – Payment on Effective Date of available Cash after payment of all Acquisition and Development Claims.

48.     **Voting** – Impaired and entitled to vote to accept or reject the Plan.

## UNCLASSIFIED PRIORITY TAX CLAIMS

49.     Priority tax Claims under Sections 507(a)(8) of the Bankruptcy Code. Filed and Scheduled Claims total approximately 0.  The treatment of such Claims, if any, shall be payment in Cash on the Effective Date, of Allowed Amount of each such Claim plus interest at the applicable statutory rate as it accrues from the Petition Date through the date of payment.

## ADMINISTRATIVE EXPENSES

50.     Allowed Administrative Expenses shall be paid in full, in cash on the Effective Date, or the date such Administrative Expense becomes Allowed or as soon as practicable thereafter, except to the extent that the holder of an Allowed Administrative Expense agrees to a different treatment; provided, however, that Allowed Administrative Expenses representing obligations incurred in the ordinary course of business or assumed by the Debtors shall be paid in full or performed by the Debtors in the ordinary course of business or pursuant to the terms and conditions of the particular transaction.

51.     Unless otherwise ordered by the Bankruptcy Court, requests for payment of Administrative Claims (except for Professional Fee Claims) must be filed and served no later than 35 days after entry of the Confirmation Order (the "Administrative Claims Bar Date"). Any Person that is required to file and serve a request for payment of an Administrative Claim and fails to timely file and serve such request shall be forever barred, estopped, and enjoined from asserting such Claim or participating in distributions under the Plan on account thereof. Objections to requests for payment of Administrative Claims (except for Professional Fee Claims

and Administrative Claims incurred in the ordinary course of the Debtors' business) must be filed and served on counsel for the Debtors and the party requesting payment of an Administrative Claim within thirty (30) days of the date such request for payment has been filed.

52.     Unless otherwise ordered by the Bankruptcy Court, and subject to notice and a hearing under section 330 of the Bankruptcy Code, requests for payment of Professional Fee Claims incurred through the Confirmation Date must be filed and served no later than sixty (60) days after the Effective Date (the "Professional Fee Claims Bar Date").  The Debtors estimate legal fees of approximately $75,000 through the Confirmation Date, inclusive of any interim fees that may be awarded before that date.

## STATUTORY FEES

53.     The Debtors shall pay from Cash in the Estate all fees payable due as of the Effective Date pursuant to section 1930 of title 28 of the United Sates Code. Thereafter, the Debtors shall pay from Cash in the Estate all United States Trustee quarterly fees under 28 U.S.C. § 1930(a)(6), plus interest due under 31 U.S.C. § 3717, on all disbursements, including plan payments and disbursements in and outside of the ordinary course of business, until the earliest of the entry of a final decree closing the Chapter 11 Case, dismissal of the Chapter 11 Case, or conversion of the Chapter 11 Case to a case under chapter 7 of the Bankruptcy Code.

## MEANS FOR IMPLEMENTATION

54.     Payments under the Plan will be made from the Sale Proceeds of Acquisition's Property and the liquidation of the Debtors' remaining Assets.  The Property shall be sold under the Contract of Sale annexed as Exhibit "A" to the Plan, subject to higher and

better offers, as set forth in the Bidding Procedures attached to the Plan as Exhibit "B." Pursuant to § 1123(a)(5)(D) of the Bankruptcy Code, the Property shall be sold to the Purchaser, free and clear of any and all liens, claims, encumbrances, interests, bills, or charges whatsoever, other than the usual and customary utility easements, if any, appearing as of record or as preserved in the Plan, with any such Liens, Claims, and encumbrances to attach to the Property Sale Proceeds, and disbursed in accordance with the provisions of the Plan. The Mortgagee shall be obligated to assign of its mortgage to Purchaser's mortgagee, if any, in connection with the sale of the Property under the Plan.

55. **Sale Approval** – As part of the sale under the Plan, and in order to ensure consummation of the Plan, the Plan requires that the confirmation order contain the following findings of fact and conclusions of law: (a) that the terms and conditions of the sale are fair and reasonable, (b) that the Debtor's sale, and the Purchaser's purchase, of the Property pursuant to the Plan, is non-collusive, fair and reasonable and was conducted openly and in good faith, (c) that the transfer of the Property to the Purchaser represents an arm's-length transaction and was negotiated in good faith between the parties, (d) that the Purchaser, as transferee of the Property, is a good faith purchaser under Bankruptcy Code § 363(m) and, as such, is entitled to the full protection of Bankruptcy Code § 363(m), (e) the sale of the Property to the Purchaser was not controlled by an agreement among potential purchasers, (f) that no cause of action exists against the Purchaser or with respect to the sale of the Property to the Purchaser under Bankruptcy Code § 363(n), and (g) that any claims under Bankruptcy Code § 363(n) or any other claims as against the Purchaser are hereby released, waived and discharged.

56.     **Marketing** – The Property shall be sold following a minimum two months of marketing by a broker or auctioneer to be retained by order of the Court upon the consent of the Lenders, Moore and the Office of United States Trustee, or following application, notice and hearing.  The Debtors anticipate closing in March 2021.

57.     **Vesting** -- Except as otherwise provided in the Plan, on the Effective Date all assets and properties of the Estate shall vest in the Reorganized Debtor free and clear of all Liens, Claims and encumbrances and any and all liens, claims and encumbrances that have not been expressly preserved under the Plan shall be deemed extinguished as of such date.  Except as otherwise provided herein, as of the Effective Date, all property of the Reorganized Debtor shall be free and clear of all Claims and Interests of Creditors, except for the obligations that are imposed under the Plan or by a Final Order of the Bankruptcy Court.

58.     **Execution of Documents** -- The Debtor shall be authorized to execute, in the name of any necessary party, any notice of satisfaction, release or discharge of any Lien, Claim or encumbrance not expressly preserved in the Plan and deliver such notices to any and all federal, state and local governmental agencies or departments for filing and recordation.

59.     **Recording Documents** -- Each and every federal, state and local governmental agency or department shall be authorized to accept and record any and all documents and instruments necessary, useful or appropriate to effectuate, implement and consummate the transaction contemplated by the Plan, including, but not limited to any and all notices of satisfaction, release or discharge of any Lien, Claim or encumbrance not expressly preserved by the Plan, and the Confirmation Order.

60.     **Preservation of Claims** -- All rights pursuant to Sections 502, 544, 545 and 546 of the Bankruptcy Code, all Avoidance Actions shall be preserved for the benefit of the Reorganized Debtors' estates.

61.     **Stamp Tax** -- Under the Plan, pursuant to Bankruptcy Code § 1146(c), (a) the issuance, transfer or exchange of any securities, instruments or documents, (b) the creation of any other Lien, mortgage, deed of trust or other security interest, (c) the making or assignment of any lease or sublease or the making or delivery of any deed or other instrument of transfer under, pursuant to, in furtherance of, or in connection with, the Plan, including, without limitation, any deeds, bills of sale or assignments executed in connection with the purchase of the Property by the Purchaser and any other transaction contemplated under the Plan or the re-vesting, transfer or sale of any real or personal property of the Debtor pursuant to, in implementation of, or as contemplated in the Plan, and (d) the issuance, renewal, modification or securing of indebtedness by such means, and the making, delivery or recording of any deed or other instrument of transfer under, in furtherance of, or in connection with, the Plan, including, without limitation, the Confirmation Order, shall not be subject any applicable document recording tax, stamp tax, conveyance fee or other similar tax, mortgage tax, real estate transfer tax, or other similar tax or governmental assessment.

62.     **Release of Liens** – Except as otherwise provided for in the Plan, (a) each holder of a Secured Claim, shall on the Effective Date (x) turn over and release to the Debtor any and all Collateral that secures or purportedly secures such Claim, as pertains to the Property or such Lien shall automatically, and without further action by the Debtor be deemed released, and

(y) execute such documents and instruments as the Debtor requests to evidence such Claim holder's release of such property or Lien.

## MANAGEMENT OF THE DEBTORS

63. Each Debtor is managed by David Goldwasser. Post-confirmation management shall remain unchanged.

64. Neither the Debtors nor any of their employees, advisors, attorneys, accountants, financial consultants, contractors, agents, and their successors and assigns, shall have or incur any liability to any holder of a Claim or Interest, or to any other entity, for any act or omission in connection with, related to, or arising out of, the pursuit of confirmation consummation, or other administration of the Plan or the property to be distributed or otherwise dealt with under the Plan, except for gross negligence or willful misconduct, and in all respects the Debtors and each of their employees, advisors, attorneys, accountants, financial consultants, contractors, and agents shall be entitled to rely upon the advice of counsel with respect to its duties and responsibilities under the Plan. No current Holder of a Claim or Equity Interest, representative thereof, shall have or pursue any claim or cause of action against the Debtors for making payments in accordance with the Plan, or for implementing the provisions of the Plan. The Debtors shall not be liable for obligations relating to Allowed Claims to the extent that Allowed Claims are not paid in full, other than as a result of gross negligence or willful misconduct.

## LIQUIDATION ANALYSIS

65.     In a liquidation under Chapter 7 of the Bankruptcy Code, each Debtor's assets would be sold and the sale proceeds distributed to creditors in their order of priority.  The Debtors believe that the Plan provides at least an equivalent return for each Debtor's estate as could be achieved in a liquidation.  As set forth on Exhibit B hereto, each Debtor projects that in a Chapter 7 liquidation, the return to such Debtor's estate would be reduced by an additional layer of administration legal expenses and commissions, which the Debtors estimates would total at least 15% of the sale proceeds.  The Debtors estimate an additional 3% transfer tax on the sale of the Properties, 3% trustee commission on the sale, and Chapter 7 professional fees equal to about 9% of the value of estate assets.

## LITIGATION ANALYSIS

66.     The Debtors are aware of no litigation with third parties, except the Mezz Lender's action to foreclose on the Membership Interests which will be made moot by the Plan.

## PAYMENT OF CLAIMS AND OBJECTIONS TO CLAIMS

67.     The Debtor shall be disbursing agent under the Plan without a bond.  The Debtor reserves the right to file objections to claims in the event grounds exist to object to particular claims, for a period of 120 days after the Effective Date.  On the initial distribution date and on each distribution date as may thereafter be necessary, the Debtor shall maintain an undetermined claims distribution reserve for the holders of undetermined claims as of such date in a sum not less than the amount required to pay each such undetermined claim if such claim was allowed in full.  To the extent that an undetermined claim becomes an Allowed Claim, the

distributions reserved for such Allowed Claim, shall be released from the undetermined claims distribution reserve and paid to the holder of such Allowed Claim. After all the amounts of all undetermined claims have been fixed, the balance of the undetermined claims distribution reserve shall thereafter be paid in accordance with the Plan.

