**HAHN & HESSEN LLP**
488 Madison Avenue
New York, NY 10022
(212) 478-7200
(212) 478-7400
Joshua I. Divack
Zachary G. Newman
Jacob T. Schwartz
Jose A. Fernandez

*Counsel for DB 232 Seigel LLC & DB 232 Seigel Mezz LLC*

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| In re: | Chapter 11 |
| 232 Seigel Development LLC, *et al.*, | Case No. 20-22844 (RDD) |
| Debtors. | Jointly Administered |

## RESPONSE OF DB 232 SEIGEL LLC AND DB 232 SEIGEL MEZZ LLC TO DEBTORS' STATUS REPORT FILED FEBRUARY 11, 2021

DB 232 Seigel LLC ("*Senior Lender*") and DB 232 Seigel Mezz LLC ("*Mezz Lender*", and together with Senior Lender, the "*Lenders*"), by their undersigned counsel, respond (the "*Response*") to the Debtors' Status Report dated February 11, 2021 (ECF No. 84) (the "*Status Report*"), and respectfully represent as follows:

1.    The Lenders understood that on February 12, 2021 at 10:00 a.m. there would be a hearing before the Court (the "*Disclosure Statement Hearing*") to consider approval of the Debtors' second-amended *Joint Disclosure Statement* (ECF No. 59) (the "*Amended Disclosure Statement*") and accompanying *Motion for Disclosure Statement and Sale Procedures Approval* (ECF No. 61), and the Lenders' Limited Objection thereto dated December 31, 2020 (ECF No. 67) (the "*Limited Objection*").  The Debtors' going forward with the Disclosure Statement Hearing would be consistent with the Debtors' determination to sell the property and pay all

creditors in full pursuant to a confirmed plan of reorganization with an $18,000,000 sale to occur as early as April 2021.  The Court denied the Lenders' motion for relief from the stay at the December 7, 2020 hearing, at which the Lenders questioned the legitimacy of the $18,000,000 transaction and the Debtors' sale process, so that the Debtors could proceed towards this goal, and directed the Debtors to retain a broker as they had previously agreed to do, but which inexplicably has still not occurred.

2.       The Lenders expected that the Debtors would address the Lenders' Limited Objection and the Court would determine whether their responses were sufficient to allow the plan confirmation process to go forward and the Debtors' ostensible timetable to be met.  The Debtors' Status Report completely ignores the issues raised by the Lenders in their Limited Objection and ignores even the pendency of the Disclosure Statement Hearing.

3.       The Lenders' Limited Objection raised several items concerning the Amended Disclosure Statement that required revision, or the correction of ambiguities or errors, or additional information relevant to consideration of the Amended Plan, including that:

- the Amended Disclosure Statement is internally contradictory and ambiguous as to whether the $18,000,000 Sale of the Mortgaged Property pursuant to the PSA and Extension Agreement will be subject to a competitive bidding and auction process, or if an auction will occur only if the Sale to the Purchaser fails to close by April 2021;

- the Amended Disclosure Statement does not accurately recite the amount of potentially allowable claims scheduled and filed against the Debtors' estates;

- additional disclosure should be provided with respect to the estates' Avoidance Actions, including whether the Debtors intend to pursue the avoidance and recovery of a large loan repayment made to an insider during the insider preference period; and

- additional disclosure should be provided whether the proposed PSA purchaser's good-faith deposit was used to fund the insider preference.

4.       Instead of addressing the issues highlighted by the Lenders' Limited Objection,[1] the Debtors now propose an alternative path for their Chapter 11 cases with even more attendant delay:  they will at some point refinance their obligations owed to the Mezz Lender and dismiss Acquisition's bankruptcy case.   The Debtors do not address or explain what happened to their sale-based strategy and the purported $18,000,000 PSA sale, (a) upon which they represented that creditors of both estates would be paid in full, and (b) as to which they represented at the December 7, 2020 hearing that the purchaser was willing to proceed with the sale, and there agreed to the Court's directive that they promptly hire a broker (also discussed with the Court at the October 9th hearing).   While the Debtors do not address or explain why they still have not retained a broker so that an auction sale could go forward if the $18,000,000 sale were not to close or so that competing bids to the $18,000,000 sale could be sought, they allege without support that unnamed brokers "have advised against selling and to re-evaluate in six months to a year,"[2] is belied by the fact that notwithstanding the pandemic, it is reported that commercial real estate in Bushwick, NY is trading hands – indeed, Steel Equities recently acquired two sites located less than a mile from the Debtors' Property.[3]

5.       The Debtors repeat their allegations of misconduct by the Lenders' assignor, Bridgecity, and/or the Lenders' complicity in such actions, that they raised in opposition to

---

[1]  Two months have passed since the Debtors filed the Amended Disclosure Statement, and more than a month has passed since the Lenders filed their Limited Objection.  With such an expansive amount of time at their disposal, the Debtors should have easily addressed the Lenders' issues, almost all of which were factual.

