**MYC & Associates, Inc.**
1110 South Avenue, Suite 22
Staten Island, New York 10314
Telephone: (347) 273-1258
Victor M. Moneypenny
Marc P. Yaverbaum

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------x
In re:                                              :    Chapter 7
                                                    :
232 SEIGEL DEVELOPMENT LLC, *et al.*,               :    Case No. 20-22844 (RDD)
                                                    :
                                       Debtors.     :    Jointly Administered
------------------------------------------------------------x

## REPORT OF SALE OF THE
## REAL PROPERTY AND IMPROVEMENTS OWNED BY
## 232 SEIGEL ACQUISITION, LLC LOCATED AT
## 232 SEIGEL STREET, BROOKLYN, NY 11206

TO THE HONORABLE ROBERT D. DRAIN,
UNITED STATES BANKRUPTCY JUDGE:

MYC & ASSOCIATES, INC. ("**MYC**") was retained, pursuant to 11 U.S.C. 327(a), by an Order of this Court entered on November 10, 2021 [ECF Docket No. 171], as a real estate broker to Howard P. Magaliff, Esq., as Chapter 7 Trustee ("**Trustee**") of 232 Seigel Development, at al., ("**Debtors**"). The retention order is annexed to this Report of Sale as Exhibit "A".

### BACKGROUND

1.  On July 14, 2020 ("**Petition Date**"), the Debtors filed voluntary petitions under Chapter 11 of the Bankruptcy Code. On October 15, 2021 ("**Conversion Date**"), the cases were converted to Chapter 7 and Howard P. Magaliff, Esq. was appointed as Chapter 7 Trustee.

2. As of the Conversion Date, 232 Seigel Acquisition, LLC ("**Acquisition**") was the owner of the real property and improvements located at 232 Seigel Street, Brooklyn, NY. ("**Property**").

## THE PROPERTY

3. The Property consists of a parcel of vacant land with approved plans for a ±97,000 square foot building that was the former development site for The Bushwick Hotel.

## 363 SALE PROCESS

4. On February 24, 2022, at approximately 2:00 p.m., I conducted a public auction sale by Zoom ("**363 Sale**") of the Property.

5. The 363 Sale was conducted in accordance with the Order dated November 19, 2021 [ECF No. 174] that, among other things, authorized the Trustee to conduct the 363 Sale with an opening bid of $8,000,000.

6. To qualify to bid at the 363 Sale, bidders were required to sign Terms and Conditions of Sale, which are annexed to this Report of Sale as Exhibit "B", and to provide an $800,000 deposit to the Trustee. One (1) bidder, Abraham Leifer, 1110 42nd Street, Brooklyn, NY 11219 ("**Leifer**") provided an $800,000 deposit to the Trustee and signed Terms and Conditions of Sale. In addition, DB 232 Seigel LLC, the Secured Senior Lender ("**Senior Lender**"), was qualified to bid. Accordingly, there were two (2) qualified registered bidders at the 363 Sale.

7. At the 363 Sale, after an opening bid of $8,000,000 by the Senior Lender, and eleven (11) subsequent bids, Leifer was the successful high bidder in the amount of $10,514,327.

8. The bid from Leifer to purchase the Property is the highest and best offer received after marketing and a fair and open sale process.

9. Should the sale close to Leifer, MYC is entitled to commissions in the amount of $316,429.81 as per its retention order. The commission is broken down as follows: three percent (3%) of $10,464,327 (the amount of the Senior Lender's claim) ($313,929.81) and five percent (5%) of the difference between $10,464,327 and the high bid of $10,514,327 ($50,000) ($2,500.00). MYC is not requesting reimbursement of expenses or labor charges if Leifer closes.

## MARKETING CAMPAIGN

10. Prior to the 363 Sale, MYC marketed the Property by, among other things: (a) advertising the 363 Sale in print in the NEW YORK REAL ESTATE JOURNAL, WALL STREET JOURNAL, THE NEW YORK TIMES, BROOKLYN PAPER and CRAINS NY BUSINESS; (b) advertising the 363 Sale digitally through THE REAL DEAL, the COMMERCIAL OBSERVER, the NEW YORK REAL ESTATE JOURNAL, HOTEL BUSINESS and BROWNSTONER; (c) advertising the 363 Sale online at https://myccorp.com and MYC's social media pages; and (d) e-mailing notifications of the 363 Sale to MYC's subscriber database of over 3,400 subscribers. MYC engaged a professional photographer to take aerial photographs of the Property for all marketing materials.

