R3M Law, LLP
335 Madison Avenue, 9th Floor
New York, NY 10017
646.453.7851
Howard P. Magaliff

*Attorneys for Howard P. Magaliff,*
*Chapter 7 Trustee*

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK

---------------------------------------------------------------x

| | | |
|---|---|---|
| In re: | : | Chapter 7 |
| | : | |
| 232 SEIGEL DEVELOPMENT LLC, *et al.*, | : | Case No. 20-22844 (SHL) |
| | : | |
| Debtors.[1] | : | Jointly Administered |

---------------------------------------------------------------x

| | | |
|---|---|---|
| HOWARD P. MAGALIFF, as Trustee of | : | |
| 232 Seigel Development LLC and 232 Seigel | : | |
| Acquisition LLC, | : | Adv. Pro. No. 23-_____ |
| | : | |
| Plaintiff, | : | |
| | : | |
| – against – | : | |
| | : | |
| NORTHSIDE ACQUISITION PARTNERS LLC, | : | |
| 215 MOORE ST ACQUISITION LLC, ER 215 | : | |
| MOORE LLC, DOE ACCOUNT HOLDER 7255, | : | |
| and "DOE 1" through "DOE 10", | : | |
| | : | |
| Defendants. | : | |

---------------------------------------------------------------x

## COMPLAINT TO AVOID AND RECOVER PREFERENCES, FRAUDULENT TRANSFERS AND DAMAGES FOR UNJUST ENRICHMENT

Howard P. Magaliff, the chapter 7 trustee of the jointly administered estates of

232 Seigel Development LLC ("Development") and 232 Seigel Acquisition LLC ("Acquisition"

and together with Development, the "Debtors"), as plaintiff (the "Trustee" or "Plaintiff"), as and

---

[1] The Debtors in these chapter 7 cases and the last four digits of each Debtor's taxpayer identification number are as follows: 232 Seigel Development LLC (0108) and 232 Seigel Acquisition LLC (9782).

for his complaint against the above-named defendants, alleges the following upon knowledge as to his own acts and otherwise upon information and belief:

## INTRODUCTION

1.      Plaintiff brings this action pursuant to Rule 7001(1) of the Federal Rules of Bankruptcy Procedure ("Bankruptcy Rules") and sections 544(b)(1), 547(b), 548(a)(1)(B), and 550(a) of title 11, United States Code (the "Bankruptcy Code") to avoid and recover from the defendants preferences and/or constructive fraudulent transfers made by the Debtors within six years prior to the Filing Date,[2] and damages for unjust enrichment.

## THE PARTIES

2.      On June 14, 2020 (the "Petition Date"), the Debtors filed voluntary petitions for relief under chapter 11 of the Bankruptcy Code.  Development initially filed under subchapter 5 of chapter 11, and subsequently amended its petition to remove the subchapter 5 election.

3.      By Order dated October 15, 2021 [doc. 160] (the "Conversion Order"), the Court converted the Debtors' chapter 11 cases to cases under chapter 7 of the Bankruptcy Code. Howard P. Magaliff was appointed as the chapter 7 interim trustee of the Debtors and is the trustee pursuant to section 702(d) of the Bankruptcy Code.

4.      Northside Acquisition Partners LLC ("Northside") is a limited liability company whose members include, upon information and belief, Toby Moskovits ("Moskovits"), Yechiel Michael Lichtenstein ("Lichtenstein") and Moshe Dov Schweid ("Schweid").

---

[2]     Article 10 of the New York Debtor and Creditor Law was repealed and replaced by the New York Uniform Voidable Transaction Act effective April 4, 2020.  Article 10 governs all transactions that occurred prior to April 4, 2020.

4872-5983-1900, v. 3

5.      215 Moore St Acquisition LLC ("215 Acquisition") is a limited liability company whose members include Moskovits and, upon information and belief, may include Lichtenstein and Schweid.

6.      ER 215 Moore LLC ("ER 215 Moore") is a limited liability company whose members include Moskovits and, upon information and belief, may include Lichtenstein and Schweid.

7.      Doe Account Holder 7255, the owner of a checking account ending in 7255, received funds transferred by Development.  The identity of Doe Account Holder 7255 is unknown at this time, and the Trustee reserves the right to amend this complaint to identify this defendant.

8.      "Doe 1" through "Doe 10" are unknown initial or mediate transferees of the Debtors.  The Trustee reserves the right to amend this complaint to identify these defendants.

## JURISDICTION AND VENUE

9.      This Court has jurisdiction pursuant to 28 U.S.C. §§ 157 and 1334.

10.     Venue is proper pursuant to 28 U.S.C. §§ 1408 and 1409.

11.     This is a core proceeding pursuant to 28 U.S.C. § 157(b)(2).  If any of the claims asserted in this adversary proceeding are determined to be non-core, Plaintiff consents to the entry of final judgment by the Bankruptcy Court.

## GENERAL ALLEGATIONS

A.      **Background**

12.     As of the Petition Date, the Debtors' primary asset was the real property known as Block 3100, Lot 34, or 232 Seigel Street, Brooklyn, NY (the "Property").  Acquisition was the owner of the Property.  Development owns 100% of the member interests in Acquisition. According to the Debtors' chapter 11 joint disclosure statement, the Property is an assemblage of

3

properties with approved plans to develop a full-service hotel with 150 rooms with amenities, community space, parking and other features.

13.    On or about November 18, 2016, 215 Acquisition, with a 97% interest, and S&B Moore LLC ("S&B Moore"), with a 3% interest, as tenants in common, and Acquisition entered into a deed, whereby for $1.00 consideration, 215 Acquisition and S&B Moore transferred the Property to Acquisition. The real property transfer report filed with state of New York was signed for both buyer and seller by Moskovits as authorized person.

14.    Simultaneously, ER 215 Moore, as mortgagor made two mortgage loans to Acquisition, a senior loan for $4.7 million ("Senior Loan") and a building loan for $3.1 million ("Building Loan"). These mortgages were short term mortgages and were repayable on February 11, 2019. As additional security for the mortgages, Acquisition granted to the mortgagor a security interest in the land, improvements, easements, machinery, leases and other personal property. In connection with the $4.7 million Senior Loan, Acquisition provided a maximum security interest of up to $26,192,985.81, and as part of $3.1 million Building Loan, Acquisition granted a security interest of $3.1 million. Both of the loan agreements were signed by Moskovits as manager of Development, the sole member of Acquisition.

15.    Prior to November 11, 2016, 215 Acquisition and S&B Moore were also the fee owners of land and buildings located at Block 3100 lots 22, 26, 32, 47, 56, 61, 63, 66, 67 and 68, known by the street addresses 208-228 Siegel Street and 201-225 Moore St., in Brooklyn (the "Adjacent Property"). On or about November 11, 2016, 215 Acquisition and S&B Moore and Acquisition entered into a Zoning Lot Development Agreement ("ZLDA"), whereby Acquisition and 215 Acquisition and S&B Moore signed a declaration to treat the Property and the Adjoining Property as a single zoning lot. In addition, 215 Acquisition and S&B Moore granted and transferred to Acquisition in perpetuity 31,000 sq. ft. of development rights for utilization on

4

Acquisition's Property.  Prior to the transfer of these rights, Acquisition owned 18,496 sq. ft. of land with development rights of 36,992 sq. ft. The total development rights available to Acquisition after transfer of development rights increased to 67,992 sq. ft.