## EXECUTORY CONTRACTS AND UNEXPIRED LEASES

68.     All unexpired leases and executory contracts not rejected prior to the Effective Date shall be assumed under the Plan. In the event of a rejection which results in damages a proof of claim for such damages must be filed by the damaged party with the Court within sixty (60) days after the Effective Date. All Allowed Claims arising from the rejection of any Executory Contract or unexpired lease shall be treated as Unsecured Claims. Any Claim arising from the rejection of any Executory Contract or unexpired lease not filed with the Court within the time period provided herein shall be deemed discharged and shall not be entitled to participate in any distribution under the Plan.

## TAX CONSEQUENCES

69.     The Debtors do not believe that there will be any negative tax consequences to the Debtors or to Creditors under the Plan. To the extent that a creditor is not paid in full under the Plan, such creditor may be entitled to a bad debt deduction. To the extent that a creditor has taken a bad debt deduction, Plan distributions may be taxable as income.

70.     THE DEBTORS DO NOT PURPORT, THROUGH THIS DISCLOSURE STATEMENT, TO ADVISE CREDITORS OR INTEREST HOLDERS REGARDING THE TAX CONSEQUENCES OF THE TREATMENT OF THE CREDITORS AND INTEREST

HOLDERS UNDER THE PLAN. CREDITORS AND INTEREST HOLDERS SHOULD SEEK

INDEPENDENT COUNSEL CONCERNING THE TAX CONSEQUENCES OF THEIR

TREATMENT UNDER THE PLAN.

## PLAN ALTERNATIVES

71.     Generally, plan options in these circumstances include selling,

refinancing, recapitalizing or loan modification. In this case, the Debtors believe that the sale of

the Property is the best alternative for maximizing value and facilitating payment to Creditors.

## VOTING PROCEDURES AND REQUIREMENTS

72.     A ballot to be used for voting to accept or reject the Plan is enclosed with

this Disclosure Statement. Each impaired creditor is entitled to execute the ballot and return it to

the undersigned to be considered for voting purposes. The Bankruptcy Court has directed that,

in order to be counted for voting purposes, ballots for the acceptance or rejection of the Plan

must be received no later than _____, 2020, at the following address:

Backenroth Frankel & Krinsky, LLP, 800 Third Avenue, Floor 11, New York, New York 10022,

Attn: Mark A. Frankel, Esq.

73.     Each Creditor of the Debtors whose Claim is impaired under the Plan is

entitled to vote, if either (i) its Claim has been scheduled by the Debtors, or (ii) it has filed a

Proof of Claim on or before the last date set by the Bankruptcy Court.

74.     Any Claim as to which an objection has been filed (and such objection is

still pending) is not entitled to vote, unless the Bankruptcy Court temporarily allows the Claim in

an amount which it deems proper for the purpose of accepting or rejecting the Plan upon motion

by a Creditor whose Claim is subject to an objection. Such motion must be heard and determined by the Bankruptcy Court prior to the date established by the Court to confirm the Plan.

75. A Creditor's vote may be disregarded if the Bankruptcy Court determines that the Creditor's acceptance or rejection was not solicited or procured in good faith or in accordance with the provisions of the Bankruptcy Code.

76. The Bankruptcy Code defines acceptance of a Plan by a class of Creditors as acceptance by holders of two-thirds in dollar amount and a majority in number of the Claims of that class which actually cast ballots for acceptance or rejection of the Plan.

77. The Bankruptcy Code defines acceptance of a Plan by a class of Interests as acceptance by holders of two-thirds in amount of the allowed Interests of such class held by holders of such interests.

## CRAMDOWN

78. If any impaired class of Claims does not accept the Plan, the Bankruptcy Court may still confirm the Plan if, as to each impaired class which has not accepted the Plan, the Plan "does not discriminate unfairly" and is "fair and equitable."

79. The Debtors intend to invoke the cramdown provisions of section 1129(b) as to any impaired class that does not accept the plan.

80. A plan of reorganization does not discriminate unfairly within the meaning of the Bankruptcy Code if no class receives less than it is legally entitled to receive for its Claims or Interests. "Fair and equitable" has different meanings for Secured and Unsecured Claims.

81.     With respect to a Secured Claim, "fair and equitable" means either: (a)  the impaired Secured Creditor retains its Liens to the extent of its Allowed Claim and receives deferred cash payments at least equal to the allowed amount of its Claim with a present value as of the Effective Date at least equal to the value of such Creditor's interest in the property securing its Liens; (b) property subject to the Lien of the impaired Secured Creditor is sold free and clear of that Lien, with that Lien attaching to the proceeds of the sale; or  (c) the impaired Secured Creditor realizes the "indubitable equivalent" of its Claim under the Plan.

82.     With respect to an Unsecured Claim, "fair and equitable" means either: (a) each impaired Unsecured Creditor receives or retains property of a value equal to the amount of its Allowed Claim; or (b) the holders of Claims and Interests that are junior to the Claims of the dissenting class will not receive any property under the Plan.

83.     In the event one or more classes of impaired Claims rejects the Plan, the Bankruptcy Court will determine at the Confirmation Hearing whether the Plan is fair and equitable and does not discriminate unfairly against any rejecting impaired class of Claims.

## <u>CONFIRMATION OF THE PLAN</u>

84.     Section 1128(a) of the Bankruptcy Code requires that the Bankruptcy Court, after notice, hold a hearing on confirmation of the Plan (the "Confirmation Hearing"). Section 1128(b) provides that any party in interest may object to confirmation of the Plan.

85.     By order of the Bankruptcy Court dated _____, 2020, the Confirmation Hearing has been scheduled for _____, 2020, at ___.m., in the Honorable Robert D. Drain's Courtroom, United States Bankruptcy Court, 300

Quarropas Street, White Plains, NY 10601−5008.  The Confirmation Hearing may be adjourned

from time to time by the Bankruptcy Court without further notice except for an announcement

made at the Confirmation Hearing or any adjourned Confirmation Hearing.  Any objection to

confirmation of the Plan must be made in writing and filed with the Bankruptcy Court with proof

of service and served upon the following on or before _____ 2020 at 5:00

p.m.:  Backenroth Frankel & Krinsky, LLP, 800 Third Avenue, New York, New York  10022,

Attn:  Mark A. Frankel, Esq.  Objections to confirmation of the Plan are governed by Bankruptcy

Rule 9014.

    86. At the Confirmation Hearing, the Bankruptcy Court will determine with

respect to each Debtor whether the requirements of Section 1129 of the Bankruptcy Code have

been satisfied to enter an order confirming the Plan.  For each Debtor, the applicable

requirements are as follows:  (a)  The Plan complies with the applicable provisions of the

Bankruptcy Code, (b) the Debtor has complied with the applicable provisions of the Bankruptcy

Code; (c) the Plan has been proposed in good faith and not by any means forbidden by law, (d)

any payment made or promised or by a person issuing securities or acquiring property under the

Plan, for services or for costs and expenses in, or in connection with, the Bankruptcy Case, or in

connection with the Plan and incident to the Bankruptcy Case, has been disclosed to the

Bankruptcy Court, and any such payment made before the confirmation of the Plan is reasonable,

or if such payment is to be fixed after confirmation of the Plan, such payment is subject to the

approval of the Bankruptcy Court as reasonable, (e) the Debtor has disclosed the identity and

affiliations of any individual proposed to serve, after confirmation of the Plan, as a director,

officer, or voting trustee of the Debtor, an affiliate of the Debtor participating in a Plan with the

Debtor, or a successor to the Debtor under the Plan, and the appointment to, or continuance in, such office of such individual, is consistent with the interests of Creditors and equity security holders and with public policy, and the Debtor has disclosed the identity of any insider that will be employed or retained by the Reorganized Debtor, and the nature of any compensation for such insider, (f) with respect to each class of impaired Claims, either each holder of a Claim or interest of such class has accepted the Plan, or will receive or retain under the Plan on account of such Claim or interest property of a value, as of the Effective Date of the Plan, an amount that is not less than the amount that such holder would so receive or retain if the Debtor was liquidated on such date under Chapter 7 of the Bankruptcy Code, (g) each class of Claims or interests has either accepted the Plan or is not impaired under the Plan, (h) except to the extent that the holder of a particular Claim has agreed to a different treatment of such Claim, the Plan provides that Administrative Expenses and priority Claims will be paid in full on the Effective Date, (i) at least one class of impaired Claims has accepted the Plan, determined without including any acceptance of the Plan by any insider holding a Claim of such class, and (j) confirmation of the Plan is not likely to be followed by the liquidation, or the need for further financial reorganization of the Debtor or any successors to the Debtor under the Plan unless such liquidation or reorganization is proposed in the Plan.

87. The Debtors believe that the Plan satisfies all of the statutory requirements of Chapter 11 of the Bankruptcy Code, that each Debtor has complied or will have complied with all of the requirements of Chapter 11, and that the proposals contained in the Plan are made in good faith.

## <u>CONCLUSION</u>

The Debtors urge the Debtors' Creditors to vote to accept the Plan.

Dated: New York, New York
October \_\_\_, 2020

**232 SEIGEL DEVELOPMENT LLC and 232 SEIGEL ACQUISITION LLC**

By:  <u>s/ David Goldwasser</u>

**BACKENROTH FRANKEL & KRINSKY, LLP**
**Attorneys for Debtors**

By:  <u>s/Mark Frankel</u>
800 Third Avenue
New York, New York 10022
(212) 593-1100

Mark Frankel
Backenroth Frankel & Krinsky, LLP
800 Third Avenue, Floor 11
New York, New York  10022
(212) 593-1100

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK
--------------------------------------------------------x

In re                                                             Chapter 11

      232 SEIGEL DEVELOPMENT LLC,        Case no.  20-22844 (RDD)

                Debtor.
--------------------------------------------------------x

In re                                                             Chapter 11

      232 Seigel Acquisition LLC,         Case no.  19-22845 (RDD)

                Debtor.
--------------------------------------------------------x

## **JOINT PLAN OF REORGANIZATION**

# INTRODUCTION

232 SEIGEL DEVELOPMENT LLC and S&B MONSEY LLC, (each a "Debtor", and collectively, the "Debtors") submit this joint plan of reorganization ("Plan") under Chapter 11 of the United States Bankruptcy Code. UPON CONFIRMATION, THIS PLAN SHALL BE A BINDING OBLIGATION BETWEEN AND AMONG EACH DEBTOR AND EACH DEBTOR'S CREDITORS (AS SUCH TERMS ARE DEFINED BELOW).