[2]  Status Report, paragraph 9.

[3]  *See* "Steel Equities Picks Up Another Bushwick Warehouse for $18M", *Commercial Observer*, February 1, 2021 (https://commercialobserver.com/2021/02/steel-equities-picks-up-another-bushwick-warehouse-for-18m/), accessed February 11, 2021.

Lenders' now-adjourned Motion to Allow Claims, dated December 1, 2020 (ECF Nos. 55-56) (the "*Claims Determination Motion*").  The Debtors fail to disclose for the Court that they have since January 14th ignored the Lenders' discovery requests with respect to their lender misconduct allegations, with the exception of Mr. Frankel stating that the Debtors could not respond until after they have retained special litigation counsel for the Claims Determination Motion, which would occur promptly. As of the date of this Response, the Debtors have not done so.

6.     The Lenders deny the Debtors' allegation that the Lenders "would not, however, agree to adjourn the Debtors' motions."[4]  In fact, it was not until after the Lenders requested the Debtors' consent to the Claims Determination Motion, the Court granted the request, and the Lenders filed their notice of adjournment, that the Debtors requested a further adjournment of the Disclosure Statement Hearing.  *The Lenders did not refuse*.  Instead, the undersigned immediately responded to Mr. Frankel by email on February 4th:

> Here is the issue and my questions:
>
> You need a confirmed plan before the sale closes.  If the $18MM sale is real and is going to happen by March 7th or April 8th with the $100,000 extension fee paid, then you have to get the D/S approved without further delay to have the plan confirmed in time.  If you know now that the $18MM sale isn't going to happen, then you shouldn't further delay either the retention of the broker or the D/S approval either.
>
> If this is simply a matter of your needing a few more days to finish the D/S reply and an amended plan and D/S, then I'd be fine with extending the filing deadline from Friday to Tuesday, even though it has been five weeks since I filed my limited objection.
>
> If I am missing something please let me know.  If you want to talk, give me a ring at (212) 478-7340.

---

[4]  Status Report, paragraph 13.

*Mr. Frankel did not respond.*  The Lenders assumed that the above questions were well-put and that the Debtors, in not responding, were going to proceed with the Disclosure Statement hearing and the sale process consistent with their prior representations.  This assumption now appears to have been incorrect.

7.    Nevertheless, the Lenders respectfully submit that the undersigned's questions remain relevant and that the parties and the Court are entitled to some answers before the Debtors' Chapter 11 cases proceed further, and the Debtors are permitted to abandon the sale process in favor of a strategy of both litigation against the Lenders and the repayment of the Mezz Loan, which in reality may be nothing more than another delaying tactic.  The Lenders are particularly concerned that the Debtors' 'sale plan' may have been filed more to avoid a lift stay motion against Acquisition under 11 U.S.C. § 362(d)(3), given that the Property is single asset real estate and that the Debtors have no cash flow from which to make monthly payments under 11 U.S.C. § 362(d)(3)(B), than to obtain a sale of the Property pursuant to a confirmable plan and a prompt, efficient, and fair sale process within a reasonable period of time that would, as previously alleged, pay all creditors of both estates in full.[5]

[ Remainder of page intentionally left blank ]

---

[5] The Lenders reserve their rights to make a new motion for relief from the automatic stay against either or both of the Debtors, whether pursuant to 11 U.S.C. § 362(d)(3) or otherwise.

WHEREFORE, the Lenders respectfully request that this Court consider the Debtors'

Status Report in light of the above, and grant such relief as may be just and proper.

Dated:    February 11, 2021
          New York, New York

                        By:    /s/ Joshua I. Divack
                            **HAHN & HESSEN LLP**
                            Joshua I. Divack, Esq.
                            Zachary G. Newman, Esq.
                            Jacob T. Schwartz, Esq.
                            Jose A. Fernandez, Esq.
                            488 Madison Avenue
                            New York, NY 10022
                            (212) 478-7200

                            *Counsel for DB 232 Seigel LLC &*
                            *DB 232 Seigel Mezz LLC*