11. A hearing will be held before the Bankruptcy Court on March 7, 2022, to confirm the results of the 363 Sale.

WHEREFORE, MYC & Associates, Inc. believes that the highest and best results were achieved for the sale of the Property.

        MYC & ASSOCIATES, INC.

        By: /s/ *Victor M. Moneypenny*
        Victor M. Moneypenny
        MYC & Associates, Inc.

        Dated: March 1, 2022

# Exhibit "A"

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK

------------------------------------------------------------ x
In re:                                                       :   Chapter 7
                                                             :
232 SEIGEL DEVELOPMENT LLC, *et al.*,                        :   Case No. 20-22844 (RDD)
                                                             :
                                    Debtors.[1]              :   Jointly Administered
------------------------------------------------------------ x

### ORDER AUTHORIZING THE TRUSTEE TO RETAIN
### MYC & ASSOCIATES, INC. AS REAL ESTATE BROKER

Upon the application, dated November 10, 2021 (the "Application") of Howard P. Magaliff, the chapter 7 interim trustee (the "Trustee") of the jointly administered estates of the debtors herein (the "Debtors"), for authority to retain MYC & Associates, Inc. ("MYC") as real estate broker for the property owned by 232 Seigel Acquisition, LLC located at 232 Seigel Avenue, Bronx, NY (the "Property") pursuant to sections 327(a) and 328(a) of the Bankruptcy Code, Rule 2014 of the Federal Rules of Bankruptcy Procedure and Local Bankruptcy Rule 2014-1 on the terms of the Exclusive Right-To-Sell Marketing and Sales Agreement, a copy of which his attached as Exhibit 1 to the Application (the "Agreement"); and upon the accompanying affidavit of Victor Moneypenny; and it appearing that MYC is disinterested within the meaning of section 101(14) of the Bankruptcy Code, that MYC does not represent any interest adverse to the estate, and that MYC's proposed retention is necessary and in the best interests of the Debtors' estates; and it appearing that the terms of MYC's compensation and reimbursement provided for in the Agreement are reasonable for purposes of section 328(a) of the Bankruptcy Code; and it further appearing that DB 232 Seigel LLC, the senior secured lender (the "Lender"), has consented to

---

[1] The Debtors in these chapter 7 cases and the last four digits of each Debtor's taxpayer identification number are as follows: 232 Seigel Development LLC (0108) and 232 Seigel Acquisition LLC (9782).

{00038467v1 }

the Trustee's retention of MYC on the terms set forth in the Agreement, subject to the reservation in paragraph 8 of the Application and herein as to the carve-out of any of the Lender's cash collateral to pay such compensation and reimbursement; and the United States Trustee having no objection to the entry of this Order; and no additional notice or a hearing being required; and sufficient cause appearing, it is

**ORDERED** that the Application is granted as set forth herein; and it is further

**ORDERED** that, pursuant to sections 327(a) and 328(a) of the Bankruptcy Code, the Trustee is authorized to retain MYC as real estate broker for the Property on the terms set forth in the Agreement; and it is further

**ORDERED** that compensation and reimbursement of expenses, if any, of MYC are subject to the acknowledgements and reservation of rights of the Trustee and the Lender set forth in paragraph 8 of the Application and shall be sought and paid only upon an order granting a proper application pursuant to sections 328(a) and 330 of the Bankruptcy Code and the applicable Bankruptcy Rules, Local Rules, and fee and expense guidelines and orders of this Court, which application may be included in any motion brought by the Trustee to approve the sale of the Property; and it is further

**ORDERED** that the Court shall retain jurisdiction to hear and determine all matters arising from the implementation of this Order; and it is further

**ORDERED** that if there is any inconsistency between the terms of this Order, the Application, the supporting affidavit or the Agreement, the terms of this Order shall govern.