16.    Prior to September 18, 2017, 215 Acquisition and S&B Moore also owned Block 3100, lots 47 and 56.  On September 18, 2017, Acquisition and 215 Acquisition and S&B Moore signed a Light and Air Easement Agreement, whereby 215 Acquisition and S&B Moore granted to Acquisition rights to unrestricted light and air and limiting the construction heights on Block 3100 lots 47 and 56 to 35.88 feet.  This agreement was signed by Moskovits on behalf of 215 Moore, by Lichtenstein on behalf of Acquisition, and by Schweid on behalf of S&B Moore.

17.    On or about December 03, 2018, Aaron Valuation issued an appraisal report for the Property.  The appraisal report valued the Property along with its improvements and rights at $21,650,000 as of September 30, 2018, with the value of land with 68,060 sq. ft. of development rights at $18,716,500, and owner's cost spent to date (which has value to future owners) and profits of $2,931,250.

18.    On or about December 18, 2018, BridgeCity Capital, LLC issued a $5.25 million mortgage loan to Acquisition and BCC MZ17 LLC issued a $3 million mezzanine mortgage loan to Development.  The BridgeCity Capital loan was secured by a security interest in the Property and the BCCMZ17 loan was secured by all assets of Development and a pledge of the 100% membership interest in Acquisition.

19.    The proceeds from these loans were to be utilized to consolidate and repay the existing mortgage in favor of ER 215 Moore and certain amounts were withheld for future interest payments.

20.    Both the BridgeCity Capital and BCCMZ17 loans were guaranteed by Moskovits, Lichtenstein and Schweid.

4872-5983-1900, v. 3

21.     As a part of the loan agreements BridgeCity Capital retained $638,750 and BCCMZ17 retained $365,000 as interest reserves.  The loans carried a 12% interest rate with a default rate of 24% per annum.  Both loan agreements had maturity dates of January 1, 2020. Both loan agreements also included this provision: "The Debt shall without notice become immediately due and payable at the option of Lender if any payment required in this Note is not paid on or prior to the date when due (subject to any grace period provided in the Loan Agreement or herein) or if not paid on the Maturity Date or on the happening of any other Event of Default."

**B.      Development Disposes of Cash While Building Expenses Are Coming Due**

22.     Around the time Acquisition acquired the Property, All Island Masonry & Concrete Inc. ("All Island") began work at the Property.

23.     On January 6, 2017, All Island invoiced $1,041,588 then due to it for construction it completed.  All Island's proof of claim (Claim No. 6-1) reflects that interest began accruing on the outstanding balance owed to it as of January 2017.

24.     Meanwhile, from November 25, 2016, to January 3, 2019, Development transferred funds to Northside (the "Northside-Development Transfers") and Doe Account Holder 7255 (the "Doe Account Holder 7255 Transfers"), all while accruing additional construction and interest expenses owing to All Island and others.  A schedule of the Northside-Development Transfers and the Doe Account Holder 7255 Transfers are attached as Exhibit 1 and Exhibit 2, respectively.

25.     Additionally, on May 18, 2017, Development transferred to 215 Acquisition $115,841.68 (the "215 Acquisition-Development Transfer").

6

26.    Based upon review of the Debtors' bank accounts and available infor-

mation, the Debtors did not have cash balances or other assets that could be quickly converted to

cash to cover the continuing expenses of the construction project when it made these transfers.

C.    **Unexplained Transfers to ER 215 Moore Immediately**
      **Prior to Debtor's Default on Mortgage and Mezzanine Loan**

27.    On October 11, 2019, Development wired ER 215 Moore $50,000 (the

"ER 215 Moore Wire").

28.    The transfer records made reference to a purchase and sale agreement.

However, upon information and belief, Development was not in privity with ER 215 Moore, and

any outstanding obligations Acquisition owed ER 215 Moore were to have been satisfied by the

proceeds of loan from BridgeCity Capital in December 2018.

29.    On October 16, 2019, ER 215 Moore cashed a check from Development

for $50,000 as well (collectively, with the ER 215 Moore Wire, the "ER 215 Moore Transfers").

The check did not identify for what purpose it was given.  Attached as Exhibit 3 is a schedule of

these transfers.

30.    Shortly thereafter, on or about October 19, 2019, BridgeCity Capital and

BCC MZ17 LLC declared defaults on both the Acquisition mortgage loan and the Development

mezzanine mortgage loan.  The default notices accelerated the loan repayment dates and interest

rate to the 24% default interest rate and demanded immediate payment in full of all obligations

of the Debtors to BridgeCity Capital and BCC MZ17 LLC.  As of November 30, 2019, Acquisi-

tion was obligated to repay $5,310,000 and Development was obligated to pay $3,035,000.

31.    In addition to the loans, both Acquisition and Development had significant

other liabilities that were outstanding, matured, due and payable but were not paid.  A review of

claims filed against the Debtors reflects $15,541,476.51 of claims filed against Acquisition and

7

$9,656,944.42 of claims filed against Development.  An overwhelming majority of these claims were outstanding and were due and payable as of October 19, 2019.

32.    The claim filed by AKRF, Inc. in Development's case for $10,013.59 appears to have been outstanding since June 2017.  A complaint was filed against Development during the year 2019 and a default judgment entered on January 21, 2020.

33.    The Debtors' schedules reflect liabilities that have been outstanding since 2015 and 2016.

34.    In addition, it appears that the Debtors experienced cash flow issues for an extended period prior to October 11, 2019.  For example, Acquisition failed to make timely payments on the quarterly Property taxes due for the tax year 2018, and 2019.

35.    Based upon review of the Debtors' bank accounts and available information, the Debtors did not have cash balances or other assets that could be quickly converted to cash to satisfy close to $8.25 million of loans and significant other liabilities that were due and payable as of October 19, 2019.

36.    The Debtors incurred debts beyond their ability to pay as they matured and failed to make timely payments to their vendors and lenders.  Both Debtors were insolvent on a cash flow basis as of October 19, 2019.

**D.    The Debtors' Continued Financial Woes
and Unexplained Transfers to Northside**

37.    As of December 17, 2019, Development owed $3,069,000 to BCC MZ17 LLC which included default interest of $66,000 from October 19, 2019 through December 17, 2019, and Acquisition owed $5,369,500 to BridgeCity Capital LLC which included default interest and legal fees of $119,500 from October 19, 2019 through December 17, 2019.

38.    On or about December 17, 2019, BridgeCity Capital LLC and BCC MZ17 LLC sold their loans to DB Seigel LLC and DB Seigel Mezz LLC, respectively for $8.25 million

8

(net of an interest reserve of $46,750).  The amount outstanding on the BridgeCity loan as of December 17, 2019 was $5,369,500 (including default interest and legal fees of $119,500).  The amount outstanding on the BCC MZ17 LLC loan was $3,069,000 (including default interest and legal fees of $69,000).  DB Seigel LLC and DB Seigel Mezz LLC were owned by or related to Fortress Investment Group LLC.