# DEFINITIONS

1.      As used in this Plan, the following terms will have the meanings hereinafter set forth:

2.      "Acquisition" shall mean 232 Seigel Acquisition LLC.

3.      "Administrative Expense" shall mean any cost or expense of administration of the Bankruptcy Case entitled to priority under section 507(a)(1) and allowed under section 503(b) of the Bankruptcy Code, and any fees or charges assessed against a Debtor's Estate under Chapter 123, Title 28, United States Code.

4.      "Administrative Expense Claim" shall mean a Claim for payment of an Administrative Expense.

5.      "Allowance Date" shall mean the date which a Disputed Claim becomes an Allowed Claim by Final Order.

6.      "Allowed Amount" shall mean the amount of an "Allowed Claim."

7.      "Allowed Claim" shall mean a Claim: (a) to the extent that a Proof of Claim is filed timely or, with leave of the Court late filed as to which (i) no party in interest files

an objection or (ii) which is allowed by a Final Order; or (b) which is listed on a Debtor's schedules or any amendments thereto but which is not listed therein as disputed, unliquidated or contingent.

8.      "Allowed Secured Claim" shall mean a Secured Claim to the extent it is an Allowed Claim.

9.      "Allowed Unsecured Claim" shall mean an Unsecured Claim to the extent it is an Allowed Claim.

10.      "Assets" shall mean any and all of the respective real or personal property of any nature of the Debtors, including, without limitation, any real estate, buildings, structures, improvements, privileges, rights, easements, leases, subleases, licenses, goods, materials, supplies, furniture, fixtures, equipment, work in process, accounts, chattel paper, Cash, deposit accounts, reserves, deposits, contractual rights, intellectual property rights, claims, Causes of Action and any other general intangibles of the Debtors, of any nature whatsoever, including, without limitation, the property of the Debtors' estates pursuant to section 541 of the Bankruptcy Code.

11.      "Avoidance Actions" shall mean all claims and causes of action which a Debtor has or had the power to assert pursuant to any or all of sections 510, 544, 545, 547, 548, 549, 550, 551, and 553 of the Bankruptcy Code.

12.      "Bankruptcy Case" shall mean this Chapter 11 bankruptcy case.

13.      "Bankruptcy Code" shall mean Title 11 of the United States Code (11. U.S.C. § 101 et. seq.).

14.     "Bankruptcy Court" shall mean the Court as defined below.

15.     "Bar Date" shall mean September 28, 2020.

16.     "Cash" shall mean all cash and cash equivalents which evidence immediately available funds in United States dollars.

17.     "Causes of Action" shall mean any and all claims and causes of action of, and remedies granted to, a Debtor against any third party, including, without limitation, any Avoidance Actions or causes of action pursuant to sections 502, 506, 510, 541 through 545, 547 through 551, and/or 553 of the Bankruptcy Code and any claims pursuant to any other statutory or common law.

18.     "Claim" shall mean a right to payment as set forth in § 101(5) of the Bankruptcy Code.

19.     "Claimant" shall mean the holder of a Claim.

20.     "Confirmation Date" shall mean the date of the entry of the Confirmation Order.

21.     "Confirmation Hearing" shall mean the hearing pursuant to the Bankruptcy Code Section 1128 before the Bankruptcy Court regarding the proposed confirmation of the Plan.

22.     "Confirmation Order" shall mean the order of the Court confirming the Plan.

23.     "Court" shall mean the United States Bankruptcy Court for the SOUTHERN District of New York.

24. "Creditor" shall mean any entity that holds a Claim against a Debtor.

25. "Creditors Committee" shall mean a committee of creditors appointed by the United States Trustee in these cases under section 1102 of the Bankruptcy Code.

26. "Debtors" shall mean 232 SEIGEL DEVELOPMENT LLC and 232 SEIGEL ACQUISITION LLC.

27. "Development" shall mean 232 Seigel Development LLC.

28. "Disputed Claim" shall mean the whole or any portion of any Claim against a Debtor to which an objection is timely filed or may be timely filed as to which a Final Order has not been entered allowing or disallowing such Claim or any portion thereof.

29. "Disputed Claim Reserve" shall mean Cash to be set aside by the Disbursing Agent on the Effective Date in an escrow account maintained by the Disbursing Agent, in an amount equal to the amount that would have been distributed to the holders of Disputed Claims had such Claims been deemed Allowed Claims on the Effective Date, or in such other amount as may be approved by the Bankruptcy Court.

30. "Effective Date" shall mean the date fifteen (15) days after the Confirmation Order is a Final Order, or such other date as may be practicable, provided that absent Bankruptcy Court approval, such date shall be no later than sixty days after the Confirmation Order is a Final Order.

31. "Estate" shall mean the estate of each Debtor created upon the commencement of the Bankruptcy Case pursuant to Section 541 of the Bankruptcy Code.

32. "Executory Contracts" shall mean "executory contracts" and "unexpired leases" as such terms are used within Section 365 of the Bankruptcy Code.

33. "Final Order" shall mean an order of a court that has not been reversed, modified, amended or stayed, and as to which the time to appeal or to seek review or certiorari thereof has expired, and as to which no appeal, review or rehearing is pending.

34. "Impaired" shall mean not Unimpaired.

35. "Interest" shall mean an existing ownership interest in a Debtor.

36. "Interest Holder" shall mean a holder and owner of an existing Interest in a Debtor.

37. "Legal Rate" shall mean the applicable interest rate as set forth in 28 U.S.C. §1961 as of the Petition Date.

38. "Lien" shall mean a charge against or interest in property to secure payment of a debt or performance of an obligation.

39. "Membership Interests" shall mean Development's membership interests in Acquisition.

40. "Mezz Lender" shall mean DB 232 Seigel Mezz LLC.

41. "Mezz Loan" shall mean that certain $1,425,520 Claim asserted by Mezz Lender secured by the Development Membership Interests.

42. "Mortgagee" shall mean DB Seigel LLC.

43.     "Mortgage Loan" shall mean that certain $6,378,750 Claim asserted by Mortgagee secured by the Property.

44.     "Petition Date" shall mean July 14, 2020.

45.     "Plan" shall mean this Plan of Reorganization, and any and all modifications and/or amendments hereto.

46.     "Priority Claims" shall mean Claims under Sections 507(a)(3),(4),(5),(6), (7) and (8) of the Bankruptcy Code.

47.     "Property" shall mean 232 Seigel Street, Brooklyn, New York.

48.     "Professional(s)" shall mean any entity or person employed pursuant to an order of the Bankruptcy Court in accordance with sections 327, 328, or 1103 of the Bankruptcy Code and to be compensated for services rendered pursuant to sections 327, 328, 329, 330 and/or 331 of the Bankruptcy Code.

49.     "Professional Fee Claim" shall mean those fees and expenses claimed by a Professional pursuant to sections 330, 331 and/or 503 of the Bankruptcy Code.

50.     "Professional Fee Claim Bar Date" shall mean the last day for a Professional to file a Professional Fee Claim, which shall be no later than thirty (60) days after the Effective Date.

51.     "Property" shall mean the real property at 232 Seigel Street, Brooklyn, New York

52.　"Purchaser" shall mean 232 Seigel Property, LLC, or if 232 Seigel Property, LLC is not winning bidder of the Property under the Plan, the winning bidder of the Property under the Plan.

53.　"Reorganized Debtors" shall mean the Debtors on and after the Effective Date.

54.　"Sale Contract" shall mean that certain contract annexed to the Plan as Exhibit A.

55.　"Sale Proceeds" shall mean the proceeds of the sale of the Property under the Plan.

56.　"Secured Claim" shall mean a Claim secured by a Lien on property included within a Debtor's Estate.

57.　"Secured Creditor" shall mean the owner or holder of a Secured Claim.

58.　"Unclassified Priority Claims" shall mean tax Claims under Sections 507(a)(8) of the Bankruptcy Code.

59.　"Unimpaired" shall mean not impaired under section 1124 of the Bankruptcy Code.

60.　"Unsecured Claim" shall mean a claim for which the Claimant does not hold (a) a valid, perfected and enforceable Lien, security interest or other interest in or encumbrance against a Debtor or a Debtor's Estate; or (b) a right to setoff to secure the payment of such Claim.  An Unsecured Claim includes, but is not limited to, a Claim for damages

resulting from rejection of any Executory Contract pursuant to Section 365 of the Bankruptcy Code and does not include administrative of priority claims.

61.     "Unsecured Creditor" shall mean the owner or holder of an Unsecured Claim.

## CLAIMS CLASSIFICATION, TREATMENT AND VOTING

62.     On the Effective Date, the Debtors' cases will be deemed substantively consolidated in accordance with the terms of the Plan. As a result, the classes of Claims and Interest are classes that pertain to each of the Debtors.

### Acquisition Class 1

63.     **Classification** – New York City Liens. Acquisition estimates $0.00 due.

64.     **Treatment** – Payment in full in Cash of Allowed Amount on the Effective Date, plus interest at the applicable statutory rate as it accrues from the Petition Date through the date of payment.

65.     **Voting** – Unimpaired and deemed to have accepted the Plan

### Acquisition Class 2

66.     **Classification** – DB Seigel LLC first mortgage on the Property.  The Mortgagee asserts a $6,378,750 Claim.

67.     **Treatment** – After payment of Acquisition Administrative Claims and Acquisition unclassified Priority Tax Claims, payment on Effective Date of available Cash from the Property Sale Proceeds up to the Allowed Amount of the Class 2 Claim plus interest at the applicable contract rate as it accrues from the Petition Date through the date of payment.

9

68. **<u>Voting</u>** – Impaired and entitled to vote to accept or reject the Plan.

**<u>Acquisition Class 3</u>**

69. **<u>Classification</u>** – Priority Claims under Sections 507(a)(2),(3),(4),(5),(6),(7) and (8) of the Bankruptcy Code..  Acquisition estimates $0 due.

70. **<u>Treatment</u>** – Payment in full in Cash of Allowed Amount on the Effective Date, plus interest at the applicable statutory rate as it accrues from the Petition Date through the date of payment.

71. **<u>Voting</u> --** Unimpaired and deemed to have accepted the Plan.

**<u>Acquisition Class 4</u>**

72. **<u>Classification</u>** – General Unsecured Claims.  Acquisition estimates asserted Claims totaling $6,397,010.