Dated:   White Plains, New York
          November 10, 2021                  /s/ Robert D. Drain
                                               Hon. Robert D. Drain
                                               United States Bankruptcy Judge

**NO OBJECTION:**

{00038467v1 }                                 2

William K. Harrington
United States Trustee
By:

/s/ Paul Schwartzberg
Paul Schwartzberg, Trial Attorney
Dated: November 10, 2021

# Exhibit "B"

# TERMS AND CONDITIONS FOR SALE OF
# THE DEBTOR'S REAL PROPERTY LOCATED
# AT 232 SEIGEL STREET, BROOKLYN, NEW YORK

These terms and conditions, approved by Order of the Bankruptcy Court dated November 19, 2021, govern the public auction sale (the "Auction Sale") of the real property and improvements thereon located at 232 Seigel Street, Brooklyn, New York (the "Property") owned by the debtor 232 Seigel Acquisition LLC (the "Debtor") The seller is Howard P. Magaliff (the "Trustee"), the chapter 7 trustee of the debtors 232 Seigel Development LLC and 232 Seigel Acquisition LLC.

1. The Auction Sale will take place on February 3, 2022 at 11:00 a.m. at the Property, or by Zoom or other virtual platform. The Auction Sale will be conducted by Marc Yaverbaum of MYC & Associates, Inc., which was retained by the Trustee as real estate broker.

2. Information regarding the Auction Sale of the Property can be obtained by contacting Marc Yaverbaum or Victor Moneypenny at MYC, 110 South Avenue, Suite 61, Staten Island, NY 10314, (phone) 347.273.1258, (fax) 347.273.1358, (email) *my@myccorp.com* or *vm@myccorp.com*.

3. The minimum bid at the Auction Sale shall be $8,000,000. Successive bids shall be in increments of $250,000 or such other amount as the Auctioneer, in consultation with the Trustee, determines.

4. To bid on the Property, prior to the commencement of the Auction Sale each prospective bidder ("Bidder") must deliver to the Auctioneer a certified or bank check made payable to "Howard P. Magaliff, as Trustee of 232 Seigel Acquisition LLC" in the amount of $800,000 (the "Qualifying Deposit"), being ten percent (10%) of the minimum bid. The Qualifying Deposit shall serve as a partial good faith deposit against payment of the Purchase Price by

1

any competing Bidder as the Auctioneer, in consultation with the Trustee, determines to have made the highest or best bid for the Property (the "Successful Bidder").  The Auctioneer will hold all Qualifying Deposits in escrow until the conclusion of the Auction Sale.

5.    The Auctioneer, in consultation with the Trustee, reserves the sole and exclusive right to permit bidders at the Auction Sale who have not submitted a Qualifying Deposit if the he determines in his business judgment that allowing such people to bid is in the best interests of the estate.  Any person who wishes to bid at the Auction Sale without submitting a Qualifying Bid must bring a certified or bank check to the Auction Sale payable to "Howard P. Magaliff, as Trustee of 232 Seigel Acquisition LLC" in the amount of $800,000.

6.    Pursuant to section 363(k) of the Bankruptcy Code DB 232 Seigel LLC (the "Senior Lender") shall have the right to credit bid at the auction the amount of its allowed secured claim as agreed with the Trustee or determined by the Court without the requirement of posting a deposit.  At the commencement of the auction, the Auctioneer shall announce the amount of the Senior Lender's claim that it will be authorized to bid.

7.    Within 48 hours after conclusion of the Auction Sale, the Successful Bidder shall deliver to the Auctioneer, by certified or bank check made payable to "Howard P. Magaliff, as Trustee of 232 Seigel Acquisition LLC" or by wire in immediately available federal funds, an amount equal to 10% of the high bid realized at the Auction Sale minus the Qualifying Deposit (together with the Qualifying Deposit, the "Deposit").

8.    The Successful Bidder and the competing Bidder who the Auctioneer, in consultation with the Trustee, determines to have made the second highest or best bid for the Property (the "Second Highest Bidder") must execute, and thereby agree to be bound by these Terms and Conditions and the Memorandum of Sale.  At the conclusion of the Auction Sale, the Auctioneer will return the Qualifying Deposits to all Bidders, except for the Successful Bidder

and the Second Highest Bidder. The Second Highest Bidder's Qualifying Deposit shall be returned within two business days following the closing on the sale of the Property to the Successful Bidder.