39.    From December 19, 2019 until the filing of the Petition, Acquisition transferred $1,855,404.88 to Northside (the "Acquisition-Northside Transfers").  A schedule of the Acquisition-Northside Transfers is attached as Exhibit 4.

**E.    February 2020 Contract to Sell the Property and Missing Funds Due to Acquisition**

40.    In February 2020, Acquisition entered into a purchase and sale agreement with 232 Seigel Property LLC, owned by Abraham Leifer, to sell the Property for $18 million (the "PSA").

41.    The PSA provided that the purchaser would pay a $1,800,000 deposit to the seller (defined in the PSA as the "Down Payment").  The PSA provides that "[u]pon delivery to Seller, the Down Payment shall become non-refundable to Purchaser and fully earned by Seller."  Upon examination of Acquisition's records, Acquisition transferred most of the Down Payment to Northside and 215 Acquisition.

42.    The PSA was amended in May 2020 to extend the closing date, which would have occurred during the chapter 11 phase of this case.

43.    Under the draft amendment to the PSA, Acquisition was to receive $100,000 in May 2020 for a 30-day extension to 232 Seigel Property LLC.  Upon information and belief, the amendment to the PSA was executed in the same form as the draft.  However, Acquisition never received the $100,000 due to it in its accounts.

9

**E.**     **April 2020 Unexplained Transfers to 215 Acquisition**

44.     Between August 22, 2018 to April 1, 2020, Acquisition made transfers to

215 Acquisition (the "215 Acquisition Transfers").  A schedule of the transfers is attached as

Exhibit 5.

**F.     The Debtor's Estate Remains Administratively
Insolvent After the Sale of the  Property_____**

45.     On February 24, 2022, the Property was auctioned by the Trustee to a suc-

cessful purchaser for $10,514,327.  The purchaser was also owned by Abraham Leifer.  The

Court approved the sale on March 7, 2022.

46.     After paying the secured claims against the Property, the Debtors' estates

remain administratively insolvent.

**FIRST CAUSE OF ACTION**
**(Avoidance of ER 215 Moore Transfers as Constructive Fraudulent Transfers
Pursuant to 11 U.S.C. § 548(a)(1)(B))**

47.     Plaintiff incorporates each of the foregoing paragraphs as if fully set forth

herein.

48.     Pursuant to 11 U.S.C. § 548(a)(1)(B), a trustee may avoid any transfer of

an interest of the debtor in property that was made on or within 2 years before the date of the fil-

ing of the petition if the debtor received less than a reasonably equivalent value in exchange for

such transfer or obligation and was (a) insolvent on the date that such transfer was made or such

obligation was incurred, or became insolvent as a result of such transfer or obligation, or (b) en-

gaged in business or a transaction, or was about to engage in business or a transaction, for which

any property remaining with the debtor was an unreasonably small capital.

49.     Development did not receive reasonably equivalent value in exchange for

the ER 215 Moore Transfers within the meaning of 11 U.S.C. § 548(a)(1)(B)(i).

10

50.    Development was engaged in was engaged in business, or was about to engage in business, for which it had an unreasonably small capital after the ER 215 Moore Transfers within the meaning of 11 U.S.C. § 548(a)(1)(B)(ii)(II).

51.    Pursuant to 11 U.S.C. § 548(a)(1)(B), the Trustee is entitled to judgment avoiding the ER 215 Moore Transfers for the benefit of the creditors of the Development's estate.

52.    ER 215 Moore is an initial transferee of the ER 215 Moore Transfers.

53.    Pursuant to 11 U.S.C. § 550(a)(1), the Trustee is entitled to judgment directing return of the ER 215 Moore Transfers from ER 215 Moore.

**SECOND CAUSE OF ACTION**
**(Avoidance of ER 215 Moore Transfers as Constructive Fraudulent Transfers**
**Pursuant to 11 U.S.C. § 544(b)(1) and Former DCL §§ 273-74, 278)**

54.     Plaintiff incorporates each of the foregoing paragraphs as if fully set forth herein.

55.    Pursuant to 11 U.S.C. § 544(b)(1), a trustee may avoid any transfer of an interest of the debtor in property or any obligation incurred by the debtor that is voidable under applicable law by a creditor holding an unsecured claim that is allowable under 11 U.S.C. § 502.

56.    As reflected in the Development's Schedule E/F filed in this case [Doc. No. 3, pp. 8-9], the Debtor has at least one unsecured creditor with a fixed, liquidated and non-contingent claim that is allowable under 11 U.S.C. § 502.

57.    Pursuant to section 273 of the New York Debtor and Creditor Law effective for transactions that occurred prior to April 4, 2020 (the "Former DCL"), every conveyance made and every obligation incurred by a person who is or will be thereby rendered insolvent is fraudulent as to creditors without regard to his actual intent if the conveyance is made or the obligation is incurred without fair consideration.

11

58.    Pursuant to Former DCL § 274, Every conveyance made without fair consideration when the person making it is engaged or is about to engage in a business or transaction for which the property remaining in his hands after the conveyance is an unreasonably small capital, is fraudulent as to creditors and as to other persons who become creditors during the continuance of such business or transaction without regard to his actual intent.

59.    Pursuant to Former DCL § 278, creditors may set aside a fraudulent conveyance to the extent necessary to satisfy their claims.

60.    Upon information and belief, the ER 215 Moore Transfers were without fair consideration in return within the meaning of Former DCL § 272.

61.    Development was engaged in a business for which the property remaining in its hands after the ER 215 Moore Transfers was an unreasonably small capital within the meaning of Former DCL § 274.

62.    Pursuant to 11 U.S.C. § 544(b)(1), the Trustee is entitled to judgment avoiding the ER 215 Moore Transfers for the benefit of the creditors of the Development's estate.

63.    ER 215 Moore is an initial transferee of the ER 215 Moore Transfers.

64.    Pursuant to 11 U.S.C. § 550(a)(1), the Trustee is entitled to judgment directing return of the ER 215 Moore Transfers from ER 215 Moore.

### THIRD CAUSE OF ACTION
### (Avoidance of ER 215 Moore Transfers as Preferential Transfers Pursuant to 11 U.S.C. § 547(b))

65.    Plaintiff incorporates each of the foregoing paragraphs as if fully set forth herein.

66.    Pursuant to 11 U.S.C. § 547(b), a trustee may avoid any transfer of an interest of the debtor in possession in property (a) to or for the benefit of a creditor, (b) for or on

12

account of an antecedent debt owed by the debtor in possession before such transfer was made,
(c) made while the debtor in possession was insolvent, (d) made within one year before the date
of the filing of the petitioner, if such creditor at the time of the transfer was an insider, and
(e) that enables such creditor to receive more in satisfaction of its claims than it would receive in
a case under chapter 7 of the Bankruptcy Code if the transfer had not been made.

67.     During the year prior to the filing of the petition, Development made the
ER 215 Moore Transfers to ER 215 Moore.

68.     Upon information and belief, ER 215 Moore is an insider within the mean-
ing of 11 U.S.C. § 547(b)(4)(B).

69.     The ER 215 Moore Transfers were made to or for the benefit of ER 215
Moore.

70.     The ER 215 Moore Transfers enabled ER 215 Moore to receive more in
satisfaction of any claim it may have had against Development than it would have received in a
case under chapter 7 of the Bankruptcy Code had the payment not been made.