73. **<u>Treatment</u>** – After payment of Acquisition Administrative Claims, Acquisition unclassified Priority Tax Claims, and Acquisition Class 1, 2 and 3 Claims, Payment on the Effective Date of available Cash from the Property Sale Proceeds up to the Allowed Amount of each Class 4 Claim plus interest at the Legal Rate as it accrues from the Petition Date through the date of payment.

74. **<u>Voting</u>** – Impaired and entitled to vote to accept or reject the Plan..

**<u>Acquisition Class 5</u>**

75. **<u>Classification</u>** –Development, Acquistion's sole Interest Holder.

76.     **Treatment** – Payment on Effective Date of available Cash from the
Property Sale Proceeds after payment of Acquisition Administrative Claims, Acquisition
unclassified Priority tax Claims, and Acquisition Class 1, 2, 3 and 4 Claims.

77.     **Voting** – Impaired and entitled to vote to accept or reject the Plan.

### Development Class 1

78.     **Classification** – DB Seigel LLC holds the Mezz Loan, consisting of a
note and security interest in the Membership Interests.  Mezz Lender asserts a $1,425,520 Claim.

79.     **Treatment** – Payment on Effective Date of available Cash from the
distribution to Acquisition Class 5, after payment of Development Administrative Claims and
Development unclassified Priority tax Claims, up to the Allowed Amount of the Class 1 Claim
plus interest at the applicable rate as it accrues from the Petition Date through the date of
payment.

80.     **Voting** – Impaired and entitled to vote to accept or reject the Plan.

### Development Class 2

81.     **Classification** –  Priority Claims under Sections
507(a)(2),(3),(4),(5),(6),(7) and (8) of the Bankruptcy Code..  Development estimates no Class 2
Claims.

82.     **Treatment** – Payment in full in Cash of Allowed Amount on the Effective
Date, plus interest at the applicable statutory rate as it accrues from the Petition Date through the
date of payment.

83.     **Voting --** Unimpaired and deemed to have accepted the Plan.

**Development Class 3**

84.    **Classification** – General Unsecured Claims.    Development estimates asserted Claims totaling $6,397,010..

85.    **Treatment** – Payment on Effective Date of available Cash from the distribution to Acquisition Class 5, after payment of Development Administrative Claims, Development unclassified Priority tax Claims and Development Class 1 and 2 Claims, up to the Allowed Amount of each Class 3 Claim plus interest at the Legal Rate as it accrues from the Petition Date through the date of payment..

86.    **Voting** – Impaired and entitled to vote to accept or reject the Plan.

**Development Class 4**

87.    **Classification** – Interests Holders.

88.    **Treatment** – Payment on Effective Date of available Cash after payment of all Acquisition and Development Claims.

89.    **Voting –** Impaired and entitled to vote to accept or reject the Plan.

**UNCLASSIFIED PRIORITY TAX CLAIMS**

90.    Priority tax Claims under Sections 507(a)(8) of the Bankruptcy Code. Filed and Scheduled Claims total approximately 0.  The treatment of such Claims, if any, shall be payment in Cash on the Effective Date, of Allowed Amount of each such Claim plus interest at the applicable statutory rate as it accrues from the Petition Date through the date of payment.

## ADMINISTRATIVE EXPENSES

91.     Allowed Administrative Expenses shall be paid in full, in cash on the Effective Date, or the date such Administrative Expense becomes Allowed or as soon as practicable thereafter, except to the extent that the holder of an Allowed Administrative Expense agrees to a different treatment; provided, however, that Allowed Administrative Expenses representing obligations incurred in the ordinary course of business or assumed by the Debtors shall be paid in full or performed by the Debtors in the ordinary course of business or pursuant to the terms and conditions of the particular transaction.

92.     Unless otherwise ordered by the Bankruptcy Court, requests for payment of Administrative Claims (except for Professional Fee Claims) must be filed and served no later than 35 days after entry of the Confirmation Order (the "Administrative Claims Bar Date"). Any Person that is required to file and serve a request for payment of an Administrative Claim and fails to timely file and serve such request shall be forever barred, estopped, and enjoined from asserting such Claim or participating in distributions under the Plan on account thereof. Objections to requests for payment of Administrative Claims (except for Professional Fee Claims and Administrative Claims incurred in the ordinary course of the Debtors' business) must be filed and served on counsel for the Debtors and the party requesting payment of an Administrative Claim within thirty (30) days of the date such request for payment has been filed.

93.     Unless otherwise ordered by the Bankruptcy Court, and subject to notice and a hearing under section 330 of the Bankruptcy Code, requests for payment of Professional Fee Claims incurred through the Confirmation Date must be filed and served no later than sixty (60) days after the Effective Date (the "Professional Fee Claims Bar Date"). The Debtors

13

estimate legal fees of approximately $75,000 through the Confirmation Date, inclusive of any interim fees that may be awarded before that date.

## STATUTORY FEES

94.     The Debtors shall pay from Cash in the Estate all fees payable due as of the Effective Date pursuant to section 1930 of title 28 of the United Sates Code. Thereafter, the Debtors shall pay from Cash in the Estate all United States Trustee quarterly fees under 28 U.S.C. § 1930(a)(6), plus interest due under 31 U.S.C. § 3717, on all disbursements, including plan payments and disbursements in and outside of the ordinary course of business, until the earliest of the entry of a final decree closing the Chapter 11 Case, dismissal of the Chapter 11 Case, or conversion of the Chapter 11 Case to a case under chapter 7 of the Bankruptcy Code.

## MEANS FOR IMPLEMENTATION

95.     Payments under the Plan will be made from the Sale Proceeds of Acquisition's Property and the liquidation of the Debtors' remaining Assets, The Property shall be sold under the Contract of Sale annexed as Exhibit "A" to the Plan, subject to higher and better offers, as set forth in the Bidding Procedures attached to the Plan as Exhibit "B."  Pursuant to § 1123(a)(5)(D) of the Bankruptcy Code, the Property shall be sold to the Purchaser, free and clear of any and all liens, claims, encumbrances, interests, bills, or charges whatsoever, other than the usual and customary utility easements, if any, appearing as of record or as preserved in the Plan, with any such Liens, Claims, and encumbrances to attach to the Property Sale Proceeds, and disbursed in accordance with the provisions of the Plan.  The Mortgagee shall be obligated to assign of its mortgage to Purchaser's mortgagee, if any, in connection with the sale of the Property under the Plan.

96.    **Marketing** – The Property shall be sold following a minimum two months of marketing by a broker or auctioneer to be retained by order of the Court upon the consent of the Lenders, Moore and the Office of United States Trustee, or following application, notice and hearing.  The Debtors anticipate closing in March 2021.

97.    **Sale Approval** – As part of the sale under the Plan, and in order to ensure consummation of the Plan, the Plan requires that  the confirmation order contain the following findings of fact and conclusions of law: (a) that the terms and conditions of the sale are fair and reasonable, (b) that the Debtor's sale, and the Purchaser's purchase, of the Property pursuant to the Plan, is non-collusive, fair and reasonable and was conducted openly and in good faith, (c) that the transfer of the Property to the Purchaser represents an arm's-length transaction and was negotiated in good faith between the parties, (d) that the Purchaser, as transferee of the Property, is a good faith purchaser under Bankruptcy Code § 363(m) and, as such, is entitled to the full protection of Bankruptcy Code § 363(m), (e) the sale of the Property to the Purchaser was not controlled by an agreement among potential purchasers, (f) that no cause of action exists against the Purchaser or with respect to the sale of the Property to the Purchaser under Bankruptcy Code § 363(n), and (g) that any claims under Bankruptcy Code § 363(n) or any other claims as against the Purchaser are hereby released, waived and discharged.

98.    **Vesting** -- Except as otherwise provided in the Plan, on the Effective Date all assets and properties of the Estate shall vest in the Reorganized Debtor free and clear of all Liens, Claims and encumbrances and any and all liens, claims and encumbrances that have not been expressly preserved under the Plan shall be deemed extinguished as of such date.  Except as otherwise provided herein, as of the Effective Date, all property of the Reorganized Debtor shall

be free and clear of all Claims and Interests of Creditors, except for the obligations that are imposed under the Plan or by a Final Order of the Bankruptcy Court.

99. **Execution of Documents** -- The Debtor shall be authorized to execute, in the name of any necessary party, any notice of satisfaction, release or discharge of any Lien, Claim or encumbrance not expressly preserved in the Plan and deliver such notices to any and all federal, state and local governmental agencies or departments for filing and recordation.

100. **Recording Documents** -- Each and every federal, state and local governmental agency or department shall be authorized to accept and record any and all documents and instruments necessary, useful or appropriate to effectuate, implement and consummate the transaction contemplated by the Plan, including, but not limited to any and all notices of satisfaction, release or discharge of any Lien, Claim or encumbrance not expressly preserved by the Plan, and the Confirmation Order.

101. **Preservation of Claims** -- All rights pursuant to Sections 502, 544, 545 and 546 of the Bankruptcy Code, all Avoidance Actions shall be preserved for the benefit of the Reorganized each Debtor's estate, provided, however, that each Debtor shall have sole authority for prosecuting any such claims.

102. **Stamp Tax** -- Under the Plan, pursuant to Bankruptcy Code § 1146(c), (a) the issuance, transfer or exchange of any securities, instruments or documents, (b) the creation of any other Lien, mortgage, deed of trust or other security interest, (c) the making or assignment of any lease or sublease or the making or delivery of any deed or other instrument of transfer under, pursuant to, in furtherance of, or in connection with, the Plan, including, without limitation, any deeds, bills of sale or assignments executed in connection with the purchase of the Property by

the Purchaser and any other transaction contemplated under the Plan or the re-vesting, transfer or sale of any real or personal property of the Debtor pursuant to, in implementation of, or as contemplated in the Plan, and (d) the issuance, renewal, modification or securing of indebtedness by such means, and the making, delivery or recording of any deed or other instrument of transfer under, in furtherance of, or in connection with, the Plan, including, without limitation, the Confirmation Order, shall not be subject any applicable document recording tax, stamp tax, conveyance fee or other similar tax, mortgage tax, real estate transfer tax, or other similar tax or governmental assessment.

103. **<u>Release of Liens</u>** – Except as otherwise provided for in the Plan, (a) each holder of a Secured Claim, shall on the Effective Date (x) turn over and release to the Debtor any and all Collateral that secures or purportedly secures such Claim, as pertains to the Property or such Lien shall automatically, and without further action by the Debtor be deemed released, and (y) execute such documents and instruments as the Debtor requests to evidence such Claim holder's release of such property or Lien.