9. The Successful Bidder must close title (the "Closing") to the Property at a date (the "Closing Date") that is not more than seven business days after the Bankruptcy Court approves the sale (the "Approval Date") or such other time as agreed to with the Trustee.

10. If the Successful Bidder fails to close on the sale of the Property, the Second Highest Bidder shall have up to seven business days thereafter to close on the sale of the Property or up to 21 days upon good cause shown to the Court.

11. Should the Successful Bidder fail to close on the sale of the Property, the Successful Bidder shall forfeit the Deposit. Thereafter, should the Second Highest Bidder fail to close on the sale of the Property, the Second Highest Bidder shall forfeit the Deposit.

12. The Second Highest Bidder shall not receive a credit for any funds retained by the Trustee as liquidated damages based upon the default of the Successful Bidder.

13. Closing is subject to the entry of the Approval Order. A hearing (the "Approval Hearing") will be held on February __, 2022 at 10:00 a.m. to consider the Trustee's motion to sell the Property and entry of the Approval Order. The hearing will be conducted virtually using Zoom for Government. Parties wishing to appear must register in advance using the Electronic Appearance portal located on the Court's website at *http://ecf.nysb.uscourts.gov/cgi-bin/nysbAppearances.pl*.

14. The Successful Bidder will be responsible for the payment of any transfer taxes required. The amount of any such taxes shall be added to the balance of the Purchase Price at Closing.

15. The Successful Bidder or the Second Highest Bidder, as the case may be, shall be obligated to close title to the Property and there is no contingency of any kind or nature that will permit the Successful Bidder or the Second Highest Bidder, as the case may be, to cancel or avoid his, her or its obligation under these Terms and Conditions other than the Trustee's inability to deliver insurable title to the Property. The Successful Bidder or the Second Highest Bidder, as the case may be, must demonstrate to the satisfaction of the Trustee and the Court at the Approval Hearing his, her or its ability to conclude the transaction upon these Terms and Conditions including the availability of sufficient unencumbered funds to close.

16. The Property is being sold and delivered **"AS IS" and "WHERE IS"**, **"WITH ALL FAULTS"**, without any representations, covenants, guarantees or warranties of any kind or nature whatsoever, and, pursuant to section 363(f) of the Bankruptcy Code, free and clear of all liens, claims and interests of entities other than the estate of whatever kind or nature, with such liens, claims, interests and encumbrances, if any, to attach to the proceeds of the Auction Sale in such order and priority as they existed immediately prior to the date of the Auction Sale, and subject to, among other things: (a) any state of facts that an accurate survey would show; (b) any covenants, restrictions and easements of record; (c) any state of facts a physical inspection may show; (d) any building or zoning ordinances or other applicable municipal regulations and violations thereof; (e) environmental conditions; (f) any damage or destruction between the date of the Auction Sale and the date of the Closing; and (g) all deed restrictions. By delivering their Qualifying Deposits or attending and bidding at the Auction Sale without having submitted a Qualifying Deposit, all Bidders acknowledge that they have had the opportunity to review and/or inspect the Property, the state of title thereof, and laws, rules and regulations applicable thereto, and will rely solely thereon and on their own independent investigations and in-

spections of the Property in making their bids. All Bidders acknowledge that they have conducted their own due diligence in connection with the Property, and are not relying on any information provided by the Trustee, the Broker/Auctioneer, and/or the Trustee's retained professionals.