71.     To the extent the Court finds that the ER 215 Moore Transfers were made
on account of an antecedent debt owed by Development before the ER 215 Moore Transfers
were made and that ER 215 Moore was a creditor, the Trustee is entitled to an order and judg-
ment under 11 U.S.C. § 547(b) avoiding the ER 215 Moore Transfers.

72.     Pursuant to 11 U.S.C. § 550(a)(1), the Trustee is entitled to judgment di-
recting return of the ER 215 Moore Transfers from ER 215 Moore, to the extent they are avoided
pursuant to 11 U.S.C § 247(b).

13

## FOURTH CAUSE OF ACTION
### (Avoidance of Acquisition-Northside Transfers as Constructive Fraudulent Transfers Pursuant to 11 U.S.C. § 548(a)(1)(B))

73.     Plaintiff incorporates each of the foregoing paragraphs as if fully set forth herein.

74.     Acquisition did not receive reasonably equivalent value in exchange for the Acquisition-Northside Transfers within the meaning of 11 U.S.C. § 548(a)(1)(B)(i).

75.     Acquisition was insolvent on the date of the Acquisition-Northside Transfers within the meaning of 11 U.S.C. § 548(a)(1)(B)(ii)(I).

76.     Acquisition was engaged in was engaged in business, or was about to engage in business, for which it had an unreasonably small capital after the Acquisition-Northside Transfers within the meaning of 11 U.S.C. § 548(a)(1)(B)(ii)(II).

77.     Pursuant to 11 U.S.C. § 548(a)(1)(B), the Trustee is entitled to judgment avoiding the Acquisition-Northside Transfers for the benefit of the creditors of the Acquisition's estate.

78.     Northside is an initial transferee of the Acquisition-Northside Transfers. Pursuant to 11 U.S.C. § 550(a)(1), the Trustee is entitled to judgment directing return of the Acquisition-Northside Transfers from Northside.

## FIFTH CAUSE OF ACTION
### (Avoidance of Acquisition-Northside Transfers as Constructive Fraudulent Transfers Pursuant to 11 U.S.C. § 544(b)(1), DCL §§ 273, 276-77 and Former DCL §§ 273-74, 278)

79.     Plaintiff incorporates each of the foregoing paragraphs as if fully set forth herein.

80.     Pursuant to section 273(a)(2) of the New York Debtor and Creditor Law ("DCL"), a transfer made by a debtor is voidable as to a creditor if the debtor made the transfer without receiving reasonably equivalent value in exchange for the transfer or obligation and:

14

(i) was engaged in a business for which the remaining assets of the debtor were unreasonably

small in relation to the business; or (ii) reasonably should have believed that the debtor would

incur debts beyond the debtor's ability to pay as they became due.

81.    Pursuant to DCL § 276(a)(1), a creditor may avoid a transfer to the extent

necessary to satisfy the creditor's claim.

82.    Pursuant to DCL § 277(b)(1), (c), a creditor may recover judgment for the

value of the asset transferred, subject to adjustment as the equities may require.

83.    Upon information and belief, the Acquisition-Northside Transfers were

made without receiving a reasonably equivalent value in exchange for the transfers within the

meaning of DCL § 273(a)(2).

84.    Acquisition was engaged in a business for which the remaining assets of

Acquisition after the Acquisition-Northside Transfers was an unreasonably small in relation to

the business within the meaning of DCL § 273(a)(2)(i).

85.    Acquisition reasonably should have believed that Acquisition would incur

debts beyond its ability to pay as they became due when it transferred the Acquisition-Northside

Transfers within the meaning of DCL § 273(a)(2)(ii).

86.    Upon information and belief, the Acquisition-Northside Transfers were

without fair consideration in return within the meaning of Former DCL § 272.

87.    The Acquisition-Northside Transfers were made while Acquisition was in-

solvent within the meaning of Former DCL § 273.

88.    Acquisition was engaged in a business for which the property remaining in

its hands after the Acquisition-Northside was an unreasonably small capital within the meaning

of Former DCL § 274.

4872-5983-1900, v. 3

89.     Pursuant to 11 U.S.C. § 544(b)(1), the Trustee is entitled to judgment avoiding the Acquisition-Northside Transfers for the benefit of the creditors of the Acquisition's estate.

90.     Northside is an initial transferee of the Acquisition-Northside Transfers.

91.     Pursuant to 11 U.S.C. § 550(a)(1), the Trustee is entitled to judgment directing the return of the Acquisition-Northside Transfers to Acquisition.

<u>SIXTH CAUSE OF ACTION</u>
**(Avoidance of Acquisition-Northside Transfers as Preferential Transfers
Pursuant to 11 U.S.C. § 547(b))**

92.     Plaintiff incorporates each of the foregoing paragraphs as if fully set forth herein.

93.     During the year prior to the filing of the petition, Acquisition made the Acquisition-Northside Transfers to Northside.

94.     Upon information and belief, Northside is an insider within the meaning of 11 U.S.C. § 547(b)(4)(B).

95.     The Acquisition-Northside Transfers were made to or for the benefit of Northside.

96.     The Acquisition-Northside Transfers enabled Northside to receive more in satisfaction of any claim it may have had against Acquisition than it would have received in a case under chapter 7 of the Bankruptcy Code had the payment not been made.

97.     To the extent the Court finds that the Acquisition-Northside Transfers were made on account of an antecedent debt owed by Acquisition before the Acquisition-Northside Transfers were made and that Northside was a creditor, the Trustee is entitled to an order and judgment under 11 U.S.C. § 547 (b)  avoiding the Acquisition-Northside Transfers.

16

98.    Pursuant to 11 U.S.C. § 550(a)(1), the Trustee is entitled to judgment directing return of the Acquisition-Northside Transfers from Northside, to the extent they are avoided pursuant to 11 U.S.C § 247(b).

## SEVENTH CAUSE OF ACTION
### (Avoidance of 215 Acquisition Transfers as Constructive Fraudulent Transfers Pursuant to 11 U.S.C. § 548(a)(1)(B))

99.    Plaintiff incorporates each of the foregoing paragraphs as if fully set forth herein.

100.    Acquisition did not receive reasonably equivalent value in exchange for the 215 Acquisition Transfers within the meaning of 11 U.S.C. § 548(a)(1)(B)(i).

101.    Acquisition was insolvent on the date of the 215 Acquisition Transfers within the meaning of 11 U.S.C. § 548(a)(1)(B)(ii)(I).

102.    Acquisition was engaged in was engaged in business, or was about to engage in business, for which it had an unreasonably small capital after the 215 Acquisition Transfers within the meaning of 11 U.S.C. § 548(a)(1)(B)(ii)(II).

103.    Pursuant to 11 U.S.C. § 548(a)(1)(B), the Trustee is entitled to judgment avoiding the 215 Acquisition Transfers for the benefit of the creditors of Acquisition's estate.

104.    215 Acquisition is an initial transferee of the 215 Acquisition Transfers.

105.    Pursuant to 11 U.S.C. § 550(a)(1), the Trustee is entitled to judgment directing return of the 215 Acquisition Transfers from 215 Acquisition.