<u>**MANAGEMENT OF THE DEBTORS**</u>

104. Each Debtor is managed by David Goldwasser. Post-confirmation management shall remain unchanged.

105. Neither the Debtors nor any of their employees, advisors, attorneys, accountants, financial consultants, contractors, agents, and their successors and assigns, shall have or incur any liability to any holder of a Claim or Interest, or to any other entity, for any act or omission in connection with, related to, or arising out of, the pursuit of confirmation consummation, or other administration of the Plan or the property to be distributed or otherwise

17

dealt with under the Plan, except for gross negligence or willful misconduct, and in all respects the Debtors and each of their employees, advisors, attorneys, accountants, financial consultants, contractors, and agents shall be entitled to rely upon the advice of counsel with respect to its duties and responsibilities under the Plan. No current Holder of a Claim or Equity Interest, representative thereof, shall have or pursue any claim or cause of action against the Debtors for making payments in accordance with the Plan, or for implementing the provisions of the Plan. The Debtors shall not be liable for obligations relating to Allowed Claims to the extent that Allowed Claims are not paid in full, other than as a result of gross negligence or willful misconduct.

## PAYMENT OF CLAIMS AND OBJECTIONS TO CLAIMS

106.    The Debtor shall be disbursing agent under the Plan without a bond.  The Debtor reserves the right to file objections to claims in the event grounds exist to object to particular claims, for a period of 120 days after the Effective Date.  On the initial distribution date and on each distribution date as may thereafter be necessary, the Debtor shall maintain an undetermined claims distribution reserve for the holders of undetermined claims as of such date in a sum not less than the amount required to pay each such undetermined claim if such claim was allowed in full.  To the extent that an undetermined claim becomes an Allowed Claim, the distributions reserved for such Allowed Claim, shall be released from the undetermined claims distribution reserve and paid to the holder of such Allowed Claim.  After all the amounts of all undetermined claims have been fixed, the balance of the undetermined claims distribution reserve shall thereafter be paid in accordance with the Plan.

## EXECUTORY CONTRACTS AND UNEXPIRED LEASES

107.     All unexpired leases and executory contracts not rejected prior to the Effective Date shall be assumed under the Plan.  In the event of a rejection which results in damages a proof of claim for such damages must be filed by the damaged party with the Court within sixty (60) days after the Effective Date.  All Allowed Claims arising from the rejection of any Executory Contract or unexpired lease shall be treated as Unsecured Claims.  Any Claim arising from the rejection of any Executory Contract or unexpired lease not filed with the Court within the time period provided herein shall be deemed discharged and shall not be entitled to participate in any distribution under the Plan.

## RETENTION OF JURISDICTION

108.     Retention of Jurisdiction.  The Court shall have jurisdiction over all matters arising under, arising in, or relating to each Debtor's Bankruptcy Case including, but not limited to, proceedings:

- To consider any modification of the Plan under Section 1127 of the Bankruptcy Code;

- To hear and determine all Claims, controversies, suits and disputes against the Debtors to the full extent permitted under 28 U.S.C. §§ 1334 and 157;

- To hear, determine and enforce all Claims and Causes of Action which may exist on behalf of the Debtors or a Debtor's Estate, including, but not limited to, any right of a Debtor or a Debtor's Estate to recover assets pursuant to the provisions of the Bankruptcy Code;

- To hear and determine all requests for compensation and/or reimbursement of expenses which may be made;

- To value assets of the Estate.

- To enforce the Confirmation Order, the final decree, and all injunctions therein;

- To enter an order concluding and terminating the Bankruptcy Case;

- To correct any defect, cure any omission, or reconcile any inconsistency in the Plan, or the Confirmation Order;

- To determine all questions and disputes regarding title to the assets of the Debtors.

- To re-examine Claims which may have been Allowed or disallowed for purposes of voting, and to determine objections which may be filed to any Claims.

## **GENERAL PROVISIONS**

109.    **Headings**.  The headings in the Plan are for convenience of reference only and shall not limit or otherwise affect the meaning of the Plan.

110.    **Calculation of Time Periods**.  Bankruptcy Rule 9006 is incorporated herein for purposes of calculating the dates set forth herein.

111.    **Other Actions**.  Nothing contained herein shall prevent the Debtors, Interest Holders, or Creditors from taking such actions as may be necessary to consummate the Plan, although such actions may not specifically be provided for within the Plan.

112.    **Modification of Plan**.  The Debtors may seek amendments or modifications to the Plan in accordance with Section 1127 of the Bankruptcy Code at any time prior to the Confirmation Date.  After the Confirmation Date, the Debtors may seek to remedy any defect or omission or reconcile any inconsistencies in the Plan or in the Confirmation Order, in such manner as may be necessary to carry out the purposes and intent of the Plan

## INJUNCTION AND DISCHARGE

113. **Injunction**. The confirmation of this Plan shall constitute an injunction of the Court against the commencement or continuation of any action, the employment of process, or any act, to collect, recover or offset from the Debtors or their property or properties, any obligation or debt except pursuant to the terms of the Plan.

114. **Discharge.** On the Effective Date, except as otherwise expressly provided in this Plan or the Confirmation Order, the Plan shall: (i) discharge each Debtor and any of its Assets from all Claims, demands, liabilities and other debts that arose on or before the Effective Date, including, without limitation, all debts of the kind specified in section 502 of the Bankruptcy Code, whether or not (A) a proof of Claim based on such debt is filed or deemed filed pursuant to section 501 of the Bankruptcy Code, (B) a Claim based on such debt is Allowed pursuant to section 502 of the Bankruptcy Code, (C) a Claim based on such debt is or has been disallowed by order of the Bankruptcy Court, or (D) the holder of a Claim based on such debt has accepted this Plan; and (ii) preclude all entities from asserting against each Debtor or any of its Assets any other or further Claims based upon any act or omission, transaction or other activity of any kind or nature that occurred prior to the Effective Date, all pursuant to sections 524 and 1141 of the Bankruptcy Code. The discharge provided in this provision shall void any judgment obtained against each Debtor at any time, to the extent that such judgment relates to a discharged Claim. The Debtor shall be discharged from any Claims and agreements related to debts that arose on or before the Effective Date and such debts, Claims and agreements are deemed restructured and new as set forth in the Plan.

## CLOSING THE CASE

115.    Upon substantial consummation, the Debtors may move for a final decree to close the Bankruptcy Case and to request such other orders as may be just.

Dated: New York, New York
        July 7, 2020

                              **232 SEIGEL DEVELOPMENT LLC and
                              232 SEIGEL ACQUISITION LLC**

                              By:    s/ David Goldwasser

                              **BACKENROTH FRANKEL & KRINSKY, LLP**
                              Attorneys for Debtors


                              By:    s/Mark A. Frankel
                                     800 Third Avenue
                                     New York, New York 10022
                                     (212) 593-1100

<u>**EXHIBIT A TO PLAN**</u>

<u>**BIDDING AND AUCTION PROCEDURES**</u>

These Terms and Conditions of Sale are promulgated in connection with the auction sale (the "Sale") of the real property located at 232 Seigel Street, Brooklyn, New York (the "Property").

<u>Time and Place of Sale</u>:  The Sale will be held on _____, 2020 at ____ __ m. at the offices of Backenroth Frankel & Krinsky, LLP, 800 Third Avenue New York, New York 10022.

<u>Sale Pursuant to Chapter 11 Plan</u>:  The Seller of the Property is 232 Seigel Acquisition LLC (the "Debtor").  The sale shall be conducted pursuant to Bankruptcy Code section 363 and the Chapter 11 Plan of Reorganization (the "Plan") proposed by the Debtor as the Plan proponent ("Proponent").

<u>Sale free and Clear of Liens</u>:  The Sale of the Property shall be conducted pursuant to the Proponent's Plan of Reorganization free and clear of liens, claims, and encumbrances, with any such liens, claims and encumbrances to attach to the sale proceeds, and disbursed under the Plan.

<u>Qualification to Bid</u>:   In order to be qualified to bid on the Property, within seven days prior to the commencement of the Sale, each prospective bidder must deliver to the Proponent (a) a bank check in the amount of 10% of its opening bid (the "Qualifying Deposit") payable to "Backenroth Frankel & Krinsky, LLC, as Attorneys" (b) evidence reasonably demonstrating such bidder's ability to consummate a sale on the terms proposed, and (c) a written offer to purchase substantially in the form annexed hereto.  No later than one business day before the Sale, each bidder will be notified by the Proponent as to whether the Proponent deems such bidder qualified to bid at the Sale.

<u>Bidding</u>: Bidding shall be conducted openly at the Sale.  The opening bid shall be $18,000,000 ($18,000,000).  Minimum bidding increments shall be $50,000 ($50,000).

<u>Successful Bidder Additional Deposit</u>: At the Sale, once a bidder is determined to have made the highest or best bid for the Property at the Sale (the "Successful Bidder"), bidding shall be deemed closed and no additional bids will be considered.  Within one business day after the Successful Bidder is determined, the Successful Bidder shall be required to increase the Qualifying Deposit to an amount equal to ten percent of the winning bid, which amount shall serve as a good faith deposit against payment of the Purchase Price.  At the conclusion of the Sale, the Proponent's counsel will return the Qualifying Deposits to all other bidders.

<u>Sale Approval Hearing</u>:  A hearing will be conducted by the Bankruptcy Court on approval of the sale on the ___ day of _____, 2020 at _____, at the United States Bankruptcy Court, 300 Quarropas Street, White Plains, NY 10601−5008.

1

<u>Sale Approval Order</u>:  the sale approval order shall approve the Sale, and in connection therewith, shall contain the following findings of fact and conclusions of law: (a) that the Terms and Conditions of the Sale are fair and reasonable, (b) that the Sale and the Purchaser's purchase, of the Property pursuant to the Plan, is non-collusive, fair and reasonable and was conducted openly and in good faith, (c) that the transfer of the Property to the Purchaser represents an arm's-length transaction and was negotiated in good faith between the parties, (d) that the Purchaser, as transferee of the Property, is a good faith Purchaser under Bankruptcy Code § 363(m) and, as such, is entitled to the full protection of Bankruptcy Code § 363(m), (e) the sale of the Property to the Purchaser was not controlled by an agreement among potential purchasers, (f) that no cause of action exists against the Purchaser or with respect to the sale of the Property to the Purchaser under Bankruptcy Code § 363(n), and (g) that any claims under Bankruptcy Code § 363(n) or any other claims as against the Purchaser are hereby released, waived and discharged.