17.     The Trustee, the Broker/Auctioneer, and the Trustee's retained professionals have not made and do not make any representations or warranties with respect to the permissible uses of the Property, the physical condition, value of the land or improvements thereon, use or any other matter or thing affecting or related to the Property or the Auction Sale, that might be pertinent to the purchase of the Property, including, without limitation: (a) the current or future real estate tax liability, assessment or valuation of the Property; (b) the potential qualification of the Property for any and all benefits conferred by or available under federal, state or municipal laws, whether for subsidies, special real estate tax treatment, insurance, mortgages, or any other benefits, whether similar or dissimilar to those enumerated; (c) the compliance or noncompliance of the Property, in its current or any future state, with applicable current or future zoning ordinances or other land use law or regulation, or the ability of the owner of the Property to obtain a change in the zoning or use, or a variance in respect to the Property; (d) the availability of any financing for the purchase, alteration, rehabilitation or operation of the Property from any source, including, but not limited to, any state, city, local government or federal government or institutional lender; (e) the current or future use of the Property; (f) the present and future condition and operating state of any and all machinery or equipment in the Property and the present or future structural and physical condition of any improvements thereon or its suitability for rehabilitation or renovation; (g) the ownership or state of title of any personal property in the Property; (h) the presence or absence of any laws, ordinances, rules or regulations issued by any governmental authority, agency or board and any violations thereof; (i) any present or future issues concerning

{00038722v1 }                                                       5

subdivision or non-subdivision of the Property; or (j) the compliance or non-compliance of the Property with environmental laws and the presence or absence of underground fuel storage tanks, any asbestos or other hazardous materials anywhere in or on the Property. The Trustee, the Broker/Auctioneer, and the Trustee's retained professionals are not liable or bound in any manner by express or implied warranties, guaranties, promises, statements, representations or information pertaining to the Property.

18. The Trustee shall convey the Property by quitclaim deed. The quality of title shall be that which a reputable title insurance company doing business in the State of New York is willing to approve and insure, subject to the exceptions set forth in ¶¶ 16(a)-(g) herein.

19. Nothing contained in these Terms and Conditions shall supersede or alter any provisions of the Bankruptcy Code or of the Federal Rules of Bankruptcy Procedure or otherwise interfere with the jurisdiction of the Court. To the extent of any conflict between the Bankruptcy Code and/or the Bankruptcy Rules and these Terms and Conditions, the Bankruptcy Code and/or the Bankruptcy Rules shall govern. All of the terms and conditions set forth in these Terms and Conditions are subject to modification as may be directed by (i) the Trustee other than with respect to paragraph 6 above, or (ii) by the Court. Other than with respect to paragraph 6 above, the Trustee reserves the right to modify these Terms and Conditions at the Auction Sale or thereafter to maintain consistency with the provisions of the Bankruptcy Code, the Bankruptcy Rules, and/or prior orders of the Court.

20. These Terms and Conditions will be read into the record, or specifically incorporated by reference, at the Auction Sale. By making a bid for the Property, all Bidders will be deemed to have acknowledged having read these Terms and Conditions of Sale and having agreed to be bound by them.

21.     The Auction Sale of the Property is subject to entry of the Approval Order. Any disputes concerning the Auction Sale shall be determined by the Court. By participating in the Auction Sale, all Bidders consent to the jurisdiction of the Court to determine any disputes.

22.     By making a bid for the Property, all Bidders will be deemed to have acknowledged having read these Terms and Conditions of Sale and have agreed to be bound by them.

I have read these Terms and Conditions of Sale and agree to be bound by them.

By: _____

Print Name: _____

Date: _____, 202__

## MEMORANDUM OF SALE

      The undersigned this ___ day of _____, 202__ agree to purchase the real property and improvements thereon located at 232 Seigel Street, Brooklyn, New York (the "Property") for the sum of $_____ and promises and agrees to comply with the preceding Terms and Conditions of Sale of the Property.

_____       _____
Purchaser (Signature)                                Purchaser (Signature)

Name: _____      Name: _____
Address: _____      Address: _____
_____      _____

Phone: _____      Phone: _____
Fax: _____      Fax: _____
Email: _____      Email: _____

Received from _____ on _____, 202__ the sum of $800,000 as a non-refundable (except as set forth in the Terms and Conditions of Sale) deposit for the purchase of the Shares pursuant to the Terms and Conditions of Sale.

                                            MYC & Associates, Inc.
                                            By:

                                            _____
                                            Name:

**PURCHASER ATTORNEY INFORMATION**

Name: _____
Address: _____
_____
_____

Phone: _____
Fax: _____
Email: _____

{00038722v1 }