## EIGHTH CAUSE OF ACTION
### (Avoidance of 215 Acquisition Transfers as Constructive Fraudulent Transfers Pursuant to 11 U.S.C. § 544(b)(1) and Former DCL §§ 273-74, 278)

106.    Plaintiff incorporates each of the foregoing paragraphs as if fully set forth herein.

4872-5983-1900, v. 3

107.    Upon information and belief, the 215 Acquisition Transfers were without fair consideration in return within the meaning of Former DCL § 272.

108.    The 215 Acquisition Transfers were made while Acquisition was insolvent within the meaning of Former DCL § 273.

109.    Acquisition was engaged in a business for which the property remaining in its hands after the 215 Acquisition was an unreasonably small capital within the meaning of Former DCL § 274.

110.    Pursuant to 11 U.S.C. § 544(b)(1), the Trustee is entitled to judgment avoiding the 215 Acquisition Transfers for the benefit of the creditors of the Acquisition's estate.

111.    215 Acquisition is an initial transferee of the 215 Acquisition Transfers.

112.    Pursuant to 11 U.S.C. § 550(a)(1), the Trustee is entitled to judgment directing payment from 215 Acquisition to the Trustee for the value of the 215 Acquisition Transfers to which the Acquisition is entitled.

## NINTH CAUSE OF ACTION
### (Avoidance of 215 Acquisition Transfers as Preferential Transfers Pursuant to 11 U.S.C. § 547(b))

113.    Plaintiff incorporates each of the foregoing paragraphs as if fully set forth herein.

114.    During the year prior to the filing of the petition, Acquisition made the 215 Acquisition Transfer to 215 Acquisition.

115.    Upon information and belief, 215 Acquisition is an insider within the meaning of 11 U.S.C. § 547(b)(4)(B).

116.    The 215 Acquisition Transfers was made to or for the benefit of 215 Acquisition.

4872-5983-1900, v. 3

117.    The 215 Acquisition Transfers enabled 215 Acquisition to receive more in satisfaction of any claim it may have had against Acquisition than it would have received in a case under chapter 7 of the Bankruptcy Code had the payment not been made.

118.    To the extent the Court finds that the 215 Acquisition Transfers were made on account of an antecedent debt owed by Acquisition before the 215 Acquisition Transfers were made and that 215 Acquisition was a creditor, the Trustee is entitled to an order and judgment under section 11 U.S.C. § 547(b) avoiding the 215 Acquisition Transfers that occurred within 1 year of the filing of the petition.

119.    Pursuant to 11 U.S.C. § 550(a)(1), the Trustee is entitled to judgment directing return of the 215 Acquisition Transfers from 215 Acquisition, to the extent they are avoided pursuant to 11 U.S.C § 247(b).

## TENTH CAUSE OF ACTION
### (Avoidance of Development-Northside Transfers as Constructive Fraudulent Transfers Pursuant to 11 U.S.C. § 548(a)(1)(B))

120.    Plaintiff incorporates each of the foregoing paragraphs as if fully set forth herein.

121.    Development did not receive reasonably equivalent value in exchange for the Development-Northside Transfers within the meaning of 11 U.S.C. § 548(a)(1)(B)(i).

122.    Development was engaged in was engaged in business, or was about to engage in business, for which it had an unreasonably small capital after the Development-Northside Transfers within the meaning of 11 U.S.C. § 548(a)(1)(B)(ii)(II).

123.    Pursuant to 11 U.S.C. § 548(a)(1)(B), the Trustee is entitled to judgment avoiding the Development-Northside Transfers that occurred within 2 years of the filing of the petition for the benefit of the creditors of the Development's estate.

4872-5983-1900, v. 3

124.    Northside is an initial transferee of the Development-Northside Transfers. Pursuant to 11 U.S.C. § 550(a)(1), the Trustee is entitled to judgment directing return of the Development-Northside Transfers from Northside.

## ELEVENTH CAUSE OF ACTION
### (Avoidance of Development-Northside Transfers as Constructive Fraudulent Transfers Pursuant to 11 U.S.C. § 544(b)(1) and Former DCL §§ 273-74, 278)

125.    Plaintiff incorporates each of the foregoing paragraphs as if fully set forth herein.

126.    Upon information and belief, the Development-Northside Transfers were without fair consideration in return within the meaning of Former DCL § 272.

127.    Development was engaged in a business for which the property remaining in its hands after the Development-Northside Transfers was an unreasonably small capital within the meaning of Former DCL § 274.

128.    Pursuant to 11 U.S.C. § 544(b)(1), the Trustee is entitled to judgment avoiding the Development-Northside Transfers for the benefit of the creditors of the Development's estate.

129.    Northside is an initial transferee of the Development-Northside Transfers.

130.    Pursuant to 11 U.S.C. § 550(a)(1), the Trustee is entitled to judgment directing the return of the Development-Northside Transfers to Development.

## TWELFTH CAUSE OF ACTION
### (Avoidance of 215 Acquisition-Development Transfer as Constructive Fraudulent Transfers Pursuant to 11 U.S.C. § 544(b)(1) and Former DCL §§ 273, 278)

131.    Plaintiff incorporates each of the foregoing paragraphs as if fully set forth herein.

132.    Upon information and belief, the 215 Acquisition-Development Transfer were without fair consideration in return within the meaning of Former DCL § 272.

20

4872-5983-1900, v. 3

133.    Development was engaged in a business for which the property remaining in its hands after the 215 Acquisition-Development Transfer was an unreasonably small capital within the meaning of Former DCL § 274.

134.    Pursuant to 11 U.S.C. § 544(b)(1), the Trustee is entitled to judgment avoiding the 215 Acquisition-Development Transfer for the benefit of the creditors of Development's estate.

135.    215 Acquisition is an initial transferee of the 215 Acquisition-Development Transfer.

136.    Pursuant to 11 U.S.C. § 550(a)(1), the Trustee is entitled to judgment directing payment from 215 Acquisition to the Trustee for the value of the 215 Acquisition-Development Transfer to which Development is entitled.

## THIRTEENTH CAUSE OF ACTION
**(Avoidance of Doe Account Holder 7255 Transfers as Constructive Fraudulent Transfers Pursuant to 11 U.S.C. § 548(a)(1)(B))**

137.    Plaintiff incorporates each of the foregoing paragraphs as if fully set forth herein.

138.    Development did not receive reasonably equivalent value in exchange for the Doe Account Holder 7255 Transfers within the meaning of 11 U.S.C. § 548(a)(1)(B)(i).

139.    Development was engaged in was engaged in business, or was about to engage in business, for which it had an unreasonably small capital after the Doe Account Holder 7255 Transfers within the meaning of 11 U.S.C. § 548(a)(1)(B)(ii)(II).

140.    Pursuant to 11 U.S.C. § 548(a)(1)(B), the Trustee is entitled to judgment avoiding the Doe Account Holder 7255 Transfers that occurred within 2 years of the filing of the petition for the benefit of the creditors of Development's estate.

4872-5983-1900, v. 3

141.    Northside is an initial transferee of the Doe Account Holder 7255 Transfers.

142.    Pursuant to 11 U.S.C. § 550(a)(1), the Trustee is entitled to judgment directing return of the Doe Account Holder 7255 Transfers from Doe Account Holder 7255.