<u>Closing</u>:  The Successful Bidder must pay the balance of the Purchase Price for the Property (the difference between the amount of the successful bid and the Qualifying Deposit) to the Proponent, by bank check, or wire transfer at the closing of title to the Property (the "Closing"). The Successful Bidder must close title to the Property at a date that is no more than thirty (30) days after the Order by the Bankruptcy Court is entered, TIME BEING OF THE ESSENCE as to the Successful Bidder, although such date may be extended solely by the Proponent.

<u>Transfer Tax</u>:  Under the Plan, pursuant to section 1146(c) Bankruptcy Code, (a) the issuance, transfer or exchange of any securities, instruments or documents, (b) the creation of any other Lien, mortgage, deed of trust or other security interest, (c) the making or assignment of any lease or sublease or the making or delivery of any deed or other instrument of transfer under, pursuant to, in furtherance of, or in connection with, the Plan, including, without limitation, any deeds, bills of sale or assignments executed in connection with the purchase of the Property by the Purchaser and any other transaction contemplated under the Plan or the re-vesting, transfer or sale of any real or personal property of the Debtor pursuant to, in implementation of, or as contemplated in the Plan, and (d) the issuance, renewal, modification or securing of indebtedness by such means, and the making, delivery or recording of any deed or other instrument of transfer under, in furtherance of, or in connection with, the Plan, including, without limitation, the Confirmation Order, shall not be subject any applicable document recording tax, stamp tax, conveyance fee or other similar tax, mortgage tax, real estate transfer tax, or other similar tax or governmental assessment including without limitation New York State Documentary Tax.

<u>Damages for Failure to Close</u>:  Time is of the Essence as Against the Successful Bidder and the failure of the Successful Bidder to either timely pay the additional Qualifying Deposit or timely close for any reason whatsoever (except as otherwise provided below) including its failure to pay the balance of the Purchase Price on the Closing Date, will result in the Proponent retaining the deposit as liquidated damages and the termination of the Successful Bidder's right to acquire the Property.  The Successful Bidder shall be obligated to close title to the Property and there is no contingency of any kind or nature that will permit the Successful Bidder to cancel or avoid its obligation other than the Proponent's inability to deliver bargain and sale deeds to the Property. Expenses incurred by the Successful Bidder, or any competing bidder relating to any due

diligence, such as obtaining title reports or environmental inspections, shall be the sole responsibility of such bidder, and under no circumstances shall the Proponent or the Proponent's professionals be responsible for, or pay, such expenses.

Backup Bidder:  In the event that the Successful Bidder for the Property fails to tender the payment of the balance of the Purchase Price on the Closing Date, or otherwise perform any of its obligations under these Terms and Conditions of Sale, the Proponent, at its sole option, shall be authorized to sell the Property to the Second Highest Bidder without any further notice without giving credit for the Deposit forfeited by the Successful Bidder, and upon such other terms and conditions as the Proponent deems appropriate.  Should the Second Highest Bidder fail to close on the Property, within such time as the parties may agree but not to exceed thirty (30) days after notice from the Proponent to the Second Highest Bidder, the Proponent shall be authorized to sell the Property to the next highest or best bidder, without the necessity of any further notice.  All bidders will be bound by these Terms and Conditions of Sale, including, without limitation, those items set forth in the paragraphs above, except that the Second Highest Bidder must close within thirty (30) days of notification that his bid is accepted.  TIME IS OF THE ESSENCE.

No Representations:  the Debtor and the Debtor's professionals have not made and do not make any representations as to the physical condition, rents, leases, expenses, operations, value of the land or buildings thereon, or any other matter or thing affecting or related to the Property or the Sale, which might be pertinent to the purchase of the Property, including, without limitation, (i) the current or future real estate tax liability, assessment or valuation of the Property; (ii) the potential qualification of the Property for any and all benefits conferred by or available under federal, state or municipal laws, whether for subsidies, special real estate tax treatment, insurance, mortgages, or any other benefits, whether similar or dissimilar to those enumerated; (iii) the compliance or non-compliance of the Property, in its current or any future state, with applicable present or future zoning ordinances or other land use law or regulation, or the ability to obtain a change in the zoning or use, or a variance in respect to the Property; (iv) the availability of any financing for the purchase, alteration, rehabilitation or operation of the Property from any source, including, but not limited to, any state, city or federal government or institutional lender; (v) the current or future use of the Property; (vi) the present and future condition and operating state of any and all machinery or equipment on the Property and the present or future structural and physical condition of any building thereon or its suitability for rehabilitation or renovation; (vii) the ownership or state of title of any personal property on the Property; (viii) the presence or absence of any laws, ordinances, rules, rent regulations, or other regulations of any governmental authority, agency or board and any violations thereof; (ix) any present or future issues concerning subdivision or non-subdivision of the Property; or (x) the compliance or non-compliance with environmental laws and the presence or absence of underground fuel storage tanks, any asbestos or other hazardous materials anywhere on the Property.  Each bidder shall be deemed to have agreed and acknowledged that no such representations have been made.  The Proponent is not liable or bound in any manner by expressed or implied warranties, guaranties, promises, statements, representations or information pertaining to the Property, made or furnished by the Proponent or any real estate broker agent, employee, servant or other person or professional representing or purporting to represent the

Proponent unless such warranties, guaranties, promises, statements, representations or information are expressly and specifically set forth in writing by the Proponent. For the avoidance of doubt, neither the Debtor nor the Debtor's professionals are authorized to provide any such warranties, guaranties, promises, statements, representations or information.

<u>As Is Sale</u>: The Property is being sold free and clear of all liens, claims, and encumbrances, with any such liens, claims and encumbrances to attach to the net proceeds of sale after deduction of any expenses of sale. Furthermore, the Property is being sold "AS IS", "WHERE IS" "WITH ALL FAULTS", without any representations, covenants, guarantees or warranties of any kind or nature whatsoever and subject to, among other things, (a) any state of facts that an accurate survey may show; (b) any covenants, restrictions and easements of record; (c) any state of facts a physical inspection may show; (d) any building or zoning ordinances or other applicable municipal regulations and violations thereof; and (e) environmental conditions, including, without limitation, the Property's compliance (or lack of compliance) with environmental laws and the presence or absence of underground fuel storage tanks, any hazardous materials or asbestos anywhere on the Property. By delivering their respective Qualifying Deposits, each bidder is deemed to have acknowledged that it has had the opportunity to review and inspect the Property, the state of title thereof and laws, rules and regulations applicable thereto, and will rely solely thereon and on its own independent investigations and inspections of the Property in making its bid. Neither the Proponent nor any of its representatives make any representations or warrantees with respect to the permissible uses of the Property, including but not limited to, the zoning of the Property. All bidders are deemed to have acknowledged that they have conducted their own due diligence in connection with the Property, and are not relying on any information provided by the Proponent or Proponent's professionals.

<u>Deed</u>: The Proponent shall convey the Property by delivery of a bargain and sale deed without covenants against grantor's acts.

<u>Broker</u>: Neither the Proponent nor the Proponent's professionals are liable or responsible for the payment of fees of any broker retained by the Purchaser.

<u>Conduct of Sale</u>: These Terms and Conditions of Sale will be read into the record, or specifically incorporated by reference, at the Sale of the Property. By making a bid for the Property, all bidders will be required to acknowledge these Terms and Conditions of Sale and agree to be bound by them.

<u>Failure to Close</u>: If the Proponent is unable to deliver title to the Property in accordance with these Terms and Conditions of Sale for any reason whatsoever or in the event that the Bankruptcy Court refuses to confirm the Proponent's Chapter 11 plan or approve the sale of the Property pursuant to Section 363 of the Bankruptcy Code, the Proponent's only obligation will be to refund the Deposit, together with interest earned thereon, if any, to the Successful Bidder, and upon such refund, the Successful Bidder will have no claim or recourse against the Proponent or the Proponent's professionals.

<u>Right to Withdraw Sale</u>:  The Proponent reserves its right to withdraw the Property from the Sale, either prior or subsequent to the Sale, for any reasonable reason, as the Proponent deems necessary or appropriate.

<u>Plan Confirmation</u>:  The Sale of the Property is subject to confirmation of the Proponent's Plan and approval by the Bankruptcy Court.

<u>Breakup Fee</u>: None

<u>Credit Bidding</u>:  Notwithstanding anything to the contrary in these Bidding and Auction Procedures or in the Plan, the rights of claimants to credit bid under sections 363(k) and 1123 of the Bankruptcy Code are fully preserved.

<u>Bankruptcy Court Jurisdiction:</u>  The Bankruptcy Court shall determine any disputes concerning the Sale of the Property.  By participating in the Sale, all bidders consent to the jurisdiction of the Bankruptcy Court to determine such disputes under the Debtor's pending case.

CONTRACT dated as of the _____ day of _____, 2020 (this "Contract") , between 232 Seigel Acquisition LLC ( "Seller" or "Debtor") and _____ having an address at _____ _____ ("Purchaser").

Seller and Purchaser hereby covenant and agree as follows:

1. Sale of Property

Paragraph 1.01. Seller shall sell or cause to be sold to Purchaser, and Purchaser shall purchase, at the price and upon the terms and conditions set forth in this Contract: the real property located at 232 Seigel Street, Brooklyn, New York (the "Property"). The sale of the Property includes (a) all of its appurtenances, including any estate, right, title, interest, property, claim and demand of Seller in and to all streets, alleys, rights-of-way, sidewalks, easements, any adjoining gores or strips of land and utility lines or agreements, including, without limitation, all development rights and "air rights"; (b) all improvements, buildings and structures located on or at the Property and the facilities located thereon, and any apparatus, equipment, appliances and fixtures incorporated therein and used exclusively in connection with the operation and occupancy thereof; (c) all plans, specifications, budgets, schedules, surveys, drawings, reports and governmental applications, permits, approvals and licenses issued by any federal, state or local governmental authority or agency pertaining to the ownership, operation, maintenance, development, construction or use of the Property (collectively, the "Plans and Permits"); and (d) all of its rights and licenses in and to use the Plans and Permits.

Paragraph 1.02. Purchaser acknowledges that the Sale shall be conducted pursuant to an Order of the United States Bankruptcy Court for the Southern District of New York (hereinafter the "Bankruptcy Court") in Case No. 20-22844 (RDD), entitled "Bidding and Auction Procedures" (hereinafter the "Bidding Procedures") which was approved by the Bankruptcy Court on _____ and is deemed annexed to this Contract.