## FOURTEENTH CAUSE OF ACTION
**(Avoidance of Doe Account Holder 7255 Transfers as Constructive Fraudulent Transfers Pursuant to 11 U.S.C. § 544(b)(1) and Former DCL §§ 273, 278)**

143.    Plaintiff incorporates each of the foregoing paragraphs as if fully set forth herein.

144.    Upon information and belief, the Doe Account Holder 7255 Transfers were without fair consideration in return within the meaning of Former DCL § 272.

145.    Development was engaged in a business for which the property remaining in its hands after the Doe Account Holder 7255 Transfers was an unreasonably small capital within the meaning of Former DCL § 274.

146.    Pursuant to 11 U.S.C. § 544(b)(1), the Trustee is entitled to judgment avoiding the Doe Account Holder 7255 Transfers for the benefit of the creditors of the Development's estate.

147.    Doe is an initial transferee of the 215 Acquisition-Development Transfer.

148.    Pursuant to 11 U.S.C. § 550(a)(1), the Trustee is entitled to judgment directing payment from Doe to the Trustee for the value of the Doe Account Holder 7255 Transfers to which Development is entitled.

## FIFTEENTH CAUSE OF ACTION
**(Unjust Enrichment)**

149.    Plaintiff incorporates each of the foregoing paragraphs as if fully set forth herein.

4872-5983-1900, v. 3

150.    Unjust enrichment exists when (1) a defendant benefits; (2) at another party's expense; and (3) equity and good conscience require restitution.

151.    The benefits that the Defendants received from the Debtors had a value for which the Defendants did not properly compensate the Debtors.

152.    Upon information and belief, in contrast, each Defendant unfairly benefitted from the transfers raised in the previous causes of action (the "Transfers") and have been unjustly enriched.

153.    The Debtors did not receive any, or adequate, consideration in exchange for the Transfers.

154.    As a result of the foregoing, the Defendants are liable to the Trustee for the damages caused by the Transfers in an amount to be determined at trial.

**WHEREFORE**, the Trustee requests the entry of judgment as follows:

(a)    On the first cause of action, avoiding the ER 215 Moore Transfers pursuant to 11 U.S.C. § 548(a)(1)(B), and directing return of the ER 215 Moore Transfers from ER 215 Moore;

(b)    On the second cause of action, avoiding ER 215 Moore Transfers not avoided under paragraph (a) pursuant to 11 U.S.C. § 544(b)(1), and directing return of those transfers from ER 215 Moore;

(c)    On the third cause of action, avoiding the ER 215 Moore Transfers not avoided under paragraphs (a) and (b) pursuant to 11 U.S.C. § 547(b), and directing return of those transfers from ER 215 Moore to extent avoided under 11 U.S.C. § 547(b);

(d)    On the fourth cause of action, avoiding the Acquisition-Northside Transfers pursuant to 11 U.S.C. § 548(a)(1)(B), and directing return of the Acquisition-Northside Transfers from Northside;

(e)    On the fifth cause of action, avoiding the Acquisition-Northside Transfers not avoided under paragraph (d) pursuant to 11 U.S.C. § 544(b)(1), and directing return of those transfers from Northside;

(f)    On the sixth cause of action, avoiding the Acquisition-Northside Transfers not avoided under paragraphs (d) and (e) pursuant to 11

U.S.C. § 547(b), and directing return of those transfers from Northside to extent avoided under 11 U.S.C. § 547(b);

(g)    On the seventh cause of action, avoiding the 215 Acquisition Transfers pursuant to 11 U.S.C. § 548(a)(1)(B), and directing return of the 215 Acquisition Transfers from 215 Acquisition;

(h)    On the eighth cause of action, avoiding the 215 Acquisition Transfers not avoided under paragraph (g) pursuant to 11 U.S.C. § 544(b)(1), and directing return of the those transfers from 215 Acquisition;

(i)    On the ninth cause of action, avoiding the 215 Acquisition Transfers not avoided under paragraphs (g) and (h) that occurred within 1 year of the filing of the petition pursuant to 11 U.S.C. § 547(b), and directing return of those transfers from 215 Acquisition to extent avoided under 11 U.S.C. § 547(b);

(j)    On the tenth cause of action, avoiding the Development-Northside Transfers that occurred within 2 years of the filing of the petition pursuant to 11 U.S.C. § 548(a)(1)(B), and directing return of the those transfers from Development;

(k)    On the eleventh  cause of action, avoiding the Development-Northside Transfers not avoided under paragraph (j) pursuant to 11 U.S.C. § 544(b)(1), and directing return of those transfers from Northside;

(l)    On the twelfth cause of action, avoiding the 215 Acquisition-Development Transfer pursuant to 11 U.S.C. § 544(b)(1), and directing return of the 215 Acquisition-Development Transfer from 215 Acquisition;

(m)    On the thirteen cause of action, avoiding the Doe Account Holder 7255 Transfers that occurred within 2 years of the filing of the petition pursuant to 11 U.S.C. § 548(a)(1)(B), and directing return of those transfers from Doe Account Holder 7255;

(n)    On the fourteenth cause of action avoiding the Doe Account Holder 7255 Transfers not avoided under paragraph (m) pursuant to 11 U.S.C. § 544(b)(1), and directing return of those transfers from Doe;

(o)    On the fifteenth cause of action, directing payment to the Trustee in an amount to be determined at trial;

(p)    Costs and attorney fees; and

24

(q)    Such other and further relief as is necessary and proper.

Dated:  New York, New York
        April 13, 2023

R3M LAW, LLP
Attorneys for the Trustee
By:

/s/ Howard P. Magaliff
HOWARD P. MAGALIFF
335 Madison Avenue, 9th Floor
New York, NY 10017
646.453.7851
*hmagaliff@r3mlaw.com*