Paragraph 1.03. Purchaser acknowledges that this sale is subject to and governed by (1) the Orders of the Bankruptcy Court, (2) the provisions of the United States Bankruptcy Code (hereinafter the "Code"), (3) the laws of the State of New York, to the extent they do not conflict with (1) and (2), above, and (4) the Bidding and Auction Procedures approved pursuant to the motion of the Seller.

1

2. Purchase Price, Acceptable Funds

Paragraph 2.01. The purchase price ("Purchase Price") to be paid by Purchaser to Seller for the Property is (                    ) Dollars or such other bid by the Purchaser approved by the Bankruptcy Court, payable as follows:

(A) on the signing of this Contract, by Purchaser's check payable to the Escrowee (as hereinafter defined), subject to collection, the receipt of which is hereby acknowledged, to be held in escrow pursuant to Bidding Procedures as defined in Article 3 hereof (the "Down Payment").

(B) THIS CONTRACT IS "ALL CASH" AS KNOWN IN THE COMMON PARLANCE. PURCHASER'S OBLIGATIONS UNDER THIS CONTRACT ARE NOT CONDITIONED UPON PURCHASER'S ABILITY TO SECURE FINANCING OF ANY KIND OR NATURE.

(C) The balance at Closing (as hereinafter defined) in accordance with Section 2.02 hereof (the "Cash Balance")

Paragraph 2.02. All monies payable under this Contract, unless otherwise specified herein, shall be paid by (a) certified checks of Purchaser drawn on any federally insured bank, savings bank, trust company or savings and loan association having a banking office in the City of New York; (b) official bank checks drawn by any such banking institution, payable to the order of Seller (or as Seller shall direct) and bearing no endorsements; or (c) wire transfer of immediately available federal funds. Attorney's Escrow Checks of Purchaser payable to the order of Seller (or as Seller directs) up to the amount of $1,000.00 in the aggregate shall be acceptable for sums other than the Purchase Price payable to Seller at Closing.

3. Escrow of Down Payment

Paragraph 3.01. (a) The Down Payment shall be paid by check or checks drawn to the order of and delivered to Backenroth Frankel & Krinsky LLP ("Escrowee"). The Escrowee shall hold the Down Payment in escrow in a non-interest-bearing IOLA Account until the Closing or sooner termination of this Contract and shall pay over or apply the Down Payment in accordance with the terms of this section. At the Closing, the Down Payment shall be paid by Escrowee in accordance with Bidding Procedures. If for any reason the Closing does not occur and either party makes a written demand upon Escrowee for payment of such amount, Escrowee shall give written notice to the other party of such demand. If Escrowee does not receive a written objection from the other party to the proposed payment within 10 business days after the giving of such notice, Escrowee is hereby authorized to make such payment. If Escrowee does receive such written objection within such 10-day period or if for any other reason Escrowee in good faith shall elect not to make such payment, Escrowee shall continue to hold such amount until otherwise directed by written instructions from the parties to this Contract or pursuant to an order of the Bankruptcy Court. However, Escrowee shall have the right at any time to deposit the escrowed proceeds and interest, if any, thereon, with the clerk of the Bankruptcy Court. Escrowee shall give written notice of such deposit to Seller and Purchaser. Upon such deposit

Escrowee shall be relieved and discharged of all further obligations and responsibilities hereunder.

(b) The parties acknowledge that Escrowee is acting solely as a stakeholder at their request and for their convenience, that Escrowee shall not be deemed to be the agent of either of the parties, and that Escrowee shall not be liable to either of the parties for any act or omission on its part unless taken or suffered in bad faith, in willful disregard of this Contract or involving gross negligence. Seller and Purchaser shall jointly and severally indemnify and hold Escrowee harmless from and against all costs, claims and expenses, including reasonable attorneys' fees, incurred in connection with the performance of Escrowee's duties hereunder, except with respect to actions or omissions taken or suffered by Escrowee in bad faith, in willful disregard of this Contractor involving gross negligence on the part of the Escrowee.

(c) Escrowee or any member of its firm shall be permitted to act as counsel for the Seller in any dispute as to the disbursement of the Down Payment or any other dispute between the parties whether or not Escrowee is in possession of the Down Payment and continues to act as Escrowee.

(d) Escrowee acknowledges receipt of the Down Payment by certified, bank check subject to collection or wire transmission and Escrowee's agreement to these provisions by signing in the place indicated on the signature page of this contact.

4. The Closing

Paragraph 4.01. The conveyance of title to the Property by the Seller to Purchaser, and payment of the Cash Balance by Purchaser shall take place _____ days following the entry of an Order approving the Contract and the transaction embodied therein if that is a business day, and if not, the following business day (the "Closing"). The Closing is to be held at the office of the Escrowee, or such other location as designated by the Seller within the Southern or Eastern District of New York. Time is of the essence with respect to Purchaser's obligations to close title in accordance with this Contract on or before the Closing date.

5. Acknowledgments and Representations of Purchaser

Purchaser acknowledges and represents that:

Paragraph 5.01. Purchaser has inspected the Property, made all appropriate inquiries into the previous ownership and uses of the Property, is fully familiar with the physical condition and state of repair thereof, and shall accept the Property "as is" and in their present condition, including, without limitation, the environmental conditions as reflected in the Terms of Sale annexed hereto, without any reduction of the Purchase Price for any change in such condition by any reason thereof subsequent to the date of this Contract. The Terms of Sale set forth conditions which Purchaser agrees to accept, including any covenant, easement, and/or deed restriction, and any other future obligation relating thereto.

Paragraph 5.02. Before entering into this Contract, Purchaser has made such examination of the Property, the physical condition and state of repair thereof including the environmental conditions. Purchaser acknowledges that it is an experienced real estate owner/operator and is relying solely on its own expertise and investigations and inspections in entering into this Contract and has not been induced by and has not relied upon any representations, warranties, or statements, whether express or implied, made by Seller or any agent, employee, or other representative of Seller or by any other person representing or purporting to represent Seller or Proponent, which are not expressly set forth in this Contract, whether or not any such representations, warranties or statements were made in writing or orally.

Paragraph 5.03. In the event of any default by the Purchaser in the terms of this Contract, the damages which are due to the Seller, by reason of said default, shall be deemed liquidated in the amount of the Down Payment, as Seller's sole remedy, it being agreed that Seller's damages in case of such default might be impossible to ascertain with mathematical precision and that the Down Payment constitutes a fair and reasonable amount of damages under the circumstances and is not a penalty.

Paragraph 5.04. Purchaser represents that (a) it has the legal power, right and authority to enter into this Agreement and to consummate the transactions contemplated hereby and that all requisite action has been taken by Purchaser in connection with the entering into this Contract and the consummation of the transactions contemplated hereby; (b) this Contract and all documents required hereby to be executed by Purchaser are and will be valid, legally binding obligations of and enforceable against Purchaser in accordance with their terms (c) Purchaser, and all direct or indirect beneficial owners of Purchaser, are in compliance with all applicable laws, statutes, rules and regulations of any federal, state or local governmental authority in the United States of America, including the requirements of Executive Order No. 13224, 66 Fed. Reg. 49079 (Sept. 25, 2001) (the "Order") and other similar requirements contained in the rules and regulations of the Office of Foreign Asset Control, Department of the Treasury ("OFAC") and in any related enabling legislation or other Executive Orders (collectively, the "Orders"). Neither Purchaser nor any of the direct or indirect beneficial owners of Purchaser (i) is listed on the Specially Designated Nationals and Blocked Persons List maintained by OFAC pursuant to the Order and/or on any other list of terrorists or terrorist organizations maintained pursuant to any of the rules and regulations of OFAC or pursuant to any other applicable Orders (such lists are collectively referred to as the "Lists") or is owned or controlled by, or acts for or on behalf of, any Person on the Lists or who has been determined by competent authority to be subject to the prohibitions contained in the Orders; (ii) has been arrested for money laundering or for predicate crimes to money laundering, convicted or pled nolo contendere to charges involving money laundering or predicate crimes to money laundering; or (iii) has been determined by competent authority to be subject to the prohibitions contained in the Orders; (iv) is owned or controlled by, nor acts for or on behalf of, any natural person or entity (a "Person") on the Lists or any other Person who has been determined by competent authority to be subject to the prohibitions contained in the Orders; (v) will transfer or permit the transfer of any interest in Purchaser or such parties to any Person who is, or whose beneficial owners are, listed on the Lists; or (vi) will assign this Agreement or any interest herein, to any Person who is listed on the Lists or who is engaged in illegal activities.

6. Destruction, Damage or Condemnation

Paragraph 6.01. The provisions of Section 5-1311 of the General Obligations Law shall not apply to the sale and purchase provided for in this Contract and Purchaser agrees to close title to the Property regardless of any destruction, damage or condemnation that occurs after the execution and delivery of this Contract.

7. Seller's Closing Obligations

At the closing, Seller shall execute and/or deliver or cause to be executed and/or delivered to Purchaser the following:

Paragraph 7.01. A bargain and sale deed without covenants against grantor's acts, executed by the Seller in proper form for recording so as to convey to Purchaser the fee title to the Property, subject to recorded encumbrances and the other conditions of this Contract.

Paragraph 7.02. All required New York City and State transfer tax returns executed by the Seller to be issued at the Closing and delivered to the representative of Purchaser's title company for delivery to the appropriate public officers promptly after the Closing.

Paragraph 7.03. The right to possession of the Property in condition required by this Contract, subject to the provisions hereinabove and to the provisions of the Code and the laws of the State of New York governing the rights to possession upon the conveyance of the deed subject to any Order of the Bankruptcy Court and the Bidding Procedures. Seller shall not be obligated to bring any motion or proceeding for the purpose of obtaining possession of any part of the Property, or to remove any tenant or occupant therefrom after delivery of the Deed.

Paragraph 7.04. Any other documents required by this Contract or by law to be delivered by Seller to consummate this transaction.

8. Purchaser's Closing Obligations

At the Closing, Purchaser shall execute and/or deliver:

Paragraph 8.01. The Cash Balance to the Seller.

Paragraph 8.02. All required New York City and State transfer tax returns, and cause all such returns to be issued at the Closing and delivered to the representative of Purchaser's title company for delivery to the appropriate public officers promptly after the Closing. Purchaser will pay any and all applicable transfer taxes and recording fees.

Paragraph 8.03. Any other documents required by this Contract or by law or reasonably required by Seller to be executed and/or delivered by Purchaser to consummate this transaction.