4872-5983-1900, v. 3

**EXHIBIT 1**

**232 Seigel Development LLC**
**Transfers to Northside Acquisition Partners LLC**

| Transaction Date | Payee | Amount |
|---|---|---|
| 9/16/2016 | Northside Acquisition Partners LLC | (1,683.00) |
| 10/17/2016 | Northside Acquisition Partners LLC | (2,000.00) |
| 10/28/2016 | Northside Acquisition Partners LLC | (1,166.00) |
| 11/23/2016 | Northside Acquisition Partners LLC | (325.00) |
| 11/23/2016 | Northside Acquisition Partners LLC | (1,500.00) |
| 11/25/2016 | Northside Acquisition Partners LLC | (1,386.00) |
| 12/1/2016 | Northside Acquisition Partners LLC | (1,041.67) |
| 12/5/2016 | Northside Acquisition Partners LLC | (650.00) |
| 12/8/2016 | Northside Acquisition Partners LLC | (2,050.00) |
| 12/9/2016 | Northside Acquisition Partners LLC | (1,400.00) |
| 12/9/2016 | Northside Acquisition Partners LLC | (1,958.00) |
| 12/9/2016 | Northside Acquisition Partners LLC | (5,000.00) |
| 12/14/2016 | Northside Acquisition Partners LLC | (1,120.00) |
| 12/15/2016 | Northside Acquisition Partners LLC | (15,000.00) |
| 12/16/2016 | Northside Acquisition Partners LLC | (650.00) |
| 12/22/2016 | Northside Acquisition Partners LLC | (2,000.00) |
| 12/22/2016 | Northside Acquisition Partners LLC | (13,380.77) |
| 12/27/2016 | Northside Acquisition Partners LLC | (3,500.00) |
| 1/5/2017 | Northside Acquisition Partners LLC | (2,083.34) |
| 1/6/2017 | Northside Acquisition Partners LLC | (2,073.50) |
| 1/12/2017 | Northside Acquisition Partners LLC | (5,000.00) |
| 2/8/2017 | Northside Acquisition Partners LLC | (1,388.89) |
| 2/22/2017 | Northside Acquisition Partners LLC | (2,000.00) |
| 3/2/2017 | Northside Acquisition Partners LLC | (1,120.00) |
| 3/2/2017 | Northside Acquisition Partners LLC | (1,388.89) |
| 3/9/2017 | Northside Acquisition Partners LLC | (1,000.00) |
| 3/17/2017 | Northside Acquisition Partners LLC | (560.00) |
| 3/17/2017 | Northside Acquisition Partners LLC | (2,000.00) |
| 4/5/2017 | Northside Acquisition Partners LLC | (1,388.89) |
| 4/28/2017 | Northside Acquisition Partners LLC | (25,800.00) |
| 5/4/2017 | Northside Acquisition Partners LLC | (1,000.00) |
| 5/9/2017 | Northside Acquisition Partners LLC | (20,000.00) |
| 5/15/2017 | Northside Acquisition Partners LLC | (1,120.00) |
| 5/17/2017 | Northside Acquisition Partners LLC | (2,000.00) |
| 5/22/2017 | Northside Acquisition Partners LLC | (650.00) |
| 6/2/2017 | Northside Acquisition Partners LLC | (84,000.00) |
| 6/6/2017 | Northside Acquisition Partners LLC | (1,000.00) |
| 6/20/2017 | Northside Acquisition Partners LLC | (2,500.00) |
| 6/29/2017 | Northside Acquisition Partners LLC | (10,000.00) |
| 1/11/2018 | Northside Acquisition Partners LLC | (1,234.94) |
| 12/20/2018 | Northside Acquisition Partners LLC | (15,000.00) |
| 12/20/2018 | Northside Acquisition Partners LLC | (19,950.00) |
| 12/20/2018 | Northside Acquisition Partners LLC | (43,000.00) |
| 12/21/2018 | Northside Acquisition Partners LLC | (7,500.00) |
| 12/28/2018 | Northside Acquisition Partners LLC | (12,000.00) |
| 12/28/2018 | Northside Acquisition Partners LLC | (30,000.00) |
| 1/3/2019 | Northside Acquisition Partners LLC | (47,000.00) |
| | | **(399,568.89)** |

| | |
|---|---|
| Transfers within 2 years of the Petition Date | (174,450.00) |
| Transfers within 6 years of the Petition Date | (399,568.89) |

**EXHIBIT 2**

**232 Seigel Development LLC**
**Transfers to Checking Account Ending in 7255**

| Transaction Date | Payor/Payee | Amount |
|---|---|---|
| 11/23/2016 | Online Transfer to CHK xxxx7255 | (4,140.38) |
| 12/5/2016 | Online Transfer to CHK xxxx7255 | (244.50) |
| 12/8/2016 | Online Transfer to CHK xxxx7255 | (10,800.00) |
| 12/14/2016 | Online Transfer to CHK xxxx7255 | (100.00) |
| 12/22/2016 | Online Transfer to CHK xxxx7255 | (16,400.00) |
| 12/23/2016 | Online Transfer to CHK xxxx7255 | (366.75) |
| 1/3/2017 | Online Transfer to CHK xxxx7255 | (2,473.47) |
| 1/3/2017 | Online Transfer to CHK xxxx7255 | (244.50) |
| 1/5/2017 | Online Transfer to CHK xxxx7255 | (8,300.00) |
| 1/5/2017 | Online Transfer to CHK xxxx7255 | (9,900.00) |
| 1/19/2017 | Online Transfer to CHK xxxx7255 | (18,400.00) |
| 2/2/2017 | Online Transfer to CHK xxxx7255 | (18,000.00) |
| 2/3/2017 | Online Transfer to CHK xxxx7255 | (250.00) |
| 2/15/2017 | Online Transfer to CHK xxxx7255 | (350.00) |
| 2/16/2017 | Online Transfer to CHK xxxx7255 | (7,900.00) |
| 2/16/2017 | Online Transfer to CHK xxxx7255 | (9,800.00) |
| 2/28/2017 | Online Transfer to CHK xxxx7255 | (650.00) |
| 3/2/2017 | Online Transfer to CHK xxxx7255 | (7,800.00) |
| 3/2/2017 | Online Transfer to CHK xxxx7255 | (9,800.00) |
| 3/3/2017 | Online Transfer to CHK xxxx7255 | (500.00) |
| 3/13/2017 | Online Transfer to CHK xxxx7255 | (850.00) |
| 3/16/2017 | Online Transfer to CHK xxxx7255 | (17,200.00) |
| 3/30/2017 | Online Transfer to CHK xxxx7255 | (17,000.00) |
| 4/7/2017 | Online Transfer to CHK xxxx7255 | (1,300.00) |
| 4/20/2017 | Online Transfer to CHK xxxx7255 | (17,325.00) |
| 4/27/2017 | Online Transfer to CHK xxxx7255 | (17,500.00) |
| 5/11/2017 | Online Transfer to CHK xxxx7255 | (17,700.00) |
| 5/24/2017 | Online Transfer to CHK xxxx7255 | (250.00) |
| 5/25/2017 | Online Transfer to CHK xxxx7255 | (14,768.03) |
| 6/8/2017 | Online Transfer to CHK xxxx7255 | (15,173.74) |
| 6/22/2017 | Online Transfer to CHK xxxx7255 | (15,300.00) |
| 6/23/2017 | Online Transfer to CHK xxxx7255 | (1,250.00) |
| 7/6/2017 | Online Transfer to CHK xxxx7255 | (15,995.64) |
| 1/11/2018 | Online Transfer to CHK xxxx7255 | (1,500.00) |
| 12/7/2018 | Online Transfer to CHK xxxx7255 | (300.00) |
| 12/7/2018 | Online Transfer to CHK xxxx7255 | (250.00) |
| | | **(280,082.01)** |

| | | |
|---|---|---|
| Transfers within 2 years of the Petition Date | | (550.00) |
| Transfers within 6 years of the Petition Date | | (280,082.01) |

**EXHIBIT 3**

**232 Seigel Development LLC**
**Transfers to ER 215 Moore LLC**

| Transaction Date | Payee | Amount |
|---|---|---|
| 10/11/2019 | ER 215 Moore LLC | (50,000.00) |
| 10/16/2019 | ER 215 Moore LLC | (50,000.00) |
| | | **(100,000.00)** |

| | |
|---|---|
| Transfers within 1 year of the Petition Date | (100,000.00) |
| Transfers within 2 years of the Petition Date | (100,000.00) |
| Transfers within 6 years of the Petition Date | (100,000.00) |