9.  Apportionments

Paragraph 9.01. The parties specifically acknowledge that there shall be no apportionments made as of the date of Closing, whether for taxes, water or sewer charges, emergency repair liens, assessments, rents, fuel, or any other matters relating hereto.

10.  Objections to Sale

Paragraph 10.01. This Contract shall automatically terminate if the Court rejects the Sale or if Seller shall be unable to cause title to the Property to be conveyed to Purchaser at the Closing Date or any adjournments thereof in accordance with the provisions of this Contract and the Bidding Procedures.  Purchaser nevertheless may elect either (i) to accept such title as Seller may be able to convey, but without any abatement of or other credit to the Purchase Price or liability on the part of Seller; or (ii) to terminate this Contract. The sole liability of Seller shall be to refund the Down Payment and interest thereon, if any, to the Purchaser and this Contract shall be null and void and the parties hereto shall be relieved of all further obligations and liability. Seller shall not be required to bring any action or proceeding or to incur any expense to cure any title defect or to enable Seller otherwise to comply with the provisions of this Contract, except as may otherwise be provided in this Contract.

Paragraph 10.02. Purchaser shall take title to the Property "as is" and subject to: any state of facts an accurate survey may show; encroachments, covenants, easements, and restrictions of record, if any; violations, fines, penalties, zoning regulations, and ordinances of the City of New York.  Purchaser is aware of and agrees to the Terms of Sale which are attached to this Contract and which are incorporated in this Contract by this reference as though fully set forth herein at length.

11.  Notices

Paragraph 11.01. All notices under this Contract shall be in writing and shall be delivered personally, by nationally recognized overnight courier, addressed to Seller's attorney at the address set forth below, and to Purchaser addressed to Purchaser's attorney at the address set forth below.

Seller's Attorney:  Backenroth Frankel & Krinsky, LLP, 800 Third Avenue, New York, New York 10022.

Purchaser's Attorney:

12.  Limitations on Survival of Representations, Warranties, Covenants and other Obligations

Paragraph 12.01. Except as otherwise expressly set forth in this Contract, no representations, warranties, covenants or other obligations of Seller and/or Purchaser set forth herein shall survive the Closing except as specifically provided to survive, and no action based

thereon shall be commenced after the Closing except as to such representations specifically provided to survive.

Paragraph 12.02. The delivery of the deed by the Seller and the acceptance thereof by Purchaser shall be deemed the full performance and discharge of every obligation on the part of Seller to be performed hereunder, except those obligations, if any, of Seller which are expressly stated in this Contract to survive.

### 13. Assignment of Contract

Paragraph 13.01. Purchaser shall not assign this Contract or its rights hereunder without the prior written consent of the Proponent, whose consent will not be unreasonably withheld or delayed. Additionally, Purchaser may assign its rights under this Contract, but only immediately before the Closing and only simultaneously with the payment of the Cash Balance, to any wholly owned subsidiary of Purchaser, or to any entity in which Purchaser, or its principals, has an equity interest of at least fifty-one (51%) percent and control of management (a "Controlled Entity"), upon appropriate proof of same delivered to Proponent. Any purported assignment without Proponent's consent or that is not to a Controlled Entity with proof of such relationship given to Proponent shall be void. Any sale, transfer or assignment of any interests in Purchaser will be deemed an assignment of this Contract and is subject to the same conditions as an assignment of this Contract. Nevertheless, an assignment of Purchaser's rights under this Contract, if and when consented to by Proponent, shall not be effective unless and until an executed counterpart of the instrument of assignment and of an assumption agreement by the assignee shall have been delivered to Seller.

Paragraph 13.02. Seller shall assign pending tax certiorari actions, if any, to Purchaser without any representations or warranties, and without any further obligation of Seller, except to execute such documents as may be necessary to effectuate such assignment.

### 14. Miscellaneous Provisions

Paragraph 14.01 THE PROVISIONS OF THE BIDDING PROCEDURES AND THE ORDERS OF THE COURT ARE A PART OF THIS CONTRACT. ANY CONFLICT WITH SUCH IN THIS CONTRACT WILL NOT BE DEEMED TO AMEND OR ALTER SAID PROCEDURES OR ORDERS.

Paragraph 14.02. Subject to the provisions of Paragraph 14.01, this Contract embodies and constitutes the entire understanding between the parties with respect to the transaction contemplated hereby, and all prior agreements, understandings, representations and statements, oral or written, are merged into this Contract. Neither this Contract nor any provision hereof may be waived, modified, amended, discharged, or terminated except by an instrument signed by the party against whom the enforcement of such waiver, modification, amendment, discharge, or termination is sought, and then only to the extent set forth in such instrument.

Paragraph 14.03. This Contract shall be governed by, and construed in accordance with, the Bankruptcy Code and the Orders of the Bankruptcy Court and, where it does not conflict with the Bankruptcy Code or any Order of the Bankruptcy Court, the laws of the State of New York. The Bankruptcy Court shall have the exclusive jurisdiction to determine any disputes concerning the sale of the Property or any other matters under this Contract.

Paragraph 14.04. The captions in this Contract are inserted for convenience or reference only and in no way define, describe, or limit the scope or intent of this Contract or any of the provisions hereof.

Paragraph 14.05. This Contract shall be binding upon and shall inure to the benefit of the parties hereto and their respective heirs or successors and permitted assigns.

Paragraph 14.06. This Contract shall not be binding or effective until properly executed and delivered by Seller and Purchaser, together with all amounts required to be paid pursuant to 2.0l (A) hereto. This Contract may be executed in counterparts each of which will constitute an original and all of which, when taken together, will constitute one and the same agreement. A signed counterpart of this Contract delivered by electronic transmission will be treated as an original.

Paragraph 14.07. As used in this Contract, the masculine shall include the feminine and neuter, the singular shall include the plural, and the plural shall include the singular, as the context may require.

Paragraph 14.08. Subject to Paragraph 14.01, if the provisions of any schedule or rider to this Contract are inconsistent with the provisions of this Contract, the provisions of such schedule or rider shall prevail.

IN WITNESS WHEREOF, the parties hereto have executed this Contract as of the date first above written.

Seller:                                              Purchaser:


By: _____          By: _____
      Name:                                              Name:
      Title:                                               Title:

Backenroth Frankel & Krinsky, LLP,
Escrowee:


By: _____
        Name:
        Title:

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK
--------------------------------------------------------x
In re                                                    Chapter 11

       232 SEIGEL DEVELOPMENT LLC[1]        Case no.  20-22844 (RDD)
                               Jointly Administered

                 Debtors.
--------------------------------------------------------x

## NOTICE OF SALE

       PLEASE TAKE NOTICE, that upon the application of 232 Seigel Acquisition LLC ("Debtor"), the real property located at 232 Seigel Street, Brooklyn, New York (the "Property") shall be sold to the highest bidder at an auction sale to be conducted on _____, 2020 at _____ at the offices of Backenroth Frankel & Krinsky, LLP, 800 Third Avenue, New York, New York 10022.  The Property shall be sold "as is."  Bidding shall be limited to all cash offers, and the minimum opening bid shall be $18,000,000, and bidding shall be increments of $50,000. All prospective bidders shall be required to deposit $$1,000,000 (the "Deposit") in escrow with the undersigned by bank check or wire deposit on or before _____, 2020 at 5:00 p.m.  Subject to approval at a hearing ("Hearing") to be held on _____ at _____ __.m. before the Honorable Robert D. Drain at the United States Bankruptcy Court, 300 Quarropas Street, White Plains, NY 10601−5008, the highest bidder shall be the purchaser (the "Purchaser") of the Property, free and clear of all liens, claims and encumbrances, with any such liens, claims and encumbrances to attach to the proceeds of sale.  The Deposit shall be non-refundable. In the event the Purchaser closes on or before _____ after the entry of an order approving the sale, the Deposit shall be applied to the purchase price.  In the event Purchaser fails to close on or before fifteen days after the entry of an order approving the sale, the Deposit shall be remitted to the Debtor.  Time shall be of the essence in the closing of this transaction.  In the event Purchaser fails to close as set forth herein, then the Debtor shall have the right to accept the bid next highest in amount to the original Purchaser's bid.

       PLEASE TAKE FURTHER NOTICE, that a complete copy of the terms and conditions of sale is attached to the Debtor's Chapter 11 plan filed in the Bankruptcy Court and is available upon request of the undersigned.

Dated: New York, New York
        _____, 2020

                              Backenroth Frankel & Krinsky, LLP
                              800 Third Avenue
                              New York, New York 10022
                              (212) 593-1100

_____

[1] The Debtors in these chapter 11 cases and the last four digits of each Debtor's taxpayer identification number are as follows:  232 Seigel Development LLC (0108) and 232 Acquisition LLC (9782)

# PLAN DISTRIBUTION ANALYSIS

| Assets | |
|---|---|
| Properties | $18,000,000 |
| **Liabilities** | |
| Administrative Expense Claims | $75,000 |
| Unclassified Priority Claims | 0 |
| Acquisition Class 1 New York City Liens. | $0.00 |
| Acquisition Class 2 DB Seigel LLC | $6,378,750 |
| Acquisition Class 3 Priority Claims under Sections 507(a)(2),(3),(4),(5),(6),(7) and (8) of the Bankruptcy Code. | $0 |
| Acquisition Class 4 General Unsecured Claims | $6,397,010 |
| Development Class 1 DB Seigel Mezz | $1,425,520 |
| Development Class 2 Priority Claims | -0- |
| Development Class 3 General Unsecured Claims | -0- |
| Development Class 4 Interest Holders | $1,323,720 |
| **Total** | $18,000,000 |

## CHAPTER 7 LIQUIDATION ANALYSIS

| Assets | |
|---|---|
| Properties | $18,000,000 |

| Liabilities | |
|---|---|
| Administrative Expense Claims | $2,475,000 |
| Unclassified Priority Claims | 0 |
| Acquisition Class 1 New York City Liens. | $0.00 |
| Acquisition Class 2 DB Seigel LLC | $6,378,750 |
| Acquisition Class 3 Priority Claims under Sections 507(a)(2),(3),(4),(5),(6),(7) and (8) of the Bankruptcy Code. | $0 |
| Acquisition Class 4 General Unsecured Claims | $6,397,010 |
| Development Class 1 DB Seigel Mezz | $1,425,520 |
| Development Class 2 Priority Claims | -0- |
| Development Class 3 General Unsecured Claims | -0- |
| Development Class 4 Interest Holders | |
| **Total** | $18,000,000 |

Note: All Claim amounts subject to objection.