**EXHIBIT 4**

**232 Seigel Acquisition LLC**
**Transfers to Northside Acquisition Partners LLC**

| Transaction Date | Payee | Amount |
|---|---|---|
| 12/19/2019 | Northside Acquisition Partners LLC | (250.00) |
| 2/27/2020 | Northside Acquisition Partners LLC | (100,000.00) |
| 2/27/2020 | Northside Acquisition Partners LLC | (26,900.00) |
| 2/27/2020 | Northside Acquisition Partners LLC | (4,900.00) |
| 2/27/2020 | Northside Acquisition Partners LLC | (8,300.00) |
| 2/27/2020 | Northside Acquisition Partners LLC | (13,350.00) |
| 2/27/2020 | Northside Acquisition Partners LLC | (7,050.00) |
| 2/27/2020 | Northside Acquisition Partners LLC | (5,900.00) |
| 2/27/2020 | Northside Acquisition Partners LLC | (200,000.00) |
| 2/27/2020 | Northside Acquisition Partners LLC | (50,000.00) |
| 2/27/2020 | Northside Acquisition Partners LLC | (36,000.00) |
| 2/27/2020 | Northside Acquisition Partners LLC | (20,000.00) |
| 2/27/2020 | Northside Acquisition Partners LLC | (1,000,000.00) |
| 2/28/2020 | Northside Acquisition Partners LLC | (6,000.00) |
| 2/28/2020 | Northside Acquisition Partners LLC | (10,000.00) |
| 2/28/2020 | Northside Acquisition Partners LLC | (3,850.00) |
| 3/2/2020 | Northside Acquisition Partners LLC | (5,000.00) |
| 3/2/2020 | Northside Acquisition Partners LLC | (20,000.00) |
| 3/3/2020 | Northside Acquisition Partners LLC | (5,000.00) |
| 3/3/2020 | Northside Acquisition Partners LLC | (450.00) |
| 3/3/2020 | Northside Acquisition Partners LLC | (5,000.00) |
| 3/3/2020 | Northside Acquisition Partners LLC | (1,000.00) |
| 3/4/2020 | Northside Acquisition Partners LLC | (5,000.00) |
| 3/4/2020 | Northside Acquisition Partners LLC | (10,000.00) |
| 3/4/2020 | Northside Acquisition Partners LLC | (17,740.00) |
| 3/5/2020 | Northside Acquisition Partners LLC | (2,500.00) |
| 3/5/2020 | Northside Acquisition Partners LLC | (5,000.00) |
| 3/5/2020 | Northside Acquisition Partners LLC | (3,000.00) |
| 3/5/2020 | Northside Acquisition Partners LLC | (10,000.00) |
| 3/5/2020 | Northside Acquisition Partners LLC | (5,000.00) |
| 3/6/2020 | Northside Acquisition Partners LLC | (3,000.00) |
| 3/6/2020 | Northside Acquisition Partners LLC | (5,000.00) |
| 3/26/2020 | Northside Acquisition Partners LLC | (16,500.00) |
| 3/26/2020 | Northside Acquisition Partners LLC | (1,475.00) |
| 3/26/2020 | Northside Acquisition Partners LLC | (5,250.00) |
| 3/26/2020 | Northside Acquisition Partners LLC | (5,280.00) |
| 3/26/2020 | Northside Acquisition Partners LLC | (4,500.00) |
| 3/26/2020 | Northside Acquisition Partners LLC | (38,000.00) |
| 3/27/2020 | Northside Acquisition Partners LLC | (3,750.00) |
| 3/27/2020 | Northside Acquisition Partners LLC | (2,500.00) |
| 3/27/2020 | Northside Acquisition Partners LLC | (15,000.00) |
| 3/27/2020 | Northside Acquisition Partners LLC | (10,000.00) |
| 3/30/2020 | Northside Acquisition Partners LLC | (2,076.92) |
| 3/31/2020 | Northside Acquisition Partners LLC | (20,000.00) |
| 4/1/2020 | Northside Acquisition Partners LLC | (12,000.00) |
| 4/2/2020 | Northside Acquisition Partners LLC | (1,170.00) |
| 4/2/2020 | Northside Acquisition Partners LLC | (1,215.00) |
| 4/2/2020 | Northside Acquisition Partners LLC | (2,000.00) |
| 4/3/2020 | Northside Acquisition Partners LLC | (5,000.00) |
| 4/3/2020 | Northside Acquisition Partners LLC | (6,000.00) |
| 4/3/2020 | Northside Acquisition Partners LLC | (4,359.29) |
| 4/3/2020 | Northside Acquisition Partners LLC | (14,600.00) |
| 4/3/2020 | Northside Acquisition Partners LLC | (1,350.00) |
| 4/3/2020 | Northside Acquisition Partners LLC | (5,150.00) |
| 4/3/2020 | Northside Acquisition Partners LLC | (5,300.00) |
| 4/3/2020 | Northside Acquisition Partners LLC | (1,000.00) |

| | | |
|---|---|---:|
| 4/3/2020 | Northside Acquisition Partners LLC | (2,000.00) |
| 4/6/2020 | Northside Acquisition Partners LLC | (15,000.00) |
| 4/7/2020 | Northside Acquisition Partners LLC | (432.69) |
| 4/7/2020 | Northside Acquisition Partners LLC | (432.69) |
| 4/7/2020 | Northside Acquisition Partners LLC | (5,000.00) |
| 4/7/2020 | Northside Acquisition Partners LLC | (2,850.00) |
| 4/8/2020 | Northside Acquisition Partners LLC | (3,000.00) |
| 4/8/2020 | Northside Acquisition Partners LLC | (17,523.29) |
| 4/14/2020 | Northside Acquisition Partners LLC | (1,500.00) |
| 4/14/2020 | Northside Acquisition Partners LLC | (500.00) |
| 4/14/2020 | Northside Acquisition Partners LLC | (2,000.00) |
| 4/14/2020 | Northside Acquisition Partners LLC | (17,000.00) |
| 4/17/2020 | Northside Acquisition Partners LLC | (500.00) |
| 4/17/2020 | Northside Acquisition Partners LLC | (4,000.00) |
| 5/6/2020 | Northside Acquisition Partners LLC | (5,000.00) |
| | | ***(1,855,404.88)*** |

| | |
|---|---:|
| Transfers within 1 year of the Petition Date | (1,855,404.88) |
| Transfers within 2 years of the Petition Date | (1,855,404.88) |
| Transfers within 6 years of the Petition Date | (1,855,404.88) |

**EXHIBIT 5**

**232 Seigel Acquisition LLC**
**Transfers to 215 Moore St Acquisition LLC**

| Transaction Date | Payee | Amount |
|---|---|---|
| 8/22/2018 | 215 Moore St Acquisition LLC | (820.00) |
| 4/1/2020 | 215 Moore St Acquisition LLC | (17,110.00) |
| 4/1/2020 | 215 Moore St Acquisition LLC | (100.00) |
| | | **(18,030.00)** |

| | |
|---|---|
| Transfers within 1 year of the Petition Date | (17,210.00) |
| Transfers within 2 years of the Petition Date | (18,030.00) |
| Transfers within 6 years of the Petition Date | (18,030.